UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AUTHERINE CROSKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| BIG LOTS STORES, INC., | ) | 2:06-CV-00485-MHT |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT BIG LOTS STORES, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Big Lots Stores, Inc. ("Big Lots"), by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits its Statement of Undisputed Material Facts in support of Motion for Summary Judgment:

I.    **PLAINTIFF'S EMPLOYMENT WITH BIG LOTS**

1.

Plaintiff Autherine Croskey ("Plaintiff") is a black female.  (Pl.'s Dep. 24:12-16.)[1]

2.

Plaintiff was hired at Big Lots Store No. 818 in Montgomery, Alabama on March 30, 1997, as a part-time Cashier/Recovery Associate.  (Pl.'s Dep. 89:14-90:9.)

_____

[1] A copy of the cited excerpts of Plaintiff's deposition is attached as Exhibit A.

3.

Plaintiff worked in Big Lots Store No. 818 throughout her employment with Big Lots. (Pl.'s Dep. 90:6-9.)

4.

Plaintiff was promoted to full-time Stocker effective March 31, 2001. (Pl.'s Dep. 102:6-9.)

5.

Jerry Culpepper became Store Manager at Store No. 818 on or about July 12, 2004. (Pl.'s Dep. 106:13-107:2).

6.

As Store Manager, Culpepper was Plaintiff's direct supervisor. (Pl.'s Dep. 197:15-18.)

7.

Gerald Michael ("Mike") Williams was an Associate Store Manager at Store No. 818 during Plaintiff's employment, from December 20, 2004 through April 11, 2005. (Pl.'s Dep. 197:8-18; Abrams Aff. ¶¶ 5, 7.)[2]

8.

Beginning in February 1998, Billy Pridgen served as an Assistant Manager at Store No. 818, and he held that position during much of Plaintiff's employment with Big Lots. (Pl.'s Dep. 97:9-15.)

9.

Throughout her employment at Big Lots, Plaintiff was able to perform her job duties, and she testified that she performed her job duties well. (Pl.'s Dep. 110:4-9.)

---

[2] A copy of Sharon Abrams's affidavit is attached as Exhibit B.

10.

Plaintiff loved her job and liked working at Big Lots.  (Pl.'s Dep. 77:9-11; 77:22-78:1; 110:7-11.)

11.

Plaintiff received consistently positive evaluations during her employment at Big Lots. (Pl.'s Dep. 109: 20-23; see also 102:20-103:2.)

12.

Pridgen and Culpepper gave Plaintiff positive performance evaluations.   (Pl.'s Dep. 110:1-3.)

13.

Plaintiff's employment with Big Lots ended effective December 24, 2005, because Store No. 818 where she worked was closed permanently.  (Pl.'s Dep. 263:11-17.)

II.    **BIG LOTS' ASSOCIATE HANDBOOK AND POLICIES**

    A.    <u>**Associate Handbook**</u>

3.

At the time of her hire, Plaintiff received an Associate Handbook and signed an acknowledgment that she received the handbook and reviewed its contents.  (Pl.'s Dep. 90:16-23.)

4.

Throughout Plaintiff's employment with Big Lots, the Associate Handbook distributed to all employees contained Big Lots' Equal Employment Opportunity policy, Harassment-Free Environment policy, Open Door policy, and Standards of Conduct policy.  (Abrams Aff. ¶ 3.)

5.

Copies of Big Lots' Equal Employment Opportunity policy, Harassment-Free Environment policy, Open Door policy, and Standards of Conduct policy in place during Plaintiff's employment are attached to Sharon Abrams's affidavit as Exhibits A – D, respectively.  (Abrams Aff. ¶ 4.)

### B.     **Equal Employment Opportunity Policy**

3.

Big Lots' Associate Handbook contains its Equal Employment Opportunity policy, which prohibits discrimination because of, among other things, race, color, and sex.  (Pl.'s Dep. 91:6-17; Pl.'s Dep. Ex. 9.)

4.

Plaintiff was aware during her employment that Big Lots' Equal Employment Opportunity policy prohibits discrimination based upon, among other things, race, color, and sex.  (Pl.'s Dep. 91:6-22; <u>see also</u> Pl.'s Dep. Ex. 9.)

