UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AUTHERINE CROSKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| BIG LOTS STORES, INC., | ) | 2:06-CV-00485-MHT |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT BIG LOTS STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Big Lots Stores, Inc. ("Big Lots"), by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby submits its Memorandum of Law in Support of Motion for Summary Judgment.

## I.    INTRODUCTION

Plaintiff Autherine Croskey ("Plaintiff"), a black female, alleges she was subjected to sexual and racial harassment, resulting in a hostile work environment, during her employment at Big Lots Store No. 818 in Montgomery, Alabama in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").  (Compl. ¶¶ 4, 6; Facts ¶¶ 1, 51-52.)  During her deposition, Plaintiff clarified that she has not brought any claims of retaliation or any claims based on her termination from Big Lots in this lawsuit.  (Facts ¶¶ 51, 52.)  Plaintiff's claims of sexual and racial harassment are based on alleged conduct and comments by two Big Lots employees, Mike Williams, an Associate Store Manager, and Billy Pridgen, an Assistant Manager.[1]  (Facts ¶¶ 7, 8.)  The alleged harassment occurred over the course of several months during the Spring of 2005.  (Facts ¶¶ 2-3, 13.)

Plaintiff filed an initial charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") on June 23, 2005, alleging sexual and racial harassment ("June 23 EEOC charge").  Plaintiff received a right to sue notice on June 29, 2005.  Plaintiff did not file a civil action based on the charge.

Plaintiff then filed a second charge of discrimination with the EEOC on September 16, 2005, alleging sexual and racial harassment based on the identical factual allegations of her first charge ("September 16 EEOC charge").  Plaintiff received a right to sue notice on this second charge on May 5, 2006.  Plaintiff then filed this action on May 30, 2006.

Big Lots is entitled to summary judgment on all of Plaintiff's claims for numerous reasons.  As an initial matter, all of Plaintiff's claims are time-barred because she

---

[1] Plaintiff has not alleged she was subjected to any tangible employment action.  Her harassment claims are therefore limited to a hostile work environment.

failed to bring suit within ninety days of receipt of her first right to sue notice and cannot rely on her second, duplicative right to sue notice to revive her untimely claims.

Even if Plaintiff had timely filed suit, Big Lots is otherwise entitled to summary judgment because Plaintiff cannot establish a prima facie case of either sexual or racial harassment. Plaintiff's claims are based on five innocuous and unrelated incidents: (1) one occasion where Williams allegedly made two comments to Plaintiff; (2) three pictures created by Williams; (3) an incident where Pridgen allegedly "kissed at" Plaintiff near the time clock; (4) one occasion when Pridgen allegedly rubbed against Plaintiff while trying to get around her in a confined space by a conveyor belt; and (5) one incident when Pridgen allegedly blew into Plaintiff's face to awaken her after she dozed off at work. As set forth below, Plaintiff admitted that much of this alleged harassment was <u>not</u> based on either her sex or race. Plaintiff identified only two incidents that she personally believed were based on her sex and one incident that she personally believed was based on her race. Plaintiff cannot show that any alleged harassment was based on her sex or race or that it was so severe and pervasive as to alter the terms and conditions of her employment. Further, Big Lots is not liable for any alleged harassment because it took reasonable care to prevent and correct promptly any alleged harassment, and Plaintiff unreasonably failed to take advantage of the preventive and corrective opportunities offered by Big Lots.

## II.    STATEMENT OF FACTS

For purposes of this Memorandum, Big Lots incorporates by reference its Statement of Undisputed Facts, filed contemporaneously.  For the facts referenced in this Memorandum, Big Lots has included specific record cites in its Statement of Undisputed Facts. All cited deposition transcript pages, affidavits, and other documents are attached as exhibits to the Statement of Undisputed Facts.

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.    The Summary Judgment Standard.

Summary judgment is required when "there is no genuine issue as to any material fact."  Celotex Corp. v. Catrett, 477 U.S. 317 (1986), cert. denied, 484 U.S. 1066 (1988).  For an issue of fact to be material, it must be outcome determinative.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-88 (1986).  If the non-moving party fails to make a sufficient showing as to any essential element of his case on which he has the burden of proof, the moving party is entitled to summary judgment as a matter of law.  Celotex, 477 U.S. at 322-23 (emphasis added).  The moving party may discharge its burden of proof merely by "showing . . . that there is an absence of evidence to support the non-moving party's case."  Id. If the moving party successfully articulates such absence of evidence, the burden shifts to the non-moving party to prove the existence of a material "genuine dispute."  Id.  This burden cannot be satisfied through mere conclusory allegations of a "genuine dispute."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

### B.     Plaintiff's Claims Are Time-Barred.

Plaintiff is barred from pursuing all of the claims alleged in her Complaint because she failed to file suit within ninety days of receiving her initial right to sue notice from the EEOC.  Plaintiff filed a charge of discrimination against Big Lots with the EEOC on June 23, 2005, alleging sexual and racial harassment.  (Facts ¶¶ 31-35.)  Plaintiff received the right to sue notice for the June 23 EEOC charge on June 29, 2005.  (Facts ¶¶ 36-39.)  Plaintiff, however, did not file suit within ninety days of her receipt of the right to sue notice.  Instead, Plaintiff filed a second charge of discrimination with the EEOC on September 16, 2005, again alleging sexual and racial harassment.  (Facts ¶¶ 40, 42.)  During her deposition, Plaintiff admitted that her second charge was based on the same factual allegations as the June 23 charge.  (Facts ¶¶ 32-35, 40, 42-46, 49, 74, 80, 84, 113, 125, 138, 147.)  In other words, Plaintiff's September 16 EEOC charge is duplicative of her June 23 EEOC charge and is essentially a refiling of the same charge.  Plaintiff testified that she only filed the second charge because her first charge was dismissed.  (Facts ¶ 41.)  Plaintiff received a right to sue notice on the September 16 EEOC charge on May 5, 2006.  (Facts ¶¶ 47-48.)  Plaintiff filed the instant Complaint on May 30, 2006, nearly a year after she received the right to sue notice on the June 23 EEOC charge.

