# EXHIBIT 7

LEXSEE 2005 U.S. DIST. LEXIS 27278


Caution
As of: Mar 14, 2007

ITA S. OTU, Plaintiff, v. PAPA JOHN'S USA, INC. d/b/a PAPA JOHN'S PIZZA, Defendant.

CIVIL ACTION FILE NO. 1:04-CV-0633-TWT-ECS

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION

*400 F. Supp. 2d 1315; 2005 U.S. Dist. LEXIS 27278; 96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366*

August 19, 2005, Decided
August 19, 2005, Filed

**SUBSEQUENT HISTORY:** Adopted by, Approved by, Summary judgment granted by *Otu v. Papa John's USA, Inc., 400 F. Supp. 2d 1315, 2005 U.S. Dist. LEXIS 27283 (N.D. Ga., Sept. 16, 2005)*

**COUNSEL:** [**1] For Ita S. Otu, Plaintiff: Fredrick C. McLam, Office of Fredrick C. McLam, Decatur, GA.

For Papa John's USA, Inc., doing business as Papa John's Pizza, Defendant: Darren T. Horvath, Rebecca J. Jakubcin, Fisher & Phillips Atlanta, GA.

**JUDGES:** E. Clayton Scofield III, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** E. Clayton Scofield III

**OPINION:**

[*1318] **FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

**I.**

**Introduction**

Ita S. Otu ("Plaintiff") filed the instant employment discrimination action against Defendant, Papa John's USA, Inc. d/b/a/ Papa John's Pizza ("Defendant" or "Papa John's"), on March 8, 2004. [Doc. No. 1]. In his complaint, Plaintiff charges Defendant with violations of Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C. §§ 2000e, et seq.* Plaintiff contends he was sexually harassed by his female supervisor, Caretta Brown ("Brown"). (Id.) Plaintiff further alleges that he was discharged by Defendant on the basis of his age and/or his sex. (Id.) This matter is presently before the Court on Defendant's motion for summary judgment. [Doc. No. 27]. For the reasons expressed herein, the Court **RECOMMENDS** that Defendant's [**2] motion for summary judgment be **GRANTED** in its entirety and that this case be **DISMISSED**.

**II.**

**Factual Background**

When evaluating the merits of a motion for summary judgment, the Court must view the evidence and factual inferences in a light most favorable to the non-moving party. *Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001); Hairston v. Gainesville Sun Publ'g. Co., 9 F.3d 913, 920 (11th Cir. 1993).* Applying this legal standard, the Court derives the following facts from the parties' statements of facts and from the record as a whole: n1

n1 Unless otherwise indicated, the Court derives this overview from the allegations in Defendant's statement of material facts ("Def. SMF") which are not disputed by Plaintiff. [Doc. No. 27, Attachment 1].

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

On August 12, 2002, Papa John's rehired n2 Plaintiff, at age 53, as a pizza delivery driver at its Flakes Mill Road location. Between August 12, 2002 and February 10, 2003 Caretta Brown also worked [**3] at Papa John's Flakes Mill Road location as either a shift leader or an Assistant General Manager, until leaving on February 10, 2003 to be the General Manager ("GM") at another location. n3 [Doc. No. 27] (Def. Br. at Exs. 2-4).

n2 Plaintiff had previously worked for Defendant on multiple occasions at various store locations as a pizza delivery driver. (Plaintiff's Deposition ("Pl. Dep.") at 50-77). His previous employment history with Defendant has no bearing on the facts at issue in the instant lawsuit. Unless otherwise indicated, all facts relate to Plaintiff's employment at the Flakes Mill Road location between August 12, 2002 and November 23, 2003.

n3 It is undisputed that Ms. Brown never discriminated against or sexually harassed Plaintiff between August 12, 2002 and February 10, 2003 at the Flakes Mill restaurant.

Plaintiff left Papa John's in April of 2003 but was rehired again on June 9, 2003. (Pl. Dep. at 63, 77 and Exs. 5-6). Approximately two months later, on August 11, 2003, Ms. Brown returned [**4] to the Flakes Mill restaurant to assume the responsibility of the GM of that store. Ms. Brown's immediate supervisor was Director of Operations, Mohsen "Mason" Alsaleh. [Doc. No. 27] (Def. Br. at Ex. 25 -- Brown Affidavit ("Brown Aff.") P 2). Between August 11, 2003 and November 24, 2003, Ms. [*1319] Brown had two Assistant Managers, Artega Anderson ("Anderson") and Brandi Boyd ("Boyd"). Ms. Brown is a lesbian and has been in an exclusive relationship with another woman for the last four-and-a half years. n4 See also [Doc. No. 27] (Def. Br. Ex. 25) (Brown Aff. P 4).

n4 Plaintiff was unaware of Ms. Brown's sexual orientation during the times relevant to the issues in dispute in the instant lawsuit. [Doc. No. 37] (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts at P 7).

As part of their job duties, Papa John's pizza delivery drivers were "required to check all products for quality against standards and deliver quality products to customers in a safe, courteous and timely manner." [Doc. [**5] No. 27] (Def. Br. Ex. 13 -- Team Member Handbook). In addition to their driving duties, drivers generally had to perform "side jobs" during each shift, such as mopping, stocking cola, sweeping the floor, and washing dishes. Side jobs generally were assigned in two ways. First, "side jobs" were sometimes listed on a "job sheet" next to the names of the drivers working. Second, the "side jobs" were sometimes assigned when a manager noticed that a job needed to be performed. Usually, either Assistant General Managers Artega or Boyd would make up the "job sheet" for each day. In addition, managers would sometimes instruct drivers to do "side jobs" that were not listed by their names on the job sheet. For instance, Ms. Brown assigned another driver, Sherlock Sampson ("Sampson") "side jobs" that were not listed by Mr. Sampson's name on the "job chart." Ms. Brown also assigned Plaintiff "side jobs" outside of those listed on the "job chart". [Doc. No. 26] (Def. Br. Ex. 26); (Pl. Dep. at 230-237).

When Ms. Brown became the GM at the Flakes Mill restaurant, she evaluated the skills and performance of the employees. She felt that Plaintiff was not one of the better drivers because he was [**6] slower than the other drivers. [Doc. No. 27] (Def. Br. Ex. 25) (Brown Aff. P 9). Plaintiff's assistant manager also found Plaintiff to have slower delivery times than other drivers. (Boyd Aff. P 10).

Plaintiff claims that Ms. Brown made several sexual advances toward him beginning the first week that she assumed the role of GM at the Flakes Mill store. n5 (Pl. Dep. at 123-24). The first incident occurred when Ms. Brown told Plaintiff that July 13th was her birthday and that she was lonely that day because she did not have a boyfriend. (Pl. Dep. at 123-24, 127). Ms. Brown invited Plaintiff to come spend the weekend with her to make up for her loneliness and asked Plaintiff if he would like Ms. Brown to be his girlfriend. (Pl. Dep. at 124, 126-27, 130). Plaintiff responded by asking where she lived, and when she told him that she lived in Union City, he responded that it was too far and that he would not be able to be there. (Pl. Dep. at 124). Plaintiff also told Ms. Brown "[w]ell, maybe next year, because the birthday has already been gone." (Id.) Plaintiff did not consider Ms. Brown's invitation to spend the weekend with her to be sexual harassment but Plaintiff did consider Ms. [**7] Brown's request to be his girlfriend as sexual harassment because he was not interested in her. (Pl. Dep. at 129, 145). At the conclusion of this conversation, Plaintiff returned to work. (Pl. Dep. at 150).

n5 Ms. Brown denies making any sexual advances towards Plaintiff. For purposes of summary judgment, however, the Court reviews the record in a light most favorable to the Plaintiff as the non-moving party. [Doc. No. 27] (Def. Br. Ex. 25) (Brown Aff. P 31).