5.

Big Lots' Equal Employment Opportunity policy contained in its Associate Handbook provides:  "Any formal or informal allegation that this policy has been violated should be referred immediately to Human Resources."  (Pl.'s Dep. 91:6-92:4; <u>see also</u> Pl.'s Dep. Ex. 9.)

### C.     **Harassment-Free Environment Policy**

3.

Big Lots' Harassment-Free Environment policy contained in the Associate Handbook states: "Big Lots strictly prohibits harassment and/or discrimination based on race, color, [or] . . . sex . . . ." (Pl.'s Dep. 92:11-93:1; Pl.'s Dep. Ex. 10.)

4.

Big Lots' Harassment-Free Environment policy states that: "Any associate who believes he/she has been the subject of harassment is responsible for promptly reporting the alleged act to Human Resources or his/her immediate supervisor." (Pl.'s Dep. 93:2-18; Pl.'s Dep. Ex. 10.)

5.

Plaintiff was familiar with Big Lots' Harassment-Free Environment policy during her employment with Big Lots. (Pl.'s Dep. 92:11-93:18.)

D.     **Open Door Policy**

3.

Plaintiff recalls Big Lots' Open Door policy from the Associate Handbook she received, and she was familiar with the policy during her employment. (Pl.'s Dep. 94:1-95:4; see also Pl.'s Dep. Ex. 11.)

4.

Big Lots' Open Door policy contained in the Associate Handbook states: "Any associate with a question or problem is entitled to use the Open Door [p]olicy and may contact anyone in the organization." (Pl.'s Dep. 94:1-13; Pl.'s Dep. Ex. 11.)

5.

The Open Door policy further provides that an associate may take his or her "question or concern to [the] immediate supervisor or manager[,] or . . . to the next level manager[,] or [to the] Human Resources Department."  (Pl.'s Dep. 94:14-19; Pl.'s Dep. Ex. 11.)

6.

The Open Door policy also provides that associates may make anonymous complaints by calling the Get Real Hotline, which is a toll-free complaint number.  (Pl.'s Dep. 94:20-95:1; Pl.'s Dep. Ex. 11.)

7.

The Open Door policy also prohibits retaliation against any employee exercising his or her rights under the policy.  (Pl.'s Dep. 95:8-15; Pl.'s Dep. Ex. 11.)

E.       **Standards of Conduct Policy**

3.

Big Lots' Standards of Conduct policy, contained in the Associate Handbook during Plaintiff's employment, provides that violations of company policy, including the Harassment-Free Environment policy, will not be tolerated.  (Pl.'s Dep. 95:22-96:11; Pl.'s Dep. Ex. 12.)

4.

The Standards of Conduct policy states:  "Associates are expected to comply with this [p]olicy and report violations immediately."  (Pl.'s Dep. 95:22-96:16; Pl.'s Dep. Ex. 12 at p. 2.)

5.

Plaintiff was familiar with the Standards of Conduct policy during her employment. (Pl.'s Dep. 95:22-96:19.)

III.    **PLAINTIFF'S TWO EEOC CHARGES**

    A.    <u>**June 23, 2005 Charge**</u>

4.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") against Big Lots, Charge No. 130-2005-05216, on June 23, 2005 ("June 23 EEOC charge").[3]  (Pl.'s Dep. 118:13-119:1; Pl.'s Dep. Ex. 23.)

5.

Plaintiff's June 23 EEOC charge alleged race and sex harassment.  (Pl.'s Dep. 118:13-120:15; Pl.'s Dep. Ex. 23.)

6.

Plaintiff indicated on the June 23 EEOC charge that the alleged harassment took place between March 28 and March 30, 2005.  (Pl.'s Dep. 118:13-120:6; Pl.'s Dep. Ex. 23.)

7.

Plaintiff attached to her June 23 EEOC charge Exhibit A, which contains facts underlying the charge.  (Pl.'s Dep. 120:16-121:12; <u>see also</u> Pl.'s Dep. Ex. 23 at Ex. A.)

8.