Section 2000e-5(f)(1) of Title VII requires a charging party to file suit on his or her Title VII claims within ninety days of receiving a right to sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1); see also Green v. Union Foundry Co., 281 F.3d 1229, 1233 (11th Cir. 2002); Lawson v. Bruno's, Inc., No. 91-0992, 1993 U.S Dist. LEXIS 3629, at *18 (S.D. Ala. Mar. 23, 1993) ("This ninety day period has been held to be the equivalent of a statute of limitations period by the courts, and has been strictly enforced.") (attached as Ex. 1).  Because Plaintiff did not file her Complaint within ninety days of her right to sue notice issued for the

June 23 EEOC charge, her claims in this suit are time-barred. Plaintiff's failure to initiate suit after receipt of her first right to sue notice cannot be cured by filing her Complaint within ninety days of receipt of the right to sue notice for the September 16 EEOC charge.

In a case directly on point, <u>Lo v. Pan Am. World Airways, Inc.</u>, 787 F.2d 827, 828 (2d Cir. 1986), the plaintiff failed to file a lawsuit within ninety days of receiving her right to sue notice for her first EEOC charge. The plaintiff then filed a second EEOC charge based on the same facts as the first charge and obtained a second right to sue notice. <u>Id.</u> The court of appeals affirmed the district court's dismissal of the plaintiff's claims, holding that the timeliness of the plaintiff's lawsuit "must be determined with reference to only the first [right to sue notice]." <u>Id.</u> The court reasoned that "[o]therwise, the time limitations of [Title VII] would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional [right to sue notices] whenever they pleased." <u>Id.</u>; <u>see also</u> <u>Dowdell v. Sunshine Biscuits, Inc.</u>, 90 F.R.D. 107, 116 (M.D. Ga. 1981) (barring the plaintiff from pursuing claims from his first charge of discrimination because he failed to file suit within ninety days of receipt of his right to sue notice).

Other courts have consistently held that a plaintiff's claims based on an initial EEOC charge are time-barred where he or she failed to bring suit within ninety days of the right to sue notice and instead filed a second EEOC charge based on the same allegations as the first charge. <u>See, e.g.</u>, <u>Coleman v. Montgomery County Bd. of County Comm'rs</u>, No. 3:06-CV-143, 2006 U.S. Dist. LEXIS 84381, at *1, 2-5 (S.D. Ohio Nov. 19, 2006) (dismissing the complaint as time-barred where the plaintiff failed to file suit within ninety days of receipt of the right to sue notice on his first administrative charge because the second charge was a refiling of the same claims made in the first charge) (attached as Ex. 2); <u>Gilmore v. Potter</u>, No. 4:04-CV-1264, 2006

U.S. Dist. LEXIS 81991, at *1, 9-11 (E.D. Ark. Nov. 7, 2006) (holding the plaintiff was barred from asserting a claim based upon acts asserted in prior EEOC charges because the lawsuit was not filed within the ninety-day limitations period) (attached as Ex. 3); Azari v. Target Corp., No. 3:05-CV-0095, 2005 U.S. Dist. LEXIS 36205, at *1, 6-9 (N.D. Tex. Dec. 5, 2005) (granting summary judgment as to all claims alleged in the plaintiff's first EEOC charge where he failed to bring the lawsuit within the ninety-day limitations period) (attached as Ex. 4).  It is undisputed that Plaintiff's June 23 and September 16 EEOC charges are based on the exact same factual allegations and that Plaintiff did not file this lawsuit within ninety days of receiving her first right to sue notice.  (Facts ¶¶ 32-35, 40, 42-46, 49, 74, 80, 84, 113, 125, 138, 147.)  Under the well-settled case law, Plaintiff cannot revive those claims by relying on her second right to sue notice.  See, e.g., Lo, 787 F.2d at 828; Dowdell, 90 F.R.D. at 116.  Plaintiff's lawsuit was therefore untimely filed, and Big Lots is entitled to summary judgment on all of Plaintiff's claims.  Lawson, 1993 U.S Dist. LEXIS 3629, at *18.

C.     **Big Lots Is Otherwise Entitled to Summary Judgment on Plaintiff's Claims.**

Even if Plaintiff's claims were timely, which they are not, Plaintiff cannot establish a prima facie case of either sexual harassment or racial harassment. Plaintiff alleges she was subjected to sexually and racially harassing conduct by two Big Lots management employees: Mike Williams and Billy Pridgen. (Facts ¶¶ 7-8, 50, 54-81, 82-113, 114-148.) To state a prima facie case of hostile work environment based on either sexual or racial harassment by a supervisor, Plaintiff must establish (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment"; and (5) a basis for holding Big Lots liable for the alleged harassment. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (citation omitted); see also Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1276 (11th Cir. 2002).