Case 2:06-cv-00485-MHT-CSC    Document 34-8    Filed 03/16/2007    Page 4 of 15

Page 3
400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

The second incident occurred approximately one week later. On that occasion, Ms. Brown wrote her phone number and the words "I love you" on a Papa John's [*1320] napkin. [Doc. No. 27] (Def. Br. Ex. 19 ("Napkin")); (Pl. Dep. at 141-42; 146, 148-49). She gave Plaintiff the napkin with her number and told Plaintiff to call him that evening, said "Otu, hug me", and tried to kiss Plaintiff on the cheek. (Dep. at 142-43). Ms. Brown also hugged Plaintiff. (Pl. Dep. at 145). Plaintiff returned to work after this conversation took place. (Pl. Dep. at 152). The following [**8] day, Ms. Brown asked Plaintiff why he did not call her the previous evening, to which Plaintiff responded that he did not have time to call her. (Pl. Dep. at 173-74). Plaintiff testified that he found these actions to be offensive but would not have if he were interested in her because:

> "I have my own policy. This is just personal. I have my own policy if I were to kiss a woman. I don't -- I don't just kiss a woman in a day because I didn't know whether she is a smoker or not, because I don't shake my hand with any woman who smokes. So I don't just kiss a woman in the day like she wants to kiss me. I don't. And that offended me. It's against my will."

(Pl. Dep. at 147, 152). Plaintiff returned to work after this incident.

Approximately one month after Ms. Brown became GM, she decided that drivers should undergo cross-training to learn skills such as order taking. [Doc. No. 27] (Def. Br. Exs. 25, 26) (Brown Aff. P 11-14; Boyd Aff. P 4-5; Deposition of Sherlock Sampson "Sampson Dep." at 44-46). Ms. Brown believed that cross-training was especially important for drivers, who often had "down time" while they were waiting for deliveries. As a result, Ms. Brown divided [**9] the employees who needed to be cross-trained into three groups, and assigned one group to Mr. Anderson, one to Ms. Boyd, and one to herself for training. [Doc. No. 27] (Def. Br. Exs. 25, 26) (Brown Aff. P 13; Boyd Aff. P 5). It was "Ms. Brown's policy that drivers who did not learn ordertaking and other restaurant skills would not get as many deliveries or work hours as drivers who were cross-trained." [Doc. No. 27] (Def. Br. Exs. 25, 26) (Brown Aff. P 12; Boyd Aff. P 6; Sampson Dep. at 46).

Plaintiff was one of the drivers who did not know how to take customer orders. As a result, Ms. Brown instructed Plaintiff to come to work at 9:00 a.m. on either the first or second Saturday in September so she could train him on order taking. Plaintiff testified that, in response to Ms. Brown's request, he went to the store at 9:00 on Saturday morning, an hour before the store opened for business. (Pl. Dep. at 153, 155). When Plaintiff arrived, Ms. Brown took him back to her office and started unbuttoning her shirt. (Id. at 157). Plaintiff believed that Ms. Brown was attempting to expose her breast to him. (Pl. Dep. at 156). Plaintiff testified that "[a]s soon as she started to unbutton [**10] her shirt, [Plaintiff] said, No. No. No. No. We can do this at home in your house, in my house, in a hotel, but not here in the store." (Pl. Dep. at 157). Ms. Brown then stopped unbuttoning her shirt. Id. Plaintiff was bothered by Ms. Brown's attempt to unbutton her shirt because he felt he had been misled by Ms. Brown to come to the store early to learn how to take orders. (Pl. Dep. at 158). Plaintiff, however, did not tell Ms. Brown that he was not interested in her. (Pl. Dep. at 159).

Plaintiff also alleges that Ms. Brown made several other sexual advances towards Plaintiff. Specifically, on a few occasions beginning in September, Plaintiff alleges that Ms. Brown would stand behind Plaintiff so that her breasts touched his back while Plaintiff was folding pizza boxes and attempted to rub his "privacy" with her hand. n6 [Doc. No. 36] (Pl. Br. at 4; Pl. Dep. at 159, 161-64, 171). Plaintiff [*1321] would move out of the way and Ms. Brown never made contact with Plaintiff's private area. (Pl. Dep. at 162). Also, between August and November of 2003, Ms. Brown attempted to kiss and hug Plaintiff on several occasions (Pl. Dep. at 143, 145; Sampson Dep. at 50, 57-58) and did hug Plaintiff [**11] on one occasion (Pl. Dep. at 145); introduced Plaintiff to her friends and parents as her boyfriend n7 (Pl. Dep. at 169, 217, 220); began calling Plaintiff on his home and cell phone asking him when he was going to take her to dinner or to a movie and when he was going to come to her house (Pl. Dep. at 175-183); and called Plaintiff "Playboy" and "Sugardaddy" on a few occasions. (Pl. Dep. at 223-25).

> n6 Plaintiff is not sure how many times this occurred but believes that it happened on more than one occasion and possibly as many as five occasions. (Pl. Dep. at 163-64).

> n7 Plaintiff claims that Ms. Brown introduced him to her friends as her boyfriend on approximately five occasions (Pl. Dep. at 222) and to her parents on one occasion (Pl. Dep. at 169).

Prior to Ms. Brown's arrival at the Flakes Mill restaurant, Plaintiff had been working the opening shift on

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

Saturdays and Sundays. (Pl. Dep. at 153). Towards the end of September, Ms. Brown began periodically to schedule drivers other than Plaintiff to work [**12] the opening driver shift. According to Ms. Brown, Plaintiff "was not a good opening driver because of his poor delivery times, and his inability to effectively assist with other restaurant duties because he was not cross-trained." [Doc. No. 27] (Def. Br. Ex. 25) (Brown Aff. P 18). Plaintiff contends that Ms. Brown removed him from his position as an opening driver because of his unfavorable reaction to Ms. Brown when she attempted to unbutton her blouse. n8 (Pl. Dep. at 228; Pl. SMF P 8). In addition, Ms. Brown reduced Plaintiff's hours, and the hours of other drivers, because they were not cross-trained. [Doc. No. 27] (Def. Br. Ex. 25) (Brown Aff. P 20). Once the drivers became cross-trained as instructed, Ms. Brown's intent was to increase the drivers' hours. (Id.)

n8 Plaintiff asserts that he was removed from the opening driver position because he ignored and rebuffed Ms. Brown's sexual advances and because of his age. (Pl. SMF P 8, 11). However, at his deposition Plaintiff testified that he was removed from the opening driver position because he rebuffed Ms. Brown's sexual advances when she began unbuttoning her shirt and not because of his age. (Pl. Dep. at 189-90; 228-30).

[**13]

The number of deliveries assigned to the next driver in line to make a delivery run depended on several factors, including when customer orders were received, the target time for delivery of the orders, and where the customers lived. When assigning deliveries, the managers tried to distribute them in the way they thought was most efficient, such that the customers would get their pizzas within the target time while improving productivity and lowering labor costs. To improve efficiency in the delivery process, managers would assign multiple deliveries that needed to be made in the same general direction to one driver and just one delivery that needed to be made in a different general direction to another driver. Plaintiff was initially assigned multiple delivery runs. (Pl. Dep. at 225). However, in the last few weeks of his tenure as a delivery driver, Plaintiff would only be dispatched for single runs. (Id.). Plaintiff contends that Ms. Brown skipped over him when assigning delivery slots because of his age. n9 (Pl. Dep. at 227- [*1322] 28; Pl. SMF PP 8, 11). Defendant asserts that Ms. Brown scheduled deliveries in the most efficient fashion by assigning multiple deliveries to drivers [**14] going in the same general direction and single deliveries to other drivers going in the opposite direction. [Doc. No. 27] (Def. Br. Ex. 25) (Brown Aff. P 23).

n9 Plaintiff's Statement of Material Facts asserts that Ms. Brown skipped over him when assigning delivery spots because he ignored and rebuffed Ms. Brown's sexual advances and because of his age. (Pl. SMF P 8). However, at his deposition Plaintiff testified that he did not consider it to be sex discrimination when Ms. Brown only assigned him to a single run. (Pl. Dep. at 227-28). Instead, he testified that assigning him a single run "could be age discrimination" because "in her mind . . . I'm not as fast as younger drivers." (Id.). As a result, this Court will not consider this allegation in connection with Plaintiff's sexual harassment claim.