Plaintiff filed the June 23 EEOC charge because she was complaining about pictures allegedly made by Mike Williams (then an Associate Manager) and other incidents.  (Pl.'s Dep. 121:13-21; 182:22-183:8; <u>see also</u> Pl.'s Dep. Ex. 23 at Ex. A.)

9.

---

[3] A copy of Plaintiff's June 23, 2005 EEOC charge (Pl.'s Dep. Ex. 23) is attached as Exhibit C.

On June 29, 2005, the EEOC issued a Dismissal and Notice of Rights as to Plaintiff's June 23 EEOC charge.[4]  (Pl.'s Dep. 184:12-185:2; Pl.'s Dep. Ex. 24.)

10.

Plaintiff received the Dismissal and Notice of Rights on or about June 29, 2005.  (Pl.'s Dep. 184:12-185:2; Pl.'s Dep. Ex. 24.)

11.

The Dismissal and Notice of Rights Plaintiff received with respect to her June 23 EEOC charge expressly stated:  "Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this Notice**; or your right to sue based on this charge will be lost."  (Pl.'s Dep. 184:12-185:12; Pl.'s Dep. Ex. 24.)

12.

In addition to receiving the Dismissal and Notice of Rights, Plaintiff also received correspondence from Allen Gosa of the EEOC, dated June 29, 2005, informing her that the June 23 EEOC charge had been dismissed and that she had ninety (90) days to file suit.  (Pl.'s Dep. 185:19-186:4; 186:15-20.)

B.  **<u>September 16, 2005 Charge</u>**

4.

---

[4] A copy of the EEOC's Dismissal and Notice of Rights for the June 23, 2005 EEOC charge (Pl.'s Dep. Ex. 24) is attached as Exhibit D.

9

Plaintiff filed a second charge of discrimination against Big Lots with the EEOC, Charge No. 130-2005-06801, on September 16, 2005 ("September 16 EEOC charge").[5]  (Pl.'s Dep. 192:17-193:21; Pl.'s Dep. Ex. 26.)

5.

Plaintiff filed the September 16 EEOC charge because the EEOC had dismissed her June 23 EEOC charge.  (Pl.'s Dep. 194:16-195:8.)

6.

Plaintiff's September 16 EEOC charge also alleged harassment based on her race and sex. (Pl.'s Dep. 195:23-196:5; Pl.'s Dep. 262:23-263:3; Pl.'s Dep. Ex. 26.)

7.

Plaintiff's September 16 EEOC charge also is based on alleged conduct that took place between March 28 and 30, 2005.  (Pl.'s Dep. 195:9-12; Pl.'s Dep. Ex. 26.)

8.

Plaintiff's September 16 EEOC charge is based on the same incidents and allegations of harassment as her June 23 EEOC charge.  (Pl.'s Dep. 182:22-183:23; 194:21-196:2; see also Pl.'s Dep. 197:3-7; 197:19-198:6; 214:8-23; 227:11-228:2-5; 231:13-232:2; 241:12-23; 251:5-22.)

9.

Plaintiff testified that the paragraph of Exhibit A to her June 23 EEOC charge, which states that "management at Big Lots, Inc., Store 818, furthermore during the last 180 days has

---

[5] A copy of Plaintiff's September 16, 2005 EEOC charge (Pl.'s Dep. Ex. 26) is attached as Exhibit E.

made many comments and statements of a racially and sexually harassing nature," refers to comments that she specifically identified in her second (September 16) EEOC charge.  (Pl.'s Dep. 182:22-183:23.)

10.

Plaintiff's Exhibit A attached to her September 16 EEOC charge contains all of the allegations on which she based that charge.  (Pl.'s Dep. 196:9-12.)

11.

The EEOC issued a Dismissal and Notice of Rights regarding Plaintiff's September 16 EEOC charge on May 5, 2006, and Plaintiff received such document on May 5, 2006.[6]  (Pl.'s Dep. 261:9-262:10; see also Pl.'s Dep. Ex. 27.)

12.