During her deposition, Plaintiff identified five isolated and unrelated incidents of alleged harassment as the basis of her claims. (Facts ¶¶ 50, 148.) Plaintiff testified that, on one occasion, Williams allegedly made a comment to her about a metal screw and a comment about "Jerry beads."[2] (Facts ¶¶ 54-55, 64-65.) Plaintiff also testified that, on another occasion, Williams created pictures of her by superimposing her picture from her employee badge on (1) a play or fake $100 bill; (2) a picture of a person in a clown suit; and (3) a cartoon

---

[2] Plaintiff also testified that in March 2005, she overheard Williams make a comment about a white female customer. (Facts ¶¶ 75-81.) However, Plaintiff admitted in her deposition that Williams's comment about the customer had nothing to do with Plaintiff's sex or race, and Plaintiff was not personally affected by the comment. (Facts ¶¶ 77-78.) Plaintiff therefore cannot base her claims of sexual and racial harassment upon that comment by Williams. See, e.g., Henson v. Dundee, 682 F.2d 897, 904 (11th Cir. 1982) (holding a plaintiff "must show that but for the fact of her sex, she would not have been the object of harassment"); Lee v. Reinhardt Motors, Inc., No. 2:05-CV-235, 2006 U.S. Dist. LEXIS 78093, at *45 (M.D. Ala. Oct. 25, 2006) (explaining in considering racial harassment claims, courts must "focus[ ] only on whether the complaining employee was targeted because of his or her race").

picture, showing Plaintiff seated next to Jerry Culpepper, the Store Manager. (Facts ¶¶ 5-6, 82-86, 93, 96-98, 100.) Plaintiff identified three separate incidents of harassing conduct by Pridgen: (1) on one occasion, Pridgen allegedly "kissed at" Plaintiff's face while she was standing next to the time clock; (2) on another occasion, when Plaintiff was working with Pridgen in a confined space at a conveyor belt, Pridgen allegedly rubbed against Plaintiff as he moved around her to retrieve some boxes; and (3) Pridgen allegedly once blew in Plaintiff's face to awaken her when she dozed off during a break at work. (Facts ¶¶ 114-118, 126-132, 139-143.)

As discussed in detail below, the incidents identified by Plaintiff do not establish a prima facie case of sexual or racial harassment. Of the five incidents of alleged harassment raised by Plaintiff, Plaintiff identified only two incidents that she <u>believed</u> were based on her sex: the incident involving the alleged metal screw and "Jerry beads" comments, and the incident at the time clock when Pridgen allegedly "kissed at" her face. (Facts ¶¶ 60, 70, 119.) Plaintiff identified only one incident that, <u>in her personal opinion</u>, was based on her race: the pictures created by Williams. (Facts ¶ 102.) Plaintiff admitted that the remaining incidents of alleged harassment had nothing to do with either her sex or race. (Facts ¶¶ 59, 69, 90, 101, 122, 135, 145.)

1.    **Plaintiff Cannot Show Any Alleged Harassment Was Based on Her Sex.**

Plaintiff cannot establish the third element of her prima facie case of sexual harassment.  To do so, Plaintiff must establish the alleged harassment was <u>because of her sex</u>.  <u>Henson v. Dundee</u>, 682 F.2d 897, 904 (11th Cir. 1982) (holding a plaintiff "must show that but for the fact of her sex, she would not have been the object of harassment").  Where "the conduct complained of is equally offensive to male and female workers," the conduct is not "based upon sex because men and women are accorded like treatment."  <u>Id.</u>  The allegedly harassing statements and conduct therefore "must be of a sexual or gender-related nature—'sexual advances, requests for sexual favors, or conduct of a sexual nature.'"  <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 583 (11th Cir. 2000) (quoting <u>Mendoza</u>, 195 F.3d at 1245).  "Innocuous statements or conduct, or boorish ones that do not relate to the sex of the actor or of the offended party . . . are not" harassment based on sex.  <u>Id.</u>

Of the five incidents of alleged harassment identified by Plaintiff, she admitted that most of the alleged conduct had nothing to do with her sex.  (Facts ¶¶ 90, 95, 101, 135, 145.)  Plaintiff stated that only two incidents, in her personal opinion, were based on her sex:  Williams's alleged comments about a metal screw and "Jerry beads," and the incident with Pridgen at the time clock where he allegedly "kissed at" Plaintiff.  (Facts ¶¶ 60, 70, 119.)

Plaintiff testified that the first incident involved Williams asking her, "Do you want a screw?" while holding a metal screw, and shortly thereafter asking her, "Do you want some Jerry beads?"  (Facts ¶¶ 54-55, 64-65.) Williams did not make any reference to Plaintiff's sex.  (Facts ¶¶ 55, 57, 64-66.)  Plaintiff testified she does not know why Williams made the comments, she does not know if he was trying to be funny, and she does not know if he made the same or similar comments to male employees.  (Facts ¶¶ 56, 58, 67-68.)  Plaintiff testified she

believes the comment about the metal screw had something to do with her sex because she personally equates the term "screw" with the term "sex."  (Facts ¶ 60.)  Similarly, she testified it was just her personal belief Williams's comment about "Jerry beads" had something to do with her sex.  (Facts ¶ 70.)

Plaintiff has not identified any evidence that Williams made these comments because of her sex, beyond her personal belief and speculation, which is insufficient to defeat a motion for summary judgment.  See, e.g., Bevill v. UAB Walker College, 62 F. Supp. 2d 1259, 1268 (N.D. Ala. 1999) (explaining "[b]are speculation based on loose construal of the evidence will not satisfy the non-movant's burden" at summary judgment).  Simply because Plaintiff equates the term "screw" with the term "sex" does not establish that Williams's comment was based on her sex.  See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 118 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations.").

With respect to the second incident, Plaintiff testified that she was leaning against the wall beside the time clock, waiting to clock out, when Pridgen put his arms on the wall around Plaintiff.  (Facts ¶¶ 114-115.)  Pridgen did not put his arms on Plaintiff.  (Facts ¶ 115.)  Plaintiff testified that Pridgen "kissed at" her face, but did not actually kiss her, and that the entire incident only lasted a few seconds.  (Facts ¶¶ 117-118.)  Pridgen made no reference to Plaintiff's sex during this brief interaction.  (Facts ¶ 121.)  Plaintiff testified she did not know why Pridgen acted this way, Plaintiff conceded it was possible he was trying to be funny, and Plaintiff admitted she did not know whether Pridgen had acted in the same manner with male employees.  (Facts ¶¶ 119-120, 123.)