On September 18, 2003, Ms. Brown drafted an Employee Consultation Memorandum ("9/18/03 Memorandum") on Plaintiff noting that he took too long on deliveries and that he must learn ordertaking. [Doc. No. 27] [**15] (Def. Br. Ex. 11); [Doc. No. 27] (Def. Br. Ex. 25) (Brown Aff. P 16). According to the notes on this document, Plaintiff received a verbal warning on these issues and refused to sign this Memorandum. Id.; see also (Brown Aff. P 16). Plaintiff, however, denies ever receiving any written or verbal reprimands from Ms. Brown regarding his job performance. (Pl. SMF at 12; Pl. Dep. at 259-63).

On November 17, 2003, Ms. Brown drafted another counseling memorandum addressing Plaintiff's slow delivery times and his failure to learn ordertaking. [Doc. No. 27] (Def. Br. Ex. 14). She did not, however, have the opportunity to discuss the memorandum with him because she was out sick the following week and because she did not work the same shift as Plaintiff before he worked his final shift. (Id.)

On November 23, 2003, Plaintiff worked his final shift at Papa John's. Ms. Boyd was the only manager on duty that evening. [Doc. No. 27] (Def. Br. Ex. 26) (Boyd Aff. P 12). Ms. Boyd stated that Plaintiff did not complete his shift, left the restaurant without clocking out, and did not return although he was still needed. [Doc. No. 27] (Def. Br. Ex. 26) (Boyd Aff. P 12, Ex. A). Ms. [**16] Boyd drafted a memorandum on November 23, 2003, regarding this incident. Plaintiff denies that he walked off the job and claims that he completed his shift that evening. (Pl. Dep. at 249-50).

Prior to leaving on November 23rd, Plaintiff took the work schedule for the Flakes Mill restaurant for the week of November 24, 2003 and for the prior week. Before taking the schedules, Plaintiff did not ask Ms. Boyd or Ms. Brown why he was not scheduled to work the week of November 24, 2003. According to Ms. Brown,

Case 2:06-cv-00485-MHT-CSC   Document 34-8   Filed 03/16/2007   Page 6 of 15

Page 5

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

Plaintiff was not placed on the schedule because he was still not cross-trained and because she had not had an opportunity to discuss the counseling memorandum with Plaintiff. [Doc. No. 27] (Def. Br. Exs. 25, 26) (Brown Aff. P 27; Boyd Aff. P 13).

The following day, Plaintiff went to the store before it opened and asked Ms. Brown why she removed his name from the schedule. (Pl. Dep. at 212-13, 242-43). According to Plaintiff, Ms. Brown responded by stating that "Otu I didn't need you anymore. You are not as fast as younger drivers." (Pl. SMF P 12; Pl. Dep. 212-14, 242-45). Plaintiff was not terminated from Papa John's system until December 24, 2003; however, the termination effective [**17] date was November 24, 2003. [Doc. No. 27] (Def. Br. Exs. 8, 25) (Brown Aff. P 30). Plaintiff testified that Ms. Brown placed a younger driver named "Mike", who was already a driver at the Flakes Mill store, in the opening driver position on November 24, 2003. (Pl. Dep. at 243-44). Plaintiff further testified that Ms. Brown did not hire a replacement driver for his position. (Pl. Dep. at 244).

Defendant's policies prohibit illegal harassment of, and discrimination against, its employees. See [Doc. No. 27] (Def. Br. Ex. 18 -- Handbook containing no harassment [*1323] policy). Plaintiff was provided with a copy of Defendant's handbook, which included Defendant's policies against harassment and discrimination. Defendant's No Harassment policy expressly instructs employees to report "any inappropriate behavior immediately to a manager or director of operations or call People Services hotline at 1-888-442-7272." See also [Doc. 27] (Def. Br. at Ex. 18). Plaintiff was also provided with the telephone numbers for the Director of Operations and the Peoples Services Director. Plaintiff understood that if he experienced any harassment or discrimination, he should tell his supervisor or [**18] the Director of Operations, and that if he was dissatisfied with their handling of a complaint, he could report it to the hotline or to the People Services Director.

In Plaintiff's Statement of Material Facts, he asserts that he "reported the employment discrimination to Mason [Mohammed Alsaleh] ("Alsaleh"), the supervisor over Caretta Brown and he. was unresponsive." (Pl. SMF P 13). However, the record does not support Plaintiff's contention. Plaintiff testified that he called Mr. Alsaleh to report that Ms. Brown had reduced his hours. (Id.) In response, Mr. Alsaleh told Plaintiff to discuss the matter with Ms. Brown and if she did not respond well, instructed Plaintiff to call him back. (Id.) Plaintiff did as instructed and Ms. Brown increased his hours by one hour. (Id.) at 214-15. Still dissatisfied, Plaintiff phoned Mr. Alsaleh the following week to express his dissatisfaction with the one-hour increase. (Id.) at 215. Mr. Alsaleh agreed to talk to Ms. Brown about the matter. (Id.)

Plaintiff does not know whether Ms. Alsaleh spoke with Ms. Brown. (Id.) However, Plaintiff also testified that he did not report any incidents of harassment and/or discrimination to anyone, including [**19] Mr. Alsaleh. (Pl. Dep. at 214-16).

### III.

### Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*; *Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998)*. A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991)* (en banc) (quoting *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986))*. The substantive law applicable to the case determines which facts are material. *Anderson, 477 U.S. at 248*.

The moving party bears the initial burden of showing the court "the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and "an absence of evidence to support the non-moving party's case." [**20] *Celotex Corp. v. Catrett, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*; *Four Parcels, 941 F.2d at 1437-1438*. If the moving party fails to discharge this initial burden, then the motion must be denied. *Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993)* (citing *Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991))*. If the burden is met, however, the non-moving party must then "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex, 477 U.S. at 324* (citing *Fed. R. Civ. P. 56(e)*).

[*1324] **IV.**

### Discussion

### A. Plaintiff's Hostile Environment Claim

In the instant case, Defendant argues that it is entitled to summary judgment because the undisputed facts demonstrate that Plaintiff was not subjected to a hostile working environment within the meaning of Title VII. [Doc. No. 27] (Def. Br. at 11-12). Plaintiff responds that he was subjected to a hostile working environment as a result of Ms. Brown's conduct. [Doc. No. 36] (Pl. Br. at 2-5). Specifically, Plaintiff contends that the following incidents [**21] constitute unlawful sexual harassment:

Case 2:06-cv-00485-MHT-CSC   Document 34-8   Filed 03/16/2007   Page 7 of 15

Page 6

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

(1) Ms. Brown attempted to kiss and hug Plaintiff on a few occasions, and did hug Plaintiff on one occasion;

(2) Ms. Brown told Plaintiff on one occasion that she was lonely because she did not have a boyfriend, invited Plaintiff to spend the weekend with her, and asked Plaintiff if he would like Ms. Brown to be his girlfriend;

(3) Ms. Brown attempted to unbutton her blouse in front of Plaintiff on one occasion;

(4) Ms. Brown stood behind Plaintiff so that her breasts touched his back and attempted to rub Plaintiff's private parts on a few occasions;

(5) Ms. Brown referred to Plaintiff as "Playboy" and "Sugardaddy" on a few occasions;

(6) Ms. Brown introduced Plaintiff as her boyfriend to her parents on one occasion and to her friends on a few occasions;

(7) Ms. Brown wrote her phone number and the words "I love you" on a Papa John's napkin, gave Plaintiff the napkin with her number and told Plaintiff to call her, and said "Otu, hug me";

(8) Ms. Brown called Plaintiff and asked him to go to dinner or to a movie and to come to her house.