The EEOC concluded that Plaintiff's allegations in the September 16 EEOC charge did not establish a violation of the statutes enforced by the EEOC.  (Pl.'s Dep. 262:11-16; Pl.'s Dep. Ex. 27.)

13.

Plaintiff never revised or amended the two EEOC charges she filed with the EEOC. (Pl.'s Dep. 262:17-22.)

IV.    **PLAINTIFF'S CLAIMS IN THIS LAWSUIT**

5.

_____

[6] A copy of the EEOC's Dismissal and Notice of Rights for the September 16, 2005 EEOC charge (Pl.'s Dep. Ex. 27) is attached as Exhibit F.

The only claims Plaintiff alleges in this lawsuit are hostile work environment under Title VII based on her race and sex.  (Pl.'s Dep. 115:10-21, 265:14-23; <u>see also</u> Compl. ¶¶ 4, 6.)

6.

Plaintiff's claims in this lawsuit have nothing to do with her termination from Big Lots. (Pl.'s Dep. 265:6-9; <u>see also</u> 264:11-14.)

7.

Plaintiff is not alleging retaliation in this lawsuit.  (Pl.'s Dep. 266:9-11.)

8.

Plaintiff cannot identify any medical treatment that she has received resulting from the alleged harassment or alleged hostile work environment at Big Lots.  (Pl.'s Dep. 286:18-23; 288:10-14.)

## V.    PLAINTIFF'S SPECIFIC ALLEGATIONS OF HARASSMENT

### A.    <u>Alleged Comments by Mike Williams in March 2005</u>

#### <u>1.</u>    <u>Alleged Metal Screw Comment and Alleged "Jerry Beads" Comment</u>

6.

Plaintiff alleges Mike Williams made a comment about a metal screw on or about March 14, 2005.  (Pl.'s Dep. 197:19-22.)

7.

Specifically, Plaintiff alleges Williams asked Plaintiff: "Do you want a screw?" Williams was holding a metal screw when he asked the question.  (Pl.'s Dep. 200:11-15.)

8.

Plaintiff does not have any personal knowledge as to why Williams made the comment regarding the metal screw, and she does not know whether Williams was trying to be funny. (Pl.'s Dep. 200:16-18; 200:23-201:7; 205:8-10; 210:13-15.)

9.

Williams did not make any reference to Plaintiff's race or sex during the incident.  (Pl.'s Dep. 205:19-21.)

10.

Plaintiff does not know whether Williams ever made the same comment to white employees or to male employees.  (Pl.'s Dep. 205:22-206:6.)

11.

Plaintiff does not think that Williams's metal screw comment had anything to do with her race.  (Pl.'s Dep. 206:7-9.)

12.

Plaintiff believes Williams's metal screw comment had something to do with her sex because she personally equates the term "screw" with the term "sex."  (Pl.'s Dep. 210:5-9.)

13.

After Williams made the metal screw comment, Plaintiff just walked away.  (Pl.'s Dep. 210:16-211:20.)

14.

Plaintiff then went to Culpepper and merely repeated Williams's comment about the metal screw to Culpepper.  (Pl.'s Dep. 210:16-211:20.)

15.

Culpepper and Plaintiff went to the back of the store where Plaintiff had been working.  (Pl.'s Dep. 211:21-212:8.)

16.

Plaintiff testified Williams then came over and "started talking about Jerry [b]eads"; specifically, Williams allegedly said: "Do you want some Jerry [b]eads?"  (Pl.'s Dep. 212:9-213:4; 215:15-22.)

17.

This incident occurred on the same day, March 14, 2005, and a few minutes after Williams's comment regarding the metal screw.  (Pl.'s Dep. 213:23-214:7.)

18.

Williams did not reference Plaintiff's race or sex when he allegedly made the comment regarding "Jerry beads."  (Pl.'s Dep. 220:19-221:1.)

19.

Plaintiff does not know why Williams made the alleged statement regarding "Jerry beads," and she does not know whether Williams was merely joking.  (Pl.'s Dep. 223:10-14.)

20.

Plaintiff does not know whether Williams ever made the same statement to white employees or to male employees.  (Pl.'s Dep. 223:15-20.)

21.