Accordingly, Plaintiff cannot establish this essential third element of a prima facie case of sexual harassment, and Big Lots is entitled to summary judgment on such claim.  <u>See</u> Mendoza, 195 F.3d at 1245.

**2.    <u>Plaintiff Cannot Show Any Alleged Harassment Was Based on Her Race.</u>**

Plaintiff also cannot establish the third element of a prima facie case of racial harassment.  In evaluating a racial harassment claim, a court "'focuses only on whether the complaining employee was targeted <u>because of his or her race.</u>'"  <u>Lee v. Reinhardt Motors, Inc.</u>, No. 2:05-CV-235, 2006 U.S. Dist. LEXIS 78093, at *45 (M.D. Ala. Oct. 25, 2006) (quoting <u>Succar v. Dade County</u>, 229 F.3d 1343, 1345) (11th Cir. 2000) (emphasis added) (attached as Ex. 5).  "The mere fact that [a plaintiff] is African-American is insufficient to demonstrate that the conduct about which [a plaintiff] complains is racially motivated."  <u>Id.</u>  To survive a motion for summary judgment, a "plaintiff must come forward with . . . <u>evidence</u> in support of his claim that the conduct was based on his race."  <u>Id.</u> at *44-45 (emphasis added).

Plaintiff admitted that four of the five incidents of alleged harassment had nothing to do with her race.  (Facts ¶¶ 69, 122, 135, 145.)  Plaintiff testified generally that she believes only the incident involving the pictures created by Williams was based on her race.  (Facts ¶ 102.)  Specifically, Plaintiff testified that Williams created three pictures of Plaintiff by superimposing her employee badge picture onto (1) a play $100 bill; (2) a picture of a person in a clown suit; and (3) a cartoon, showing Plaintiff seated next to Jerry Culpepper, the Store Manager.  (Facts ¶¶ 82-84, 96-98, 100.)  Culpepper's picture also was superimposed onto the cartoon. (Facts ¶¶ 96-98.)

However, Plaintiff's testimony regarding each specific picture shows Plaintiff lacks any evidence that the pictures were based on her race.  None of the pictures made

any reference to race.  (Facts ¶ 102.)  Plaintiff testified she did not know if Williams placed white employees' pictures on fake $100 bills or pictures with clown suits.  (Facts ¶¶ 88-89, 95.) Plaintiff further admitted that her picture on the $100 bill did not have anything to do with her race.  (Facts ¶ 90.)  Indeed, Plaintiff found that particular picture objectionable because the word "bogus" appeared on the fake bill, which Plaintiff interpreted to mean she was "as bogus as th[e] note."  (Facts ¶¶ 91-92.)  Similarly, Plaintiff found the clown suit picture objectionable not because of any connotations of race discrimination, but because she was shown wearing a clown suit.  (Facts ¶¶ 93-94.)  The courts have underscored that a plaintiff's "status as an African-American employee [does not] convert[ ] . . . other non-African-American employees' . . . comments or actions, regardless of context, into racially motivated comments or actions."  Lee, 2006 U.S. Dist. LEXIS 78093, at *45.

With respect to the third picture, where Plaintiff was depicted with Jerry Culpepper, Plaintiff conceded that Culpepper, who is white, also appeared in this picture and other pictures in a similar manner.  (Facts ¶¶ 96-99.)  Plaintiff also testified that she could see how Culpepper could find the pictures even more objectionable than she did.  (Facts ¶¶ 96-99.) Plaintiff cannot establish Williams created this picture because of her race when Williams created pictures which also depicted Culpepper, a white individual, in the same manner as Plaintiff.  See Henson, 682 F.2d at 904 (holding that where the conduct complained of is "equally offensive" to individuals both inside and outside the protected class, there is no discrimination based on a protected status because all individuals were "accorded like treatment").

Plaintiff lacks any evidence, beyond her personal belief and speculation, that the pictures created by Williams were based on her race.  (Facts ¶¶ 87-89, 90, 91-95, 102.)

Plaintiff admitted she does not have any personal knowledge as to why Williams used employees' pictures or whether employees' race played a role in Williams's creation of the pictures. (Facts ¶¶ 102-103.)  It appears the only evidence Plaintiff can offer to support her contention is the fact that she is African-American and she appeared in the pictures, which does not establish that the pictures were racially motivated. (Facts ¶ 104.) <u>Lee</u>, 2006 U.S. Dist. LEXIS 78093, at *45 ("The mere fact that [a plaintiff] is African-American is insufficient to demonstrate that the conduct about which [a plaintiff] complains is racially motivated."). Because Plaintiff cannot establish this essential element of a prima facie case of racial harassment, Big Lots also is entitled to summary judgment on Plaintiff's claim of racial harassment. <u>Id.</u> at *44-45.

**3.     Plenaintiff Cannot Show She Was Subjected to Severe And Pervasive Sexual Or Racial Harassment.**

Moreover, Plaintiff cannot establish she was subjected to severe and pervasive harassment as required under the fourth element of her prima facie case.  For an employer's conduct to constitute actionable harassment, the conduct must be "so objectively offensive as to alter the 'conditions' of the [individual's] employment."  Oncale, 523 U.S. at 81.  Title VII addresses only those situations where a plaintiff's work environment is "permeated with discriminatory intimidation, ridicule, and insult."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (emphasis added).  In assessing whether conduct is sufficiently severe and pervasive, courts must examine the "totality of the circumstances" based upon four factors:   (1) the frequency of conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening;  and  (4)  whether  the  conduct  unreasonably  interferes  with  the  employee's  job performance.  Mendoza, 195 F.3d at 1246.  These factors "delineate a minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination in violation of Title VII."  Id.  "A plaintiff must establish not only that she subjectively perceived the environment as hostile and abusive, but also that a reasonable person would perceive the environment to be hostile and abusive."  Gupta, 212 F.3d at 583.