See [Doc. No. 36] (Pl. Br. at 4-5); (Pl. Dep. at 123-27, 142-59, 161-64, 175-83, 217-25). [**22]

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 63, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986) (quoting 42 U.S.C. § 2000e-2(a)(1)). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 77, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

"[W]hen analyzing whether an employer should be held liable for a supervisor's harassment, courts should separate these cases into two groups: (1) harassment which culminates in a tangible employment action,' such as discharge, demotion, or undesirable reassignment, and (2) harassment in which no adverse tangible employment action' is taken but which is sufficient to [**23] constructively alter an employee's working conditions." *Frederick*, 246 F.3d at 1311 (internal citations omitted); see also *Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1280-1281 (11th Cir. 2003) (per curiam), cert. denied, 541 U.S. 959, 124 S. Ct. 1714, 158 L. Ed. 2d 399 (2004). n10 An employer is automatically [*1325] liable for sexual harassment by a supervisor that falls into the first category. *Walton*, 347 F.3d at 1280-1281. With respect to sexual harassment by a supervisor that falls into the second category, however, the employer may escape liability by satisfying the two-part affirmative defense set forth in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) and *Burlington Indus. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). Id. In the instant case, Defendant asserts that Plaintiff cannot establish direct liability because there is no tangible employment action causally connected to Brown's alleged harassment. [Doc. No. 27] (Def. Br. at 18). Defendant also asserts that Defendant should not be held vicariously liable because it has a valid affirmative defense pursuant to Faragher. (*Id.* at 26).

N10 It is undisputed that Brown was Plaintiff's supervisor during the time of the alleged sexual harassment.

[**24]

To prevail on either of these theories of sexual harassment under Title VII, the evidence must be sufficient to establish that (1) the plaintiff belongs to a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the plaintiff's sex; (4) the harassment was objectively and subjectively severe or pervasive so as to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. n11 *Walton*, 347 F.3d at 1279-1280; *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). With respect to the fourth element, to establish that the harassment was severe or pervasive, Plaintiff must show that the conduct created an environment that was "both objectively and subjectively offensive, one that a reasonable person would find hostile and

Case 2:06-cv-00485-MHT-CSC   Document 34-8   Filed 03/16/2007   Page 8 of 15

Page 7

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

abusive, and one that [she] in fact perceive[d] to be so." *Faragher, 524 U.S. at 787*; *Harris, 510 U.S. at 21-22*; accord *Fleming v. Boeing Co., 120 F.3d 242, 245 (11th Cir. 1997)*.

> n11 The same five elements apply to hostile work environment cases, as well as tangible employment action cases. See, e.g., *Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999)* (en banc); *Johnson, 234 F.3d at 508 n.7*.

[**25]

Defendant does not argue that Plaintiff was not a member of a protected group. [Doc. No. 27] (Def. Br. at 11-12). Rather, Defendant contends that Plaintiff cannot meet his burden with respect to the other three elements of her claim. (Id. at 12). In other words, Defendant contends that Plaintiff cannot demonstrate that Brown's conduct was unwelcome; or was subjectively and objectively severe or pervasive; or that there is a basis for holding Papa John's liable.

**(1) Was the harassment unwelcome and subjectively severe or pervasive?**

Defendant first contends that the harassment was neither unwelcome nor subjectively severe or pervasive. [Doc. No. 27] (Def. Br. at 12). Whether Plaintiff subjectively perceived his work environment as abusive is "closely related" to whether he welcomed the conduct. See *Balletti v. Sun-Sentinel Co., 909 F.Supp. 1539, 1546 (S.D. Fla. 1995)*. Thus, the Court will analyze these elements together.

In determining whether conduct was unwelcome, the Court must view the nature of the alleged harassment and the context in which it occurred in light of the totality of the circumstances. *Mangrum v. Republic Indus., 260 F. Supp. 2d 1229, 1248 (N.D. Ga. 2003)* [**26] (citing *Morgan v. Fellini's Pizza, Inc., 64 F.Supp.2d 1304, 1309 (N.D. Ga. 1999)*). "The correct inquiry is whether the plaintiff, by her conduct, indicated that the complained of behavior was unwelcome." *Balletti, 909 F.Supp. at 1547* [*1326] (quoting *Meritor, 477 U.S. at 68*); accord EEOC Policy Guidance on Sexual Harassment (Mar. 19, 1990) ("Investigators and triers of fact rely on objective evidence, rather than subjective, uncommunicated feelings."). "This question may present difficult problems of proof and [turn] largely on credibility determinations committed to the trier of fact." Id.

In the instant case, Defendant contends that the harassment was not unwelcome or subjectively severe or pervasive because Plaintiff's responses to Ms. Brown's advances demonstrate that Plaintiff expressed an interest in consorting with Ms. Brown. [Doc. No. 27] (Def. Br. at 12-15). In addition, Defendant points to Plaintiff's failure to report Ms. Brown's conduct as further evidence that Plaintiff did not perceive the conduct as offensive or unwelcome. (Id.). This Court disagrees.

First, it is undisputed that Plaintiff claims to have found [**27] Ms. Brown's conduct offensive. [Doc. No. 27] (Def. Br. at 4). In fact, throughout his deposition, Plaintiff testified that he was offended and bothered by Ms. Brown's sexual advances. See e.g. (Pl. Dep. at 127, 146-47, 152, 158, 170, 176, 182). In addition, on at least one occasion, Plaintiff told Ms. Brown to stop. (Pl. Dep. at 168). Second, while some of Plaintiff's responses to Ms. Brown's conduct could, on their face, be construed to suggest that he may have had some reciprocal interest in Ms. Brown and that he did not find her conduct offensive, he also testified that he did not want to reject her outright because he wanted to protect his job and not make her mad. (Pl. Dep. at 173, 178). Finally, the fact that Plaintiff did not report Ms. Brown's harassment is not dispositive; failure to report is just one factor in determining whether the conduct was unwelcome in light of the totality of the circumstances. *Balletti, 909 F. Supp. 1547* (stating that "the court may consider whether, as well as the manner in which, the plaintiff registered her complaint") (emphasis added).

At the summary judgment stage, the Court is not entitled to weigh the credibility [**28] of the varying accounts of the events that took place. Although the evidence presents a close call, this Court concludes that an issue of fact exists on this issue. Therefore, drawing all reasonable inferences in favor of the non-moving party, as it must, the Court concludes that a reasonable jury could find that the Ms. Brown's conduct was unwelcomed by Plaintiff and that Plaintiff found the conduct subjectively severe or pervasive.