Plaintiff does not think Williams's comment had anything to do with her race. (Pl.'s Dep. 223:21-23.)

22.

It is just Plaintiff's personal belief that the comment had something to do with her sex. (Pl.'s Dep. 224:8-11.)

23.

Plaintiff never complained to anyone at Big Lots about Williams's statement about the "Jerry beads." (Pl.'s Dep. 225:11-20.)

24.

Culpepper then continued to talk to Williams after Plaintiff walked away; she does not know what Culpepper said to Williams or whether Williams was reprimanded. (Pl.'s Dep. 225:2-227:10.)

25.

Thereafter, Williams did not make any similar comments to Plaintiff. (Pl.'s Dep. 225:2-227:10.)

26.

Williams's comments both allegedly took place before Plaintiff filed her first EEOC charge, the June 23 charge, and they also were incidents on which Plaintiff based her first EEOC charge. (Pl.'s Dep. 213:23-214:23.)

### 2.    **Alleged Customer Comment**

6.

Plaintiff testified that, in early March 2005, she observed Williams watching a customer in the store.  (Pl.'s Dep. 227:11-229:10.)

7.

Plaintiff alleges she overheard Williams say he had never seen a white woman with a big butt before.  (Pl.'s Dep. 228:12-20.)

8.

Williams was not referring to Plaintiff when he allegedly made this comment, and Plaintiff was not personally affected by Williams's alleged comment.  (Pl.'s Dep. 229:12-230:4.)

9.

Williams's alleged comment had nothing to do with Plaintiff's race or sex.  (Pl.'s Dep. 230:11-20.)

10.

Plaintiff did not complain to anyone about Williams's alleged comment.  (Pl.'s Dep. 230:21-23.)

11.

This alleged comment by Williams occurred before Plaintiff filed her first EEOC charge on June 23, 2005, and it was one of the incidents on which she based her June 23 charge.  (Pl.'s Dep. 227:11-228:5.)

12.

Plaintiff acknowledged the three comments she alleges Williams made were isolated incidents.  (Pl.'s Dep. 234:1-7.)

B.    **Pictures of Plaintiff by Mike Williams in March 2005**

6.

Plaintiff testified that Mike Williams had a picture of Plaintiff's face to go on a Big Lots name badge in March 2005 and that he superimposed the picture of Plaintiff onto (1) a play or fake $100 bill, (2) a body wearing a clown outfit, and (3) another body in a picture with a cartoon caption.  (Pl.'s Dep. 122:18-22; 147:1-14.)

7.

On March 30, 2005, Linda Sankey, another Big Lots employee, showed Plaintiff the pictures; Plaintiff has no personal knowledge as to where Sankey obtained the pictures.  (Pl.'s Dep. 149:14-151:19; 151:20-152:6; Pl.'s Dep. Ex. 23 at Ex. B.)

8.

Plaintiff attached these pictures to her June 23 EEOC charge as Exhibit B.  (Pl.'s Dep. 123:12-15; Pl.'s Dep. Ex. 23 at Ex. B.)

1.    **Play or Fake Money**

6.

The pictures showed Plaintiff's and other employees' pictures superimposed onto play money, like one would use for a Monopoly game or something similar.  (Pl.'s Dep. 122:15-19; 123:6; 127:22-131:3; 132:17-133:6; Pl.'s Dep. Ex. 23 at Ex. B p. 2.)

7.

Plaintiff's picture was superimposed on one fake or play $100 bill.  (Pl.'s Dep. 122:15; 127:22-131:3; 135:4-8; Pl.'s Dep. Ex. 23 at Ex. B p. 2.)

8.

The only fake or play $100 bill that Plaintiff found objectionable and that affected Plaintiff personally was the one that had her picture.  (Pl.'s Dep. 131:4-23.)

9.

Plaintiff does not know whether Williams put pictures of all the employees on play $100 bills regardless of their race or gender.  (Pl.'s Dep. 130:5-9.)

10.

Plaintiff does not know whether white or male employees also had their pictures superimposed on play or fake money.  (Pl.'s Dep. 130:18-131:3.)

11.