The Eleventh Circuit has stringently applied the "severe and pervasive" requirement.  For example, in the sexual harassment context, the Eleventh Circuit held the following conduct did not constitute actionable sexual harassment:  (1) where a supervisor stated to the plaintiff, "I'm getting fired up"; (2) where a supervisor rubbed his hip against the plaintiff's, while touching her shoulder and smiling; (3) multiple instances when a supervisor made sniffing noises while looking at the plaintiff's groin area; and (4) a supervisor's constant following and staring at the plaintiff.  Mendoza, 195 F.3d at 1247; see also Weiss v. Coca-Cola

Bottling Co. of Chicago, 990 F.2d 333, 337 (7th Cir. 1993) (holding supervisor who repeatedly inquired about the plaintiff's personal life, stated how beautiful the plaintiff was, asked the plaintiff out on dates, called her a dumb blonde, put his hand on her shoulder several times, placed "I love you" signs in her work area, and tried to kiss the plaintiff twice at work and once at a bar did not create an actionable hostile work environment).  Similarly, the Eleventh Circuit has held the following conduct did <u>not</u> meet the required minimum threshold in the racial harassment context:  (1) displaying of the Confederate flag in working areas; (2) displaying the letters "KKK" on a bathroom wall; (3) placing a noose in an employee's locker; (4) supervisors calling the plaintiff "nigger" and "boy"; (5) a supervisor threatening to kick the plaintiff's "black ass"; and (6) a supervisor threatening to "cut" the plaintiff if he "looked at 'that white girl.'"  Barrow v. Ga. Pac. Corp., 144 Fed. Appx. 54, 57 (11th Cir. 2005) (attached as Ex. 6); see also Smith v. Beverly Health & Rehab. Servs., Inc., 978 F. Supp. 1116, 1121-22 (N.D. Ga. 1997) (holding multiple racially derogatory comments by supervisor were insufficient to establish severe and pervasive harassment).

Even if true, the conduct alleged by Plaintiff does not satisfy the severe and pervasive requirement as a matter of law.  The only harassing conduct alleged by Plaintiff includes: (1) Williams's comments about a metal screw and "Jerry beads"; (2) the three pictures of Plaintiff created by Williams; (3) the time clock incident with Pridgen; (4) the conveyor belt incident with Pridgen; and (5) the occasion when Pridgen attempted to awaken Plaintiff, who had dozed off while working.  (Facts ¶¶ 54-55, 64, 82, 83-86, 93, 96-98, 100, 114-118, 126-132, 139-143, 148.)  These isolated, unrelated, and innocuous incidents fall far short of the severe and pervasive standard.

a. **The conduct alleged by Plaintiff was not frequent.**

The alleged conduct described by Plaintiff was not frequent. These five alleged incidents of harassment occurred over a period of several months.[3] (Facts ¶¶ 2, 50, 148.) The metal screw and "Jerry beads" comments allegedly occurred on one occasion in March 2005, and the pictures by Williams allegedly occurred between March 28 and 30, 2005. (Facts ¶¶ 54, 65, 83.) The time clock incident and the conveyor belt incident involving Pridgen allegedly occurred in May 2005. (Facts ¶¶ 114, 126.) Plaintiff alleges that the final incident with Pridgen when he tried to awaken her after she dozed off occurred in June 2005. (Facts ¶¶ 139, 141.) Further, as discussed above in §§ III(C)(1) and (2), of the five incidents alleged by Plaintiff, she testified that only two were related to her sex and only one was related to her race. (Facts ¶¶ 60, 70, 102, 119.) When limited only to those incidents allegedly based on her sex or race, the conduct alleged by Plaintiff becomes even less frequent. See Mendoza, 195 F.3d at 1249 (holding instances of physical contact and inappropriate statements, multiple instances of making sexual sounds, and "constant" following and staring did not establish frequent harassing conduct). Compare Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1248 (11th Cir. 2004) (holding summary judgment improper on sexual harassment claim where the harassing conduct occurred "at least 18 times during . . . 2 to 2 1/2 weeks" and the plaintiff's term of employment lasted only five weeks); and Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 509 (11th Cir. 2000) (holding harassing behavior was frequent where the plaintiff demonstrated fifteen separate instances of harassment over four months).

---

[3] Plaintiff only identifies three alleged incidents involving Pridgen even though Plaintiff worked with Pridgen during most of her employment at Big Lots. (Facts ¶¶ 2, 8.)

### b.    The conduct alleged by Plaintiff was not severe.

Moreover, the conduct alleged by Plaintiff was not severe.  Plaintiff testified that only two incidents were based on her sex:  the alleged incident involving Williams's comments about the metal screw and "Jerry beads," and the alleged time clock incident with Pridgen.  (Facts ¶¶ 60, 70, 119.)  The alleged comments by Williams, at worst, constitute the "'simple teasing,' [and] offhand comments" that "will not amount to discriminatory changes in the 'terms and conditions of employment.'"  <u>Faragher</u>, 524 U.S. at 807; <u>see also</u> <u>Gupta</u>, 212 F.3d at 585 ("What one employee might perceive as conduct that crosses the proverbial line, another might perceive as banter.");  <u>Long v. Eastfield College</u>, 88 F.3d 300, 309 (5th Cir. 1996) (holding an "offensive joke" cannot support a claim for hostile work environment).