**2) Was the harassment objectively severe or pervasive?**

Whether the conduct was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive environment" is the element that tests the legitimacy of most sexual harassment claims and is therefore regarded as crucial. *Gupta v. Florida Bd. of Regents, 212 F.3d 571, 583 (11th Cir. 2000)*. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview." *Oncale, 523 U.S. at 81, 118 S.Ct. at 1003* (quoting *Harris, 510 U.S. at 21, 114 S.Ct. At 370*). In determining whether harassment [**29] is sufficiently severe and pervasive as to be actionable under the statute, courts should consider the following four factors to determine "whether harassment objectively altered an employee's terms or conditions of

Case 2:06-cv-00485-MHT-CSC    Document 34-8    Filed 03/16/2007    Page 9 of 15

Page 8

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza,* [*1327] *195 F. 3d 1246* (Citing *Allen v. Tyson Foods, Inc., 121 F.3d 642, 647 (11th Cir. 1997).* "These factors taken together must reveal conduct extreme enough to amount to a change in terms and conditions of employment.'" *Lawrence v. Wal-Mart Stores, 236 F. Supp. 2d 1314, 1324 (M.D. Fla. 2002)* (citations ommitted). Determining whether harassment is severe "requires careful consideration of the social context in which particular behavior occurs and is experienced by its target." *Oncale, 523 U.S. at 81.*

An examination of the four factors set forth above reveals that Plaintiff did not endure conduct sufficiently severe or pervasive so [**30] that a reasonable person in Plaintiff's position would find that the conduct altered the terms or conditions of his employment. First, the allegedly harassing conduct was infrequent. The following incidents were isolated events occurring only one time over a three-month period: Ms. Brown told Plaintiff she was lonely and asked him to spend the weekend with her and to be his girlfriend; she attempted to unbutton her blouse in front of Plaintiff; she wrote her phone number on a napkin with the words "I love you" and told Plaintiff to call him; she hugged him, and she introduced Plaintiff to her parents as her boyfriend. With respect to the other incidents, Plaintiff was unclear as to the number of times they occurred, but testified that Ms. Brown introduced him to her friends as her boyfriend on approximately five times and testified that the breast rubbing incident also may have occurred as many as five occasions. (Pl. Dep. at 163-64, 222). These incidents were not frequent enough to amount to the "continuous barrage" of harassment which the Eleventh Circuit deems actionable. See *Miller, 277 F.3d at 1276* (finding that ethnic slurs made three to four times a day enough [**31] to establish that harassment was frequent); *Dees v. Johnson Controls World Servs., Inc., 168 F.3d 417, 418 (11th Cir. 1999)* (finding that almost daily abuse in the form of sexually explicit stores and jokes, comments about plaintiff's body, and physical harassment sufficiently severe).

Second, the conduct at issue was not sufficiently severe to rise to the level of unlawful harassment necessary to maintain his claim. As stated above, Plaintiff testified that Ms. Brown's conduct included: attempts to hug and kiss him, brushing her breasts against his back and attempts (unsuccessful) to rub his private parts, comments about her desire to be his girlfriend and introduction to friends and parents as same, unbuttoning her blouse, professions of love on a napkin, invitations to go to dinner, a movie, and to her home, and references to Plaintiff as "Playboy" and "Sugardaddy" over the course of a three-month period. While the record supports that Plaintiff was bothered by this behavior and found it offensive, there is absolutely no evidence that Plaintiff ever felt physically threatened or afraid of Ms. Brown or that the conduct interfered with Plaintiff's job performance. [**32] Moreover, comparing these allegations to conduct deemed nondiscriminatory by other courts persuades this Court that the incidents at issue are not sufficiently severe. See e.g. *Gupta, 212 F.3d at 584-85.* (supervisor touched employees jewelry and asked her to lunch on several occasions, touched her knee and raised her dress him while asking about the material; stated that she looked very beautiful' and stared at her in a way that made her uncomfortable, called her home two or three times per week and on weekends asking her about her boyfriend, suggesting that he would like to come over and spend the night not severe); *Weiss v. Coca Cola Bottling Co., 990 F2d 333, 334-35 (7th Cir. 1993)* (supervisor asked about plaintiff's personal life, complimented her on her look, asked her for dates, called her a dumb blonde, repeatedly put hands on her shoulders, [*1328] placed "I love you" signs in her work area, and attempted to kiss her on three occasions not severe); *Evans v. Mobile Infirmary Med. Ctr., 2005 WL 1840235 at **9, 11 (S.D. Ala. Aug. 2, 2005)* (comments about plaintiff's breasts, grabbing her buttocks on two occasions, touching her breast [**33] on one occasion not severe and pervasive); *Willets v. Interstate Hotels, LLC, 204 F.Supp.2d 1334, 1337 (M.D. Fla. 2002)* (supervisor hugged plaintiff three times a year, rubbed her head and shoulders, frequently indicated love for her, grabbed her buttocks, kissed her, and placed hand on her inner thigh not severe enough to constitute actionable harassment); see also *Mendoza, 195 F.3d at 1246-47 (11th Cir. 1999)* (detailing cases from other circuits delineating minimum level of severity or pervasiveness necessary for harassing conduct to constitute discrimination). Thus, the Court finds that the incidents testified to here do not rise to the level of severe or pervasive necessary to maintain a claim of sexual harassment under Title VII.

**(3) Is there a basis for finding Defendant liable for a tangible employment action?**

Next, Defendant argues that there is no basis for finding Defendant liable, for two reasons. First, Defendant contends that Plaintiff failed to show that there was a tangible employment action causally related to the harassment. [Doc. No. 27] (Def. Br. at 18-26). The Court notes that Plaintiff failed to address the substance [**34] of Defendant's arguments on this point in his response to Defendant's motion and made no attempt to show a causal relationship between the alleged employment actions and the harassment. Instead, Plaintiff focused his argument on his contention that Plaintiff complained to

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

District Manager Alsaleh about some of Ms. Brown's actions, presumably in an attempt to refute Defendant's asserted Faragher defense. While the Court must view the facts and all inferences therefrom in a light most favorable to the nonmoving party, it does not follow that the Court must also construct legal arguments to support that party's position. Plaintiff's failure to respond to Defendant's legal arguments relating to a claim alone constitutes abandonment of the claim. *Burnett v. Northside Hosp.*, 342 F.Supp.2d 1128, 1140 (N.D.Ga. 2004) (finding that non-movant's failure to address a claim challenged on summary judgment warranted dismissal of that claim); *Bute v. Schuller Int'l, Inc.*, 998 F.Supp. 1473, 1477 (N.D.Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); *Welch v. Delta Air Lines*, 978 F.Supp. 1133, 1137 (N.D. Ga. 1997) [**35] ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims."). Thus, the Court finds that, by failing to respond to Defendant's argument that there is no tangible employment action causally connected to the alleged harassment, Plaintiff concedes this part of his claim. n12

> n12 In addition, this Court notes that Defendant's arguments on this point are well taken, especially with respect to the lack of a causal relationship between the alleged harassment and any potential tangible employment action. See [Doc. No. 27] (Def. Br. at 18-26). See also the Court's discussion of Plaintiff's alleged adverse employment action in connection with Plaintiff's ADEA claim, infra pp. 37-39. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239-40 (11th Cir. 2001) (analysis of what constitutes adverse employment action is the same as for tangible employment action in hostile environment claims).

Second, Defendant contends that there is no basis for [**36] liability because it satisfies the two-part Faragher affirmative defense applicable in cases involving no tangible employment action. This "defense comprises two necessary elements: [*1329] (1) that the employer exercised reasonable care to prevent and promptly correct harassing behavior; and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer, or to otherwise avoid harm." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765. Defendant bears the burden of proof on these elements, both of which must be met in order for Defendant to avoid liability. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765.

The existence of a sexual harassment policy satisfies the first part of this burden only if the employer demonstrates that the policy "was effectively published, that it contained reasonable complaint procedures, and that it contained no other fatal defect." Id. (citing *Madray v. Publix Supermarkets*, 208 F.3d 1290, 1298-1299 (11th Cir. 1999)). The Faragher Court "implied that employers could meet the initial burden [**37] in determining whether they had exercised reasonable care to prevent sexual harassment by promulgating an anti-harassment policy." *Madray*, 208 F.3d at 1297-98. Dissemination of such a policy is "fundamental to meeting the requirement for exercising reasonable case in preventing sexual harassment." Id.