Plaintiff admitted the picture did not have anything to do with her race or gender.  (Pl.'s Dep. 134:3-18.)

12.

Plaintiff found her picture on the play money to be objectionable because the word "bogus" appeared on the play money.  (Pl.'s Dep. 122:15-17; 131:20-132:5; <u>see also</u> Pl.'s Dep. Ex. 23 at Ex. B p. 2.)

13.

Plaintiff testified the picture was "downgrading" to her because the statement "bogus cash" meant that she was "as bogus as th[e] note."  (Pl.'s Dep. 122:15-17; <u>see also</u> Pl.'s Dep. Ex. 23 at Ex. B p. 2.)

2.    **Clown Outfit**

6.

In a second picture, Plaintiff's picture was superimposed on a picture of a clown.  (Pl.'s Dep. 134:19-135:13, Pl.'s Dep. Ex. 23 at Ex. B p. 2.)

7.

Plaintiff found this picture objectionable because she was shown wearing a clown suit. (Pl.'s Dep. 137:12-23; <u>see also</u> Pl.'s Dep. Ex. 23 at Ex. B p. 2.)

8.

Plaintiff does not know whether Williams made pictures of male or white employees in a clown outfit.  (Pl.'s Dep. 147:19-148:4.)

### 3.     **Picture with Jerry Culpepper**

6.

In a third picture, Plaintiff was shown wearing a hat and seated with Culpepper, a white male.  (Pl.'s Dep. 124:18-23; 135:18-21; 138:1-18; 147:11-14; <u>see also</u> Pl.'s Dep. Ex. 23 at Ex. B p. 2.)

7.

Plaintiff acknowledged that the same kind of thing had been done to both Plaintiff and Culpepper in the picture; like Plaintiff, Culpepper's face was superimposed on someone else's body, and he was depicted in someone else's clothing.  (Pl.'s Dep. 138:1-139:18; 154:8-155:2.)

8.

Plaintiff acknowledged that Culpepper, a white male, also appeared in many of the pictures and was shown in silly clothing and making silly comments just like the other individuals in the other pictures. (Pl.'s Dep. 124:22-23; 148:18-149:2.)

9.

Plaintiff testified that she could see how Culpepper may find the picture even more objectionable than she did. (Pl.'s Dep. 138:16-18.)

10.

Plaintiff was only personally affected by the pictures in which she was depicted. (Pl.'s Dep. 146:9-23; <u>see also</u> 149:3-6.)

11.

Plaintiff also acknowledged that the pictures and captions had nothing to do with her sex. (Pl.'s Dep. 152:16-153:15.)

12.

Plaintiff testified it was her personal opinion and speculation that the pictures had something to do with her race, <u>see</u> Pl.'s Dep. 153:8-154:7, and she testified that the language in the pictures does not relate to her race. (Pl.'s Dep. 155:3-6.)

13.

Plaintiff testified that she does not have any personal knowledge as to why Williams used the employees' pictures on the play money and the other pictures or whether the employees' race or gender played any role. (Pl.'s Dep. 157:12-158:14.)

14.

Plaintiff admitted the majority of employees at Store No. 818 were black and female. (Pl.'s Dep. 148:5-9.)

15.

After viewing the pictures, Plaintiff went back to work and was able to perform all of her job duties.  (Pl. Dep. 191:12-192:15.)

16.

Plaintiff testified that she complained to Big Lots Asset Protection and Human Resources departments about the pictures.  (Pl.'s Dep. 165:17-167:8.)

17.

As soon as Big Lots learned of the pictures, it investigated the incident.  (Pl.'s Dep. 179:22-180:2.)

18.

The following day, Plaintiff met with Culpepper and a District Manager, and they apologized for the pictures and told Plaintiff it would not happen again.  (Pl.'s Dep. 174:15-175:5.)

19.

On April 5, 2005, Williams was given a final counseling session and written Disciplinary Counseling for violation of Big Lots' Standards of Conduct policy based on his misconduct of superimposing face pictures of store associates and the Store Manager (Jerry Culpepper) on other various pictures and fake money.  (Abrams Aff. ¶ 6, Ex. E; see also Pl.'s Dep. 175:5-7; 178:9-13.)