With respect to the time clock incident, Plaintiff testified that Pridgen placed his arms on the wall around Plaintiff, but did not touch her with his arms and did not actually kiss her.  (Facts ¶¶ 114-118.)  According to Plaintiff, this incident lasted only a few seconds.  (Facts ¶ 117.)  Even if the incident was based on Plaintiff's sex, it "was only momentary," and was not "coupled with any verbal suggestions or advances," and cannot be considered severe conduct.  <u>Gupta</u>, 212 F.3d at 585 (holding plaintiff had not established "severe" conduct where supervisor touched the inside of her thigh on one occasion and lifted the hem of the plaintiff's dress by four inches on another occasion).  The courts have held that far more egregious conduct was insufficiently severe to establish a hostile work environment.  <u>See, e.g.</u>, <u>Otu v. Papa John's USA, Inc.</u>, No. 1:04-CV-633, 2005 U.S. Dist. LEXIS 27278, at *29-30 (N.D. Ga. Aug. 19, 2005) (finding attempts to hug and kiss the plaintiff and to rub his private parts over the course of a three-month period, in addition to other conduct, was not severe)

(attached as Ex. 7); see also Minor v. Ivy Tech State College, 174 F.3d 855, 857 (7th Cir. 1999) (holding hostile environment not established where, among other things, supervisor put his arms around the plaintiff and kissed and squeezed her); Weiss, 990 F.2d at 337 (holding the plaintiff did not establish severe conduct where supervisor, among other conduct, attempted to kiss the plaintiff on three occasions and frequently placed his hand on the plaintiff's shoulder).

Plaintiff also alleges the pictures created by Williams constituted racial harassment. As discussed in § III(C)(2), Plaintiff's contention that the three pictures targeted her because of her race is tenuous at best. Even assuming Plaintiff satisfied that prong of the prima facie case, the three pictures at issue contain no racial slurs or racial connotations.[4] (Facts ¶ 102.) In other cases, courts have held pictures or similar items with clear racial and/or discriminatory connotations did not constitute sufficiently severe conduct to establish a hostile work environment. See Lee, 2006 U.S. Dist. LEXIS 78093, at *10 n.11, 39 (concluding the plaintiff did not establish a racially hostile work environment where the plaintiff alleged, among other conduct, a supervisor drew a picture depicting a Ku Klux Klan member and stated, "this is the last thing a black man seen when he was falling down the well"); see also Barrow, 144 Fed. Appx. at 57 (holding plaintiffs failed to establish racial harassment sufficiently severe and pervasive to alter working conditions where the Confederate flag and the letters "KKK" were displayed in the workplace); Hyath v. City of Decatur, No. 1:04-CV-1135, 2006 U.S. Dist. LEXIS 21184, at *4-5, 21 (holding superimposition of a picture of the plaintiff, a practicing Muslim, on an FBI poster seeking an individual suspected of being involved in the September 11, 2001 hijackings was not sufficiently severe to create a hostile work environment) (attached

---

[4] Plaintiff admitted that the pictures did not reference her race, and when asked specifically about her objections to the fake $100 bill and the clown suit picture, Plaintiff's objections to the pictures had nothing to do with her race. (Facts ¶¶ 91-92, 94, 102.)

as Ex. 8); <u>Baker v. Ala. Dep't of Pub. Safety</u>, 296 F. Supp. 2d 1299, 1302, 1309 (M.D. Ala. 2003) (holding superimposition of a picture of the plaintiff, a state trooper, on that of an Arab terrorist and displayed for over a month at the workplace was not severe conduct).  The pictures identified by Plaintiff similarly do not rise to the level of severe conduct sufficient to establish a hostile work environment.[5]

### c.    The conduct alleged by Plaintiff was not physically threatening.

Plaintiff lacks any evidence that the alleged conduct was physically threatening or intimidating.  Of the five incidents of harassment alleged by Plaintiff, only two involved any physical contact.  (Facts ¶¶ 115, 129-130.)  Specifically, Plaintiff testified that when she and Pridgen were working at the conveyor belt on that single occasion, Pridgen rubbed against Plaintiff and briefly placed his hand on her shoulder as he moved around her to get boxes.  (Facts ¶¶ 126-130.)  Plaintiff, however, admitted that she and Pridgen were working in a confined space and that Pridgen is a large person.  (Facts ¶ 131.)  She does not know if the physical contact was accidental or intentional, and she does not know if Pridgen was teasing her. (Facts ¶¶ 133-135.)  This incident only lasted a few seconds, and Plaintiff continued on with her work duties afterward.  (Facts ¶¶ 117, 124, 132, 137, 143, 146.)  During the separate incident at the time clock, Plaintiff testified that Pridgen's body touched hers briefly because of his weight. (Facts ¶¶ 115, 117.)  Pridgen did not put his arms on Plaintiff and he did not kiss her.  (Facts ¶¶ 115, 118.)  This incident also lasted only a few seconds; Plaintiff then moved away, clocked out,

---

[5] The remaining two allegations of harassment include the incident with Pridgen at the conveyor belt and the incident where he attempted to awaken Plaintiff, who had fallen asleep during her break. (Facts ¶¶ 126-136, 139-145.)  As discussed above in § III(C), Plaintiff admitted she did not know whether these two remaining incidents had anything to do with her race or sex.  (Facts ¶¶ 135, 144-145.)  Therefore, these incidents should not be considered by the Court.  Even if they were considered, however, these incidents also do not involve conduct which would be considered severe as a matter of law.  <u>See, e.g.</u>, <u>Barrow</u>, 144 Fed. Appx. at 57; <u>Gupta</u>, 212 F.2d 585.

and went home.  (Facts ¶¶ 116, 117.)  Based on these facts, Plaintiff also cannot establish Pridgen's conduct was physically threatening.  See, e.g., Gupta, 212 F.3d at 585 (holding the plaintiff did not establish physically threatening conduct where supervisor stared at her, touched her ring and bracelet, placed his hand on the inside of her thigh, and raised the hem of her dress four inches with his hand); Mendoza, 195 F.3d at 1248-49 (holding one instance of supervisor brushing against the plaintiff was not threatening); Minor, 174 F.3d at 857 (holding hostile environment not established where, among other things, supervisor put his arms around the plaintiff and kissed and squeezed her).