In the instant case it is undisputed that Defendant had a handbook, which included Papa John's policies against harassment and discrimination and that the handbook was disseminated to employees, including Plaintiff, at the onset of employment. (Pl. Dep. at 47, 120). Defendant's no harassment policy expressly instructs employees to report "any inappropriate behavior immediately to a manager or director of operations or call People Services hotline at 1-888-442-7272." [Doc. 27] (Def. Br. at Ex. 18). Plaintiff was provided with the telephone numbers for the Director of Operations and the Peoples Services Director and he understood that if he experienced any harassment or discrimination, he should tell his supervisor or the Director of Operations, and that if he was dissatisfied with their handling of a complaint, he could report it to the hotline or to the People [**38] Services Director. (Def. SMF PP 71-72). Therefore, the Court concludes that Defendant is able to show that it took reasonable care to prevent harassment.

Having determined that Defendant is able to satisfy its burden with respect to the first prong of the Faragher defense, the Court turns to the second prong -- whether Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by Defendant or to prevent harm otherwise. Reporting sexual harassment is a necessary requirement for seeking relief under Title VII. The Eleventh Circuit recognized that:

> Reporting sexually offensive conduct by a supervisor would for many or most employees be uncomfortable, scary or both. But because this will often or ordinarily be true, as the Supreme Court certainly knew, its regime necessarily requires the employee in normal circumstances to make this painful effort if the employee wants to impose vicarious liability on the employer and collect damages under Title VII.

Case 2:06-cv-00485-MHT-CSC    Document 34-8    Filed 03/16/2007    Page 11 of 15

Page 10

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

*Walton, 347 F.3d at 1290* (quoting *Reed v. MBNA Mktg. Sys., 333 F.3d 27, 35 (1st Cir. 2003)*).

Defendant contends that Plaintiff's failure to report the [**39] harassment was unreasonable. [Doc. No. 27] (Def. Br. at 26-28). In response, Plaintiff claims that Plaintiff "complained directly to the District Manager Mason [Alsaleh] on two occasions and objected to the employment discrimination by Caretta Brown" and that no action was taken. [Doc. No. 36] (Pl. Br. at 6).

The Court finds that Plaintiff's claim of having complained is not supported by the [*1330] record. Plaintiff testified that he called Mr. Alsaleh, Ms. Brown's supervisor, on two occasions over the course of his employment with Defendant to report his dissatisfaction with the fact that Ms. Brown cut his hours and that she sent him to deliver a pizza without a label and did not want to pay him his $ 1.00 commission. (Pl. Dep. at 185, 188, 214, 240-41). Plaintiff did not, however, report any other incident to Mr. Alsaleh, including any of Ms. Brown's harassing behavior. (Id. at 240). To the contrary, Plaintiff testified that he never reported to anyone that he was being harassed and/or discriminated against by Ms. Brown as was required under Defendant's anti-harassment policy:

> Q. Okay. The -- sexual harassment incidents that we've talked about, did you report those [**40] to anybody.
>
> A. No.
>
> Q. The age discrimination incidents we talked about, did you report those to anybody?
>
> A. No.

(Pl. Dep. at 240-41). Nor did Plaintiff ever call the People Services Director or the 1-800 number set out in Defendant's Handbook for reporting harassing behavior. (Pl. Dep. at 246-48).

The Court finds that Plaintiff's failure to report Ms. Brown's sexual harassment was unreasonable. Therefore, Defendant has demonstrated that it would be entitled to assert, and to prevail on, the Faragher defense with regard to Plaintiff's sexual harassment claim. Accordingly, the Court **RECOMMENDS** that Defendant's motion for summary judgment with respect to Plaintiff's sexual harassment claim be **GRANTED**.

**B. Plaintiff's Age Discrimination Claim**

Plaintiff claims he was unlawfully discriminated against based on his age. The ADEA provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . be made free from any discrimination based on age." *29 U.S.C. § 633a(a)*. The ADEA "bans discrimination against employees because of their age, but limits the protected [**41] class to those who are 40 or older." *O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312, 116 S. Ct. 1307, 134 L. Ed. 2d 433 (1996)*. In age discrimination cases, the plaintiff bears the ultimate burden of proving that age was the determinative factor in the employer's termination decision. *Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989)*.

The Eleventh Circuit has applied the principles governing the order and allocation of proof in actions arising under Title VII to claims of age discrimination. *Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)*. Accordingly, in order to show that Defendant intentionally discriminated against him, Plaintiff may present direct evidence of discriminatory intent, causing the burden to shift to Defendant to prove by a preponderance of the evidence that it would have made the same employment decision even absent the discriminatory motive. *EEOC v. Alton Packaging Corp., 901 F.2d 920, 925 (11th Cir. 1990)*. If direct evidence is not available, Plaintiff may present circumstantial evidence from which an inference of intentional discrimination may be drawn. *Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1313 (11th Cir. 1994)*. [**42] If Plaintiff relies on circumstantial evidence, the Court will utilize the burden-shifting analysis articulated by the *Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*; see also *Combs v. Plantation Patterns, 106 F.3d 1519, 1527-38 (11th Cir. 1997)* (surveying development of burden-shifting scheme in ADEA jurisprudence).

[*1331] In the instant case, Plaintiff contends that Brown's statement that, "Otu, I didn't need you anymore. You are not as fast as younger drivers", constitutes direct evidence of age discrimination. [Doc. No. 37] (Pl. Br. at 9). This statement is not, however, direct evidence of discriminatory motive. Direct evidence relates to actions or statements of an employer reflecting a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee. *Carter, 132 F.3d at 641* (quoting *Caban-Wheeler v. Elsea, 904 F.2d 1549, 1555 (11th Cir. 1990))*. It is evidence which, if believed, proves the existence of a fact at issue without inference or presumption. *Merritt v. Dillard Paper Co., 120 F.3d 1181, 1189 (11th Cir. 1997)*; *Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 n. 6 (11th Cir. 1987)*. [**43] See also *Shook v. St. Bede School, 74 F.Supp.2d 1172, 1177-1178 (M.D. Ala 1999)* ("Direct evidence is

Case 2:06-cv-00485-MHT-CSC    Document 34-8    Filed 03/16/2007    Page 12 of 15

Page 11

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption.") (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990)). "As a result, only the most blatant remarks, whose intent could be nothing more than to discriminate . . .' will constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (quoting *Earley*, 907 F.2d at 1081-82). "In other words, the evidence must indicate that the complained-of employment decision was motivated by the decision-maker's ageism." *Damon*, 196 F.3d at 1358-59; see also *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989) (Brennan, J., for plurality) ("The plaintiff must show the employer actually relied on [the protected characteristic] in making its decision"); *Trotter v. Bd. of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453 (11th Cir. 1996) (citing Price Waterhouse and [**44] indicating the need to demonstrate a correlation between the statement and the "challenged decision").