20.

Williams's employment with Big Lots ended on April 11, 2005, shortly after his final counseling session on April 5, 2005.  (Abrams Aff. ¶ 7; Pl.'s Dep. 179:15-21.)

21.

After Big Lots' timely investigation and discipline of Williams, there were no further pictures.  (Pl.'s Dep. 179:22-180:6.)

22.

Plaintiff conceded that Big Lots took effective corrective action.  (Pl.'s Dep. 180:7-22.)

23.

The incident involving the Williams pictures occurred prior to Plaintiff's filing of her first EEOC charge (the June 23, 2005 charge), and it was one of the incidents upon which such charge was based.  (Pl.'s Dep. 118:13-123:15, 182:23-183:3; Pl.'s Dep. Ex. 23 at Ex. B.)

C.    **Alleged Conduct by Billy Pridgen in May and June 2005**

**1.    Alleged Incident at Time Clock**

6.

In mid-May 2005, Plaintiff was leaning up against a wall, waiting by the time clock to clock out.  (Pl.'s Dep. 231:13-232:21.)

7.

As Plaintiff was standing against the wall, Pridgen allegedly put his arms on the wall around Plaintiff, but not on Plaintiff; Plaintiff testified Pridgen's body touched her body because of Pridgen's weight.  (Pl.'s Dep. 232:14-233:11; 233:14-16.)

8.

Pridgen then moved away and Plaintiff clocked out and went home.  (Pl.'s Dep. 235:16-18.)

9.

The incident lasted only a couple of seconds.  (Pl.'s Dep. 235:13-15.)

10.

Plaintiff testified Pridgen was kissing at her face; however, he did not actually kiss Plaintiff.  (Pl.'s Dep. 234:4-5; 238:1-6.)

11.

Plaintiff does not have any personal knowledge as to why Pridgen acted in that way. (Pl.'s Dep. 240:6-10; 240:21-23.)

12.

Plaintiff testified it is possible Pridgen was just trying to be funny.  (Pl.'s Dep. 238:7-15.)

13.

Pridgen did not make any reference to Plaintiff's race or sex during this incident.  (Pl.'s Dep. 240:11-14.)

14.

Plaintiff does not know whether Pridgen's conduct during the incident had anything to do with her race.  (Pl.'s Dep. 240:15-23.)

15.

Plaintiff does not know whether Pridgen ever acted in the same manner with white employees or male employees. (Pl.'s Dep. 241:1-4.)

16.

Plaintiff did not complain to anyone at Big Lots about this incident. (Pl.'s Dep. 241:5-11.)

17.

This incident occurred prior to Plaintiff's filing of her first EEOC charge (the June 23, 2005 charge), and was one of the incidents upon which such charge was based. (Pl.'s Dep. 231:13-232:3.)

2.     **Alleged Incident at Conveyor Belt**

6.

In late May 2005, Plaintiff and Pridgen were both working on unloading a truck. (Pl.'s Dep. 241:12-15, 242:1-3.)

7.

Plaintiff and Pridgen were unloading boxes from the same side of a conveyor belt. (Pl.'s Dep. 242:3-8.)

8.

When some heavy boxes came down the conveyor belt, Pridgen offered to unload them and moved around Plaintiff to get the boxes. (Pl.'s Dep. 242:4-7, 19-23; 243:1-4.)

9.

Pridgen walked around and behind Plaintiff to get to the boxes, and as he did so, he rubbed against Plaintiff.  (Pl.'s Dep. 243:16-18; 244:1-18.)

10.

Plaintiff testified that Pridgen touched her shoulder as he walked by, but she does not know why he did so.  (Pl.'s Dep. 245:11-15; 246:11-16.)

11.

Plaintiff acknowledged that she and Pridgen were working between the conveyor belt and a wall, which was a tight space, and Pridgen was a "large person."  (Pl.'s Dep. 244:9-10; 246:11-16; 247:2-5.)

12.

This incident also lasted only a few seconds, and Plaintiff continued on with her work duties afterwards.  (Pl.'s Dep. 248:11-16.)

13.