### d.    The conduct alleged by Plaintiff did not alter the terms and conditions of her employment.

Finally, none of the alleged conduct altered Plaintiff's terms and conditions of employment.  Significantly, Plaintiff testified that, throughout her employment, she was able to perform her job duties and perform them well.  (Facts ¶¶ 9, 11-12.)  See Cartwright v. Talaca, Inc., No. 99-W-663, 2000 U.S. Dist. LEXIS 20500, at *19 (M.D. Ala. Nov. 1, 2000) (finding conduct complained of by the plaintiff did not alter her terms and conditions of employment where the plaintiff testified she continued to work as usual, she worked almost every day, and she did a good job) (attached as Ex. 9).  In fact, Plaintiff testified that she liked working at Big Lots, and that she loved her job.  (Facts ¶ 10.)  Further, Plaintiff cannot identify any medical treatment she sought as a result of the alleged hostile work environment at Big Lots. (Facts ¶ 53.)

In sum, the five incidents alleged by Plaintiff fall far short of the severe and pervasive threshold.  See, e.g., Barrow v. Ga. Pac. Corp., 144 Fed. Appx. at 57; Mendoza, 195 F.3d at 1247; Weiss, 990 F.2d at 337; Smith, 978 F. Supp. at 1121-22.  Plaintiff cannot demonstrate that her workplace was "permeated with discriminatory intimidation, ridicule, and

insult." Harris, 510 U.S. at 21. Because the conduct alleged by Plaintiff was neither severe nor pervasive, Plaintiff cannot establish she was subject to actionable harassment as a matter of law, and Big Lots is entitled to summary judgment on Plaintiff's harassment claims. Mendoza, 195 F.3d at 1249, 1251-52.

### 4.    Big Lots Is Not Liable for the Allegedly Harassing Conduct.

Lastly, even if Plaintiff were able to establish she was subjected to a sexually and/or racially hostile work environment, she cannot establish a basis for Big Lots' liability because Big Lots satisfies the affirmative defense set forth in Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998) and Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998). An employer may avoid vicarious liability for an actionable hostile environment created by a supervisor if two requirements are met: (1) "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities or to avoid harm otherwise." Faragher, 524 U.S. at 807.

An employer can generally satisfy the first prong of the affirmative defense by "promulgating a comprehensive anti-harassment policy." See, e.g., Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1297 (11th Cir. 2000). In determining whether an employer's anti-harassment policy is sufficiently reasonable, courts examine whether the employer made the policy known to employees, vigorously enforced it, and included alternate avenues of redress. Farley v. Am. Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997).

At all times during Plaintiff's employment, Big Lots had in place an anti-harassment policy that met these requirements. (Facts ¶¶ 15-16.) Big Lots maintained a Harassment-Free Environment policy and distributed such policy to all employees in the

Associate Handbook. (Facts ¶¶ 14-16, 20-22.) Plaintiff testified she received a copy of the handbook at the time of her hire and signed an acknowledgment affirming that she had reviewed the contents of the handbook. (Facts ¶ 14.) Plaintiff further testified she was familiar with the Harassment-Free Environment policy during her employment. (Facts ¶ 22.)

Big Lots' Harassment-Free Environment policy "strictly prohibits harassment and/or discrimination based on race, color, [or] . . . sex . . . ." (Facts ¶¶ 16, 20.) The policy states: "Any associate who believes he/she has been the subject of harassment is responsible for promptly reporting the alleged act to Human Resources or his/her immediate supervisor." (Facts ¶¶ 16, 21.)[6] The Harassment-Free Environment policy also prohibits retaliation against employees who make complaints. (Facts ¶ 16.)

Big Lots satisfies the first prong of the affirmative defense. It is undisputed the Harassment-Free Environment policy prohibits all forms of harassment, provides alternate avenues for employees to report such conduct, and was disseminated to employees, including Plaintiff, through the Associate Handbook. See Farley, 115 F.3d at 1553 (holding policy that expressly prohibited sexual harassment, provided multiple avenues to report harassment, and was disseminated and communicated to staff was reasonable).

---

[6] In addition to the Harassment-Free Environment policy, the Associate Handbook distributed to employees contains other policies specifically aimed at prohibiting discrimination and addressing employee complaints. (Facts ¶¶ 15-19, 23-30.) Big Lots' Equal Employment Opportunity policy prohibits discrimination based upon, among other things, race, color, and sex, and directs employees to report any formal or informal allegations of discriminatory conduct to Human Resources. (Facts ¶¶ 16-19.) Big Lots' Open Door policy encourages any employee with a question or problem to use the Open Door policy to contact anyone in the organization. (Facts ¶¶ 16, 23-25.) The Open Door policy also provides that employees may make anonymous complaints by calling the Get Real Hotline, which is a toll-free complaint number. (Facts ¶¶ 16, 26-27.) The Associate Handbook also contains a Standards of Conduct policy, which specifically states that violations of company policy, including the Harassment-Free Environment policy, will not be tolerated. (Facts ¶¶ 16, 28-30.) Plaintiff was aware of and understood all of these policies during her employment with Big Lots. (Facts ¶¶ 18, 22-23, 30.)