While Brown's statement refers to the speed of drivers younger than Plaintiff, it does not prove the existence of discriminatory animus as to Plaintiff's age without inference or presumption. The statement implies that performance, namely speed, motivated the speaker, as opposed to age. The Eleventh Circuit has repeatedly refused to hold that such comments constitute direct evidence of discrimination. See, e.g., *Minton v. American Bankers Ins. Group*, 61 Fed. Appx. 670, 2003 WL 21303330 *1 (11th Cir. 2003) (finding that statements that the company needed "fresh new blood" and that it was about time the older employees stepped aside so the younger employees could also achieve a measure of wealth was not direct evidence of discrimination); *Beaver v. Rayonier, Inc.*, 188 F.3d 1279, 1285-1286 (11th Cir. 1999) (finding that decision-maker's comment that he wanted to attract "younger, engineer-type employees or supervisors" in reduction-in-force case did not rise to the level of direct evidence of discrimination); *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393-94 (11th Cir. 1997) [**45] (holding that evidence which suggests, but does not prove, a discriminatory motive, is circumstantial evidence by definition); see also *Shook*, 74 F.Supp.2d at 1177 (finding that employer's statement that "it's just Gerry's old and set in his ways" as an explanation for employee's termination to not constitute direct evidence of age discrimination). Thus, the alleged statement by Ms. Brown does not constitute direct evidence of discrimination. Accordingly, this Court will analyze Plaintiff's age discrimination claim pursuant to the framework set forth in McDonnell Douglas.

Under McDonnell Douglas, a plaintiff relying on circumstantial evidence of discrimination must first establish a prima [*1332] facie case. *McDonnell Douglas Corp.*, 411 U.S. at 802-804. If he is able to establish a prima facie case, an inference of discrimination arises, and the burden of production then shifts to the defendant to rebut this inference of discrimination by articulating a legitimate, non-discriminatory reason for its action. Id. The defendant's burden at this stage is "exceedingly light.". *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060-61 (11th Cir. 1994). [**46] If the defendant meets this burden, then the inference of discrimination is erased and the burden shifts back to the plaintiff to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802-804.

Plaintiff can establish a prima facie case of age discrimination under the ADEA by showing that: (1) he was a member of a protected class or age group (over forty); (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced with someone younger or his employer treated similarly situated younger employees more favorably. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001) (citations omitted); *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-08 (11th Cir. 1997)); *Damon*, 196 F.3d at 1359 (citing *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998)). A plaintiff must [**47] demonstrate each of these four elements to fulfill the prima face case. *Maynard v. Board of Regents of the Division of Universities of the Florida Department of Education*, 342 F.3d 1281, 1289 (11th Cir. 2003).

In the instant case, Defendant contends that Plaintiff cannot establish a prima facie case because he did not suffer an adverse action, and because Plaintiff did not meet his burden of presenting evidence that he was replaced by a younger employee or that similarly situated younger employees were treated more favorably. [Doc. No. 41] (Def. Reply Br. at 10-12). In response, Plaintiff asserts that "Otu has established his prima facie case as he was over forty when he was demoted and then discharged, was qualified for the position of delivery driver and was replaced by a younger driver." [Doc. No. 36] (Pl. Br. at 7). Plaintiff identified an employee named "Mike" as the younger employee who replaced him. (Pl. Resp. To Def. SMF P 82).

### 1. Did Plaintiff suffer an adverse action because of his age?

An employment action must affect a term, condition or privilege of employment, and is not adverse merely

Page 12
400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

because the employee dislikes it or disagrees with [**48] it. See *Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1456 (11th Cir. 1998)*. Decisions that do not constitute ultimate employment actions must meet "some threshold level of substantiality . . . to be cognizable." Id. There must be a serious and material change in the terms, conditions, or privileges or employment in order to satisfy the prima facie case of employment discrimination. *Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001)*. The only adverse actions Plaintiff contends he suffered, pursuant to his age discrimination claim, were demotion and termination. [Doc. No. 36] (Pl. Br. at 7). Therefore his ADEA claim is limited to these claims because he failed to present any argument as the other alleged adverse actions. n13 *Bute, 998 F.Supp. at 1477*.

n13 Plaintiff did not respond to Defendant's argument that giving Plaintiff single deliveries, as opposed to multiple deliveries, was an adverse action. *Bute, 998 F.Supp. at 1477*. Also, Plaintiff does not contend that Brown's alleged disparate application of the "first-out" policy was an adverse action, and instead refers to it as evidence of her ageism. [Doc. No. 36] (Pl. Br. at 7-8). Therefore, the Court need not address whether these incidents were adverse actions with respect to Plaintiff's ADEA claim.

[**49]

[*1333] First, Plaintiff alleges he was unlawfully demoted based on his age. [Doc. No. 36] (Pl. Br. at 7). The only potential demotion in this case occurred when Defendant changed Plaintiff's schedule so he was no longer a driver on the opening shift, but instead worked during the evening shift. However, Plaintiff has not shown that this was an adverse action because there is no evidence that he suffered a reduction in pay, prestige or responsibility. *Hinson, 231 F.3d at 829* (citing *Doe v. Dekalb County School Dist., 145 F.3d 1441, 1448-1449 (11th Cir. 1998)* (ADEA case)) ("[A] transfer to a different position can be adverse if it involves a reduction in pay, prestige, or responsibility."); see also *Gupta, 212 F.3d at 583* (quoting *Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir. 1997))*. A purely lateral transfer, that is a transfer which does not involve a demotion in form or substance, does not rise to the level of an adverse employment action. *Doe, 145 F.3d at 1449*. Therefore, Plaintiff's transfer from the opening shift to the evening shift is not actionably adverse in this case because it was a lateral [**50] in nature and did not involve any change in prestige, pay or responsibility. n14

n14 Moreover, the claims fail because Plaintiff admitted during his deposition that his removal from the opening shift was *not* age related. (Pl. Dep. at 228).

Next, Defendant disputes whether Plaintiff was terminated. [Doc. No. 27] (Def. Br. at 32). Plaintiff maintains he was terminated when he was removed from the schedule in November of 2003 and Brown told him that she did not need him anymore. [Doc. No. 36] (Pl. Br. at 8). On summary judgment, the proper question is whether a reasonable person in Plaintiff's position "would view the employment action in question as adverse." *Doe, 145 F.3d at 1449*. The Court, viewing the evidence in a light most favorable to Plaintiff, finds an issue of fact as to whether Plaintiff was terminated and to that extent subjected to an actionable adverse action. *Ellerth, 524 U.S. at 761* (stating that "a tangible employment action constitutes a significant change [**51] in employment status such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

**2. Was Plaintiff replaced with a younger driver or were similarly situated younger drivers treated more favorably than Plaintiff?**

Plaintiff must show that he was discriminated against, based on his age, by adducing sufficient evidence that he was either replaced by a younger driver or treated more favorably than a similarly situated younger driver. *Maynard, 342 F.3d at 1289*. Plaintiff must set forth at least one of these circumstances to satisfy his prima facie case. Id. "A plaintiff does not shift the burden to the defendant under McDonnell Douglas merely by stating that he was fired or treated unfavorably. McDonnell Douglas requires the plaintiff to establish a prima facie case which includes identifying an individual who replaced him or was treated better than he who was not a member of his protected class." *Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1082 (11th Cir. 2005)*.

[*1334] Defendant asserts that Plaintiff has no evidence that he was replaced [**52] by a younger driver or that similarly situated younger drivers were treated more favorably. [Doc. No. 27] (Def. Br. at 32-33). The Court agrees. Indeed, the only comparator Plaintiff avers to is an employee named "Mike", who Plaintiff claims replaced him on the opening shift. (Pl. Dep. at 243). This allegation is insufficient to support Plaintiff's prima facie case of age discrimination. Plaintiff has put forth no evidence to establish that Mike replaced him after he was terminated; how old Mike was; or how he was similarly situated to Plaintiff. Plaintiff has furthermore failed to meet his burden of showing adequate similarities between his conduct and that of Mike, or any other younger employee. n15 *Jones v. Gerwens, 874 F.2d 1534, 1541*

Case 2:06-cv-00485-MHT-CSC    Document 34-8    Filed 03/16/2007    Page 14 of 15

Page 13

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

*(11th Cir. 1989)* ("the burden is on [the plaintiff] to show a similarity between his conduct and that of [younger] employees"); *Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)* (plaintiff and employees must be "similarly situated in all relevant respects"). Accordingly, Plaintiff has failed to set forth a prima facie case of age discrimination.