Plaintiff does not know whether Pridgen thought this incident was accidental or intentional.  (Pl.'s Dep. 249:22-250:2.)

14.

Plaintiff does not know whether Pridgen was trying to be funny or was teasing her.  (Pl.'s Dep. 249:2-4.)

15.

Plaintiff admitted she does not know if this incident had anything to do with her race or sex, and Pridgen did not make any reference to Plaintiff's race or sex when he bumped into her. (Pl.'s Dep. 250:3-15.)

16.

Plaintiff does not know whether Pridgen ever acted in the same manner with white employees or male employees.  (Pl.'s Dep. 250:16-19.)

17.

Plaintiff did not complain to anyone at Big Lots about this incident.  (Pl.'s Dep. 250:10-251:4.)

18.

This incident occurred prior to Plaintiff's filing of her first EEOC charge (the June 23, 2005 charge), and was one of the incidents upon which such charge was based.  (Pl.'s Dep. 241:16-23.)

3.    **Alleged "Dozing" Incident**

6.

In mid-June 2005, Plaintiff and Pridgen were again working on unloading a truck.  (Pl.'s Dep. 251:9-11, 19-22.)

7.

During a break, Plaintiff sat down and dozed off.  (Pl.'s Dep. 251:21-252:22.)

8.

Plaintiff woke up when she felt Pridgen blowing his breath in a circular motion on her face trying to wake her up.  (Pl.'s Dep. 253:2-4, 14-18.)

9.

Plaintiff asked him what he was doing and pushed him away.  (Pl.'s Dep. 253:4-6.)

10.

This incident lasted only a few seconds, and Plaintiff returned to work once her break was over.  (Pl.'s Dep. 255:11-17.)

11.

Plaintiff does not have any personal knowledge as to why Pridgen acted in this manner. (Pl.'s Dep. 257:11-15.)

12.

Pridgen did not make any reference to Plaintiff's race or sex during this incident, and Plaintiff admitted she does not know if this incident had anything to do with her race or sex. (Pl.'s Dep. 257:16-18; 258:6-11.)

13.

Plaintiff did not complain to anyone at Big Lots about this incident.  (Pl.'s Dep. 258:12-15.)

14.

This incident occurred prior to Plaintiff's filing of her first EEOC charge (the June 23, 2005 charge), and was one of the incidents upon which such charge was based.  (Pl.'s Dep. 251:12-18.)

15.

Plaintiff worked with Pridgen throughout her employment at Big Lots; she acknowledged that the three incidents she alleges regarding Pridgen were isolated incidents and were unrelated to the incidents with Williams.  (Pl.'s Dep. 258:16-18; 260:5-16.)

Respectfully submitted this 16th day of March, 2007.

                   Stephen X. Munger
                   Georgia Bar No. 529611
                   Gregory L. Smith, Jr.
                   Georgia Bar No. 658369
                   JACKSON LEWIS LLP
                   1900 Marquis One Tower
                   245 Peachtree Center Avenue, N.E.
                   Atlanta, Georgia  30303-1226
                   Telephone:    404-525-8200
                   Facsimile:    404-525-1173

LOCAL COUNSEL:              /s/ Joseph T. Carpenter

                   Joseph T. Carpenter

                   Alabama Bar No. 5114C59J
                   CARPENTER, INGRAM & MOSHOLDER, LLP
                   303 Sterling Centre
                   4121 Carmichael Road
                   Montgomery, Alabama  36106
                   Telephone:    334-213-5600
                   Facsimile:    334-213-5650

                   ATTORNEYS FOR DEFENDANT
                   BIG LOTS STORES, INC.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AUTHERINE CROSKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| BIG LOTS STORES, INC., | ) | 2:06-CV-00485-MHT |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify I have served Plaintiff with the foregoing **DEFENDANT BIG LOTS STORES, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS** by causing a copy to be sent via certified mail, return receipt requested, to:

Autherine Croskey3646 Cloverdale RoadMontgomery, Alabama  36111

This 16th day of March, 2007.

/s/ Joseph T. Carpenter
Joseph T. Carpenter
Alabama Bar No. 5114C59J

1