An employer can satisfy the second prong of the affirmative defense by showing the employee failed to follow the employer's complaint procedures. Id. at 1302. It is undisputed that Plaintiff made no complaints concerning four of the allegedly harassing incidents, despite her awareness of Big Lots' policies and procedures on reporting harassment. (Facts ¶¶ 18, 22-23, 30, 71, 79, 124, 137, 146.) Plaintiff admitted she did not make a complaint about any of the alleged incidents involving Pridgen. (Facts ¶¶ 18, 22-23, 30, 71, 79, 124, 137, 146.) Plaintiff likewise failed to take advantage of Big Lots' corrective measures by failing to make complaints of harassment concerning the alleged incident involving the metal screw comment and "Jerry beads" comment. Plaintiff testified that she merely repeated Williams's alleged metal screw comment to Culpepper, the Store Manager. (Facts ¶¶ 5-6, 62, 64-65, 71.) Moreover, Plaintiff admitted she did not complain to anyone at Big Lots about the "Jerry beads" comment. (Facts ¶ 71.) By failing to complain, Plaintiff unreasonably failed to take advantage of the corrective measures put into place by Big Lots. See Faragher, 524 U.S. at 807.

Plaintiff testified that she reported the pictures created by Williams to Big Lots' Assets Protection and Human Resources departments. (Facts ¶ 106.) Plaintiff did not testify that she reported the pictures with the intention of complaining about harassment or of invoking Big Lots' Harassment-Free Environment policy. (Facts ¶ 62, 106.) See Madray, 208 F.3d at 1302 (holding employees unreasonably failed to take advantage of employer's anti-harassment policies where they complained "during informal . . . circumstances" and did not request that any action be taken). Even assuming that Plaintiff availed herself of Big Lots' policies and procedures and actually complained of harassment with respect to the pictures, Big Lots nevertheless has satisfied the affirmative defense because it took prompt and effective corrective action to address the alleged conduct. (Facts ¶¶ 63, 72-73, 107-112.) The day after Plaintiff reported the pictures to Big Lots, Plaintiff met with Culpepper and a Big Lots District Manager, who informed her Williams was disciplined for the pictures. (Facts ¶¶ 107-109.) Williams received a final counseling session and written Disciplinary Counseling for violating Big Lots' Standards of Conduct policy by creating the pictures. (Facts ¶¶ 109-110.) Culpepper apologized for the pictures and told Plaintiff it would not happen again. (Facts ¶ 108.) After Big Lots' timely investigation and discipline of Williams, there were no further pictures, and Plaintiff conceded that Big Lots took effective action.[7] (Facts ¶¶ 107-112.)

---

[7] Big Lots also took prompt and effective corrective action with respect to the alleged metal screw comment and the "Jerry beads" comment, even though Plaintiff did not actually complain about the comments. Plaintiff testified that after she repeated the metal screw comment to Culpepper and he

Because Big Lots took prompt corrective action that ended the alleged conduct, it cannot be held liable. <u>Arnold v. Tuskegee Univ.</u>, No. 06-11156, 2006 U.S. App. LEXIS 31476, at *15 (11th Cir. Dec. 19, 2006) (holding employer established affirmative defense when it promptly investigated an employee's complaint of sexual harassment and took effective action to prevent further harassment); <u>Indest v. Freeman Decorating</u>, 164 F.3d 258, 267 (5th Cir. 1999) (holding employer's prompt remedial action relieved it of liability for alleged harassment); <u>Ellison v. Auburn Univ.</u>, No. 2:05-CV-902, 2006 U.S. Dist. LEXIS 82694, at *15-16 (M.D. Ala. Nov. 13, 2006) (holding employer not liable for harassing conduct because it took immediate corrective action upon receiving notice of harassment). Big Lots has accordingly established an affirmative defense to all of Plaintiff's claims, and summary judgment on all such claims is appropriate. <u>Faragher</u>, 524 U.S. at 807.

## IV.    CONCLUSION

Plaintiff's claims of sexual and racial harassment are barred because Plaintiff failed to timely file suit after receiving the right to sue notice on her initial EEOC charge. Moreover, even if Plaintiff's claims were timely filed, she cannot establish a prima facie case of sexual or racial harassment, and Big Lots is entitled to the <u>Faragher</u>/<u>Ellerth</u> affirmative defense on liability. For these reasons, Big Lots is entitled to summary judgment on all of Plaintiff's claims.

Respectfully submitted this 16th day of March, 2007.

Stephen X. Munger
Georgia Bar No. 529611
Gregory L. Smith, Jr.
Georgia Bar No. 658369
JACKSON LEWIS LLP
1900 Marquis One Tower
245 Peachtree Center Avenue, N.E.
Atlanta, Georgia  30303-1226
Telephone:    404-525-8200
Facsimile:    404-525-1173

LOCAL COUNSEL:              /s/ Joseph T. Carpenter_____

---

heard the "Jerry beads" comment, Culpepper immediately spoke with Williams, and Williams never made similar comments to Plaintiff thereafter. (Facts ¶¶ 63, 72-73.)

Joseph T. Carpenter
Alabama Bar No. 5114C59J
CARPENTER, INGRAM & MOSHOLDER, LLP
303 Sterling Centre
4121 Carmichael Road
Montgomery, Alabama  36106
Telephone:     334-213-5600
Facsimile:     334-213-5650

ATTORNEYS FOR DEFENDANT
BIG LOTS STORES, INC.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| AUTHERINE CROSKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | |
| BIG LOTS STORES, INC., | ) | 2:06-CV-00485-MHT |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I hereby certify I have served Plaintiff with the foregoing **DEFENDANT BIG LOTS STORES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** by causing a copy to be sent via certified mail, return receipt requested, to:

> Autherine Croskey
> 3646 Cloverdale Road
> Montgomery, Alabama  36111

This 16th day of March, 2007.

> /s/ Joseph T. Carpenter
> Joseph T. Carpenter
> Alabama Bar No. 5114C59J

1