> n15 Also, Plaintiff stated during his deposition that Mike was hired *before* Plaintiff was terminated and replaced Plaintiff during the opening shift. (Pl. Dep. at 228). Plaintiff, however, admitted that his removal from the opening shift was *not* related to age. Id. Thus, Plaintiff's own testimony conflicts with any argument that he was replaced by Mike after he was terminated.

[**53]

### 3. Defendant's reasons for terminating Plaintiff

Although a court's analysis generally ends with a finding that the plaintiff failed to establish a prima facie case, *Nix. v. WLCY Radio / Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984)*, the Court will nevertheless address the remaining steps to show that summary judgment would be appropriate, even if Plaintiff had established a prima facie case, because Defendant has put forth a legitimate, non-discriminatory reason for taking adverse employment action against Plaintiff. In this case, Defendant justifies removing Plaintiff from the schedule because he had performance deficiencies that needed to be addressed before he could continue working. [Doc. No. 27] (Def. Br. at 33). Specifically, Defendant articulates that Brown and other managers believed Plaintiff's work performance was deficient because of his slow delivery time and lack of cross-training. Id. These explanations satisfy Defendant's burden of articulating a legitimate, nondiscriminatory reason for terminating Plaintiff. *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)*. The burden now shifts back to Plaintiff, who must be [**54] afforded "a fair opportunity to show that [Defendant's] stated reason [is] in fact pretext." *McDonnell Douglas Corp., 411 U.S. at 804-807.*

### 4. Pretext

To survive summary judgment, Plaintiff must provide evidence that creates a genuine issue of material fact that Defendant's articulated, nondiscriminatory reason is, instead, pretext for unlawful discrimination. *McDonnell Douglas Corp., 411 U.S. at 804-807; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)* (finding that "plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence'.") (quoting *Burdine, 450 U.S. at 256*); *Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).*

In reviewing Defendant's explanation, however, the Court cannot usurp an employer's [*1335] legitimate business judgment in the absence of evidence of racial discrimination. *E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000)* (finding that "in making business decisions (including personnel decisions), the employer can lawfully act [**55] on a level of certainty that might not be enough in a court of law."). "In evaluating a summary judgment motion, "the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Alabama State Tenure Comm'n, 405 F.3d 1276, 1289* (quoting *Combs, 106 F.3d 1519, 1538*) (internal citations omitted).

In this case, Plaintiff points to the following evidence in support of pretext: (1) Plaintiff's testimony that he did not have performance deficiencies and did not receive any written reprimands; and (2) Brown's "age bias" as demonstrated by certain employment decisions. [Doc. No. 36] (Pl. Br. at 7-8). These arguments are unavailing. Plaintiff has not put forth any evidence that shows that Defendant did not believe that his performance was deficient, and his own testimony expressly contradicts this contention. Specifically, Plaintiff admitted that he was not cross-trained, making Defendant's articulated reason for his termination -- deficient [**56] job performance -- undisputed. (Pl. Dep. at 254-255; 241-242). Therefore, Plaintiff's own testimony refutes his assertion that Defendant terminated him for being deficient when he was not. n16

> n16 Plaintiff must show that all of Defendant's reasons for terminating him were pretext for age discrimination. See *Johnson v. Booker T. Washington Broad. Serv., 234 F.3d 501, 2000 WL 1752177, at 6 n.9 (11th Cir. 2000); Chapman v. AI Transp., 229 F.3d 1012, 1024-25 (11th Cir. 2000)* (explaining that if the Plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment). Therefore, Plaintiff's entire pretext argument fails because his admission that he was not cross-trained.

Case 2:06-cv-00485-MHT-CSC   Document 34-8   Filed 03/16/2007   Page 15 of 15

Page 14

400 F. Supp. 2d 1315, *; 2005 U.S. Dist. LEXIS 27278, **;
96 Fair Empl. Prac. Cas. (BNA) 1602; 87 Empl. Prac. Dec. (CCH) P42,366

Moreover, Plaintiff's subjective perceptions and conclusory allegations unsupported by record evidence do not create genuine issues of [**57] material fact in order to withstand summary judgment. See *Chapman, 229 F.3d at 1051 n.34*; *Wood v. City of Lakeland, 203 F.3d 1288, 1292 (11th Cir. 2000)*; *Holifield, 115 F.3d 1555, 1564 n.-6 (11th Cir. 1997)*; *Carter v. City of Miami, 870 F.2d 578, 585 (11th Cir. 1989)*. This is because the relevant "inquiry into pretext centers upon the employer's beliefs and not the employee's own perceptions of his performance." *Holifield, 115 F.3d at 1565*. Consequently, "where the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment in the absence of other evidence." Id. In fact, Defendant need only to show that it had good reason to believe Plaintiff had performance deficiencies. *Jones, 874 F.2d at 1540*. Accordingly, Plaintiff's allegations of pretext fail because they are based on his own perceptions and do not caste doubt on Defendant's articulated reason for terminating him based on his performance deficiencies. [**58]

Plaintiff also contends that Brown discriminated against him and Sampson, both of whom were over forty, with respect to the "first driver out" policy and the number of work hours assigned to them. [Doc. No. 36] (Pl. Br. at 8). These assertions are without support because, as noted with respect to Plaintiff's prima facie case, he has not put forth any evidence that he was [*1336] treated less favorably than similarly situated younger employers, nor pointed to an adequate comparator to show that he was discriminated against because of his age. Cf. *Maddow v. Procter & Gamble Co., 107 F.3d 846, 852 (11th Cir. 1997)* ("Evidence offered in the prima facie case may be sufficient to raise a genuine issue of material fact regarding pretext.").

Plaintiff's conclusory allegations as to his job performance, as well as his perception that younger employees were given more hours and more favorable application of the "first out" policy, without more, fail to support a finding of pretext. See, e.g., *Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 n. 6 (11th Cir.1998)* (holding that conclusory and generalized allegations of racial bias such as "there was [**59] a racially biased attitude by management towards minority black employees" were properly struck by the district court). As stated by the Eleventh Circuit, "provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman, 229 F.3d 1012, 1030 (11th Cir. 2000)*. Therefore, summary judgment should be **GRANTED** as to Plaintiff's claims brought under the ADEA.

VI.

Conclusion

For the reasons expressed herein, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment [Doc. No. 27] be **GRANTED** in its entirety. The Clerk is **DIRECTED** to terminate the referral of this case to the undersigned magistrate judge.

It is **SO REPORTED AND RECOMMENDED,** this 19th day of August, 2005.

E. Clayton Scofield III

UNITED STATES MAGISTRATE JUDGE

**ORDER**

Attached is the Final Report and Recommendation of the undersigned United States Magistrate Judge made in this action in accordance with *28 U.S.C. § 636(b) (1)* and this Court's Civil Local [**60] Rule 72. The Clerk shall serve this Final Report and Recommendation on the parties.

Pursuant to *28 U.S.C. § 636(b) (1)*, within ten (10) days after being served with a copy of this cover order, each party may file written objections, if any, to this Final Report and Recommendation. Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Final Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay, 714 F.2d 1093 (11th Cir. 1983)*, cert. denied, *464 U.S. 1050, 104 S. Ct. 729, 79 L. Ed. 2d 189 (1984)*.

The Clerk is **DIRECTED** to submit the Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED,** [**61] this 19th day of August, 2005.

E. Clayton Scofield III

UNITED STATES MAGISTRATE JUDGE