# EXHIBIT 1

LEXSEE 1993 U.S. DIST. LEXIS 3629


Cited
As of: Mar 14, 2007

LOSSIE L. LAWSON, Plaintiff, v. BRUNO'S INC., FOOD FAIR, NO. 137, Defendant.

CIVIL ACTION NO. 91-0992-B-C

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, SOUTHERN DIVISION

*1993 U.S. Dist. LEXIS 3629*

March 23, 1993, Decided

**DISPOSITION:** [*1] The motion for summary judgment filed by defendant Bruno's, Inc. be and hereby is GRANTED.

**JUDGES:** Butler, Jr.

**OPINION BY:** CHARLES R. BUTLER, JR.

**OPINION:**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for summary judgment filed by the defendant Bruno's Inc. Plaintiff, who is pro se, has failed to respond to defendant's motion despite warnings from the Court as to the likely consequences of his failure to respond. Pursuant to Local Rule 8, plaintiff's failure to respond is taken as an admission that there are no material factual disputes. n1 The Court, having reviewed the undisputed facts in light of the applicable law, finds that the defendant is entitled to judgment as a matter of law.

---

n1 In addition, plaintiff has failed to respond to defendant's request for admissions. Therefore, the facts contained in the requests for admission are deemed admitted. *Fed. R. Civ. P. 36(b)*.

---

### FINDINGS OF FACT

Lossie Lawson ("Lawson") was initially employed by Bruno's Inc. ("Bruno's") on November 5, 1983 as a part-time [*2] clerk. On June 30, 1984, he was promoted to full-time clerk. On July 25, 1987, Lawson was promoted to Grocery Manager. Lawson remained the Grocery Manager from July 25, 1987 until his discharge on September 12, 1989. From July 25, 1987 until January 7, 1989, Lawson was an hourly paid Grocery Manager. From January 7, 1989 until September 12, 1989, Lawson was a salaried, 48 hour Grocery Manager.

On March 18th, 1989, the defendant filled the position of Second Assistant Manager at Food Fair Store #137 with an employee by the name of Robert Biggs. In response to that management decision, Lawson filed Charge No. 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 with the EEOC, alleging that he had been denied the opportunity to apply for that position, and that he had been discriminated against because of his race. Lawson was not, however, denied an opportunity to apply for the Second Assistant Manager's position, but was afforded the same opportunity to apply for that position as were the rest of the management and non-management employees at Food Fair Store #137. Bruno's does not post Second Assistant Manager positions for bid by its employees. Instead, Lawson, along with the rest of the lower management employees at Food [*3] Fair Store #137 at the time, were all considered for the Second Assistant Manager's position.

Biggs was selected for the Second Assistant Manager's position on March 18, 1989 because of his prior work history, his work history with Bruno's, and Lawson's problems with the supervision of his own stock crew. Biggs had worked in the grocery business for over twenty (20) years prior to his being hired by Bruno's. During Bigg's twenty (20) years in the grocery business, he had worked as a supervisor, a buyer, and a set-up

man, all of which gave him a vast knowledge of the grocery business and the management of employees.

In addition to the twenty (20) years of grocery experience, Biggs had also worked as a supervisor for Lloyd Jones Chevrolet and the Demopolis Housing Authority. All of Biggs prior experience in the grocery business and as a supervisor was directly applicable to the Second Assistant Manager's position and clearly gave Biggs superior qualifications for this job over Lawson and the other lower management employees at Food Fair Store #137.

Biggs was initially hired by Bruno's in August of 1988 as a MAC Clerk, one of the most difficult jobs in the store. The MAC Clerk is [*4] responsible for the pricing of all items in the store and in order for an employee to perform this job, he must be very meticulous and must be able to get along with all of the employees in the store. Biggs handled the MAC Clerk job in an exemplary manner from August of 1988 until he was promoted to Management Trainee on February 14, 1989. From August of 1988 when he was hired by Bruno's as a MAC Clerk until March 18, 1989 when he was promoted to second Assistant Manager, Biggs had no problems whatsoever with any employee at Food Fair Store #137.

At the time of the selection of Biggs as Second Assistant Manager on March 18, 1989, Lawson had only been a supervisor for less than one year. At that time, Lawson was having extensive problems with the supervision of his stock crew and these problems contributed to the decision by Griffin, the store manager, and Leach, the district manager, that Biggs was better qualified than Lawson for the Second Assistant Manager's position. From July 25, 1987 (when Lawson was promoted to Grocery Manager) until March 18, 1989 (when Biggs was promoted to Second Assistant Manager), Lawson encountered a number of problems in performing his supervisory duties [*5] as Grocery Manager, including the management of his stock crew and his ability to take constructive criticism. On numerous occasions between September of 1988 and March 18, 1989, Griffin received phone calls from stock crew employees complaining about their treatment by Lawson, Lawson's attitude toward them, and Lawson's performance as the Grocery Manager.

Lawson's main supervisory deficiencies were in his supervisory style as he argued with, fussed at, and cussed out his stock crew employees in the store aisles instead of dealing with such problems in a professional manner behind closed doors during non-working hours. Lawson's management deficiencies caused both Lawson and the 6 to 8 member of his stock crew to be less efficient in the performance of their duties. The Second Assistant Manager at Food Fair Store #137 was required to supervise over 100 employees as of March of 1989 and since Lawson could not properly supervise the 6 to 8 members of his stock crew as of this time, there was no way he could have supervised 100 employees as Second Assistant Manager.

Another factor which played a role in the non-selection of Lawson as the Second Assistant Manager was an incident which [*6] occurred in September or October of 1988. At that time, Lawson was insubordinate to Byron Lake ("Lake"), the Co-Manager of Food Fair Store #137, and even threatened to beat up Lake when Lake tried to give Lawson some constructive criticism about the method Lawson was using to stock the store isles. Lawson was not terminated by Griffin or Lake in September or October of 1988 because of his insubordination toward Lake, even though they would have been justified in doing so.

It was the foregoing reasons, not Lawson's race, which were the basis for the decision not to select him for the Second Assistant Manager's position and to award the job to Biggs. Biggs was chosen for the Second Assistant Manager's position on March 18, 1989 over four (4) black and ten (10) other white management employees.

Problems with Lawson continued to escalate after the decision was made to promote Biggs in March of 1989. Lawson's supervision of and problems with his stock crew had gotten so bad by April of 1989 that three stock crew members (Diane Carter, Richard Witherspoon, William Lewis), all of whom are black, filed Union grievances with Bruno's on April 29, 1989 regarding their mistreatment by Lawson. [*7] On June 3, 1989, Griffin, Lawson, the stock (including the three members who had filed grievances against Lawson) and James Richardson, the black union representative, met to try and resolve the problems between Lawson and his stock crew. There was a frank discussion at the June 3, 1989 meeting by everyone except Lawson, who was completely uncooperative throughout the meeting and would only state "that is what they say".

After his receipt of the grievances filed by Carter, Witherspoon and Lewis, Griffin also met with Lawson on April 30, 1989 to discuss the grievances, Lawson's supervisory techniques, and to try and help Lawson work through these problems. Griffin's meeting with Lawson on April 30, 1989 did not go well as Lawson refused to talk about the grievances or his supervisory techniques, would not let Griffin help him with his problems, and would not say anything except to deny the allegations in the grievances.

Problems with insubordination also continued, as is illustrated by an incident which occurred on June 7, 1989. Lake, Lawson's direct supervisor, decided to institute a new price count system at this time so that Bruno's

could better keep up with the efficiency and [*8] productivity of the stock crew. When Lake tried to talk with Lawson about this new price count system, Lawson would not stop what he was doing and listen to Lake; rather he continued to enter an order and would not turn around and talk to Lake. Even after Lake took the ordering machine away from Lawson, Lawson still refused to talk to Lake. Finally, Lake told Lawson to go to Lake's office so they could discuss the new price count system in private. Once in Lake's office, Lawson refused to talk with Lake about the new price count system, told Lake that the new system would not work, said that he would continue to do things his own way, and then got up abruptly and left Lake's office. When Lawson got up to leave, Lake told Lawson that he was not through talking to him about the new price count system and that he should stay in Lake's office; however, Lawson refused to stay in Lake's office and walked out into the store. After Lake caught up with Lawson out in the store, he requested that Lawson come back into his office to finish their discussion of the new price count system in private as it was not good for them to be arguing out in the store in front of the employees; however, Lawson [*9] refused to go back into Lake's office. When Lawson refused to go back to Lake's office and finish the discussion about the new price count system, Lake told Lawson that he might as well get out of the store because of his attitude about the whole matter and Lawson in return said that he was not leaving unless Lake made him do so. Lake then asked Lawson if he would leave if Lake fired him and Lawson said "yes". n2

> n2 Contrary to earlier allegations, Lake did not cuss Lawson at any time during the events of June 7, 1989.

Because of Lawson's direct and repeated refusals to obey his direct orders on June 7, 1989, Lake terminated Lawson on that date. On June 8, 1989, Lawson's termination was converted to a suspension without a loss of pay from June 8th to June 22nd, 1989. Neither Lawson's race nor any retaliatory motive played any role whatsoever in the decision to terminate him on June 7, 1989, nor did it play a role in the decision to convert his termination to a suspension on June 8th, 1989. Rather, the sole reason [*10] for Lawson's termination and ultimate suspension on June 7th and June 8th, 1989 was his insubordinate actions and statements to Lake on June 7, 1989, i.e., his direct and repeated refusal to talk with Lake about the new price count system.

After Lawson's return from suspension on June 22, 1989, he continued to have problems with his stock crew and the performance of his work in general. Although Griffin met with Lawson on numerous occasions during the time he was Grocery Manager at Food Fair Store #137 to counsel him about his bad attitude toward his stock crew and his ineffective supervisory style, no improvement in Lawson's attitude toward his stock crew or his supervisory style occurred. On July 27, 1989, another Union grievance was filed by James Threatt, a black stock crew member, against Lawson. Lawson's problems in managing his stock crew and his inability to take constructive criticism started in September or October of 1988 and continued until his termination on September 12, 1989.

On January 7, 1989, Lawson was offered the opportunity to become a salaried, 48-hour Grocery Manager. At the time of this offer on January 7, 1989, Lawson was told that he would not be paid any [*11] overtime, but instead, would receive a salary and a bonus at the end of the year. Lawson voluntarily agreed to become a salaried, 48-hour Grocery Manager. As a salaried, 48 hour Grocery Manager, Lawson (just like the other white and black salaried, 48 hour Grocery Managers for Bruno's) received only a salary for performing his job without regard to the number of hours he worked.

Because of Lawson's extensive problems with the supervision of his stock crew, his inept supervisory techniques, his attitude problems toward his stock crew, his inability to take constructive criticism, and the inefficiency of Lawson and his stock crew caused by these problems, Griffin gave Lawson an overall unsatisfactory performance appraisal on June 5, 1989. As a result of Lawson's unsatisfactory performance evaluation on June 5, 1989, pursuant to Bruno's policy, Lawson received no pay increase on August 1, 1989.

On September 12, 1989, a third incident of insubordination occurred which finally resulted in the plaintiff's discharge. Lake instructed Lawson to finish stocking the remaining two pallets of grocery products before he left to go home at 10:00 a.m. Lawson's work schedule for September 12, 1989, [*12] required him to work until 10:00 a.m. At 9:25 a.m. on September 12th, Lake asked Griffin where Lawson was as he could not find him and the two pallets of grocery products were still not stocked. Griffin did not know where Lawson was and, therefore, Lake called Lawson's home at approximately 9:30 a.m. and Lawson answered the phone. When Lawson answered the phone at his home at approximately 9:30 a.m. on September 12, 1989, Lake asked Lawson what he was doing at home and told Lawson to return to the store immediately and finish stocking the last two pallets of grocery products like he had told him to do; however, Lawson told Lake that he was going to bed and was not coming back to the store and then hung up the phone. After Lake talked with Lawson, Griffin called Lawson at home and told Lawson to return to the store immediately so he could talk to him; however, Lawson told Griffin

that he was going to bed and was not coming back to the store and then hung up the phone. At 5:00 p.m. on September 12, 1989, Lawson finally returned to the store and met with Griffin who terminated him. Lawson was insubordinate to Griffin and Lake on September 12, 1989, by not following Lake's direct order [*13] to finish stocking both pallets of grocery products before he went home, by refusing the direct order of Lake to return to work immediately and complete said assigned task, and by refusing the direct order of Griffin to return to the store immediately so he could talk to him.

Lawson was terminated on September 12, 1989 because he was insubordinate in refusing to follow Lake's direct order to him on September 12th to finish stocking both pallets of grocery products before he went home, was insubordinate in refusing the direct order of Lake to return to work immediately on September 12th and complete said assigned task, was insubordinate in refusing the direct order of Griffin to return to the store immediately on September 12th so he could talk to him, was argumentative and belligerent, and would not cooperate with the stock crew or the management team at Food Fair Store #137.

Lawson's race played no role whatsoever in the decision to terminate him on September 12, 1989. Lawson was not discharged on September 12, 1989 in retaliation for his having filed EEOC charges on May 25, 1989 and June 8, 1989.

Following his termination, Lawson amended Charge No. 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 with the EEOC, [*14] alleging that his September 12th discharge was the result of discrimination and retaliation. Lawson received his Determination and Right to Sue Notice from the EEOC, Birmingham District Office, regarding EEOC Charge Numbers 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 and 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 on September 20, 1990. Lawson failed to file suit within ninety (90) days of his receipt of the Determination and Right to Sue Notice from the EEOC, Birmingham District Office, regarding EEOC Charge Numbers 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 and 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. After the receipt of his Determination and Right to Sue Notice from the EEOC, Birmingham District Office, on September 20, 1990, regarding EEOC Charge Number 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, Lawson did not appeal this determination to the EEOC Determinations Review Program in Washington, D.C. Lawson also failed to file suit within ninety (90) days of his receipt of the Determination on Review and Dismissal of title VII Charge regarding EEOC Charge Number 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 from the EEOC's Determination Review Program in Washington, D.C.

On December 6th, 1991, the plaintiff filed this action alleging (1) that he was denied a promotion based on his race, (2) that he was suspended from his job on the basis of his race and in retaliation [*15] for having previously filed an EEOC charge and (3) that he was ultimately terminated from his job based on his race and in retaliation for having filed an EEOC charge. n3

> n3 Defendant's attempts to conduct discovery in this matter by noticing the plaintiff's deposition, and by propounding requests for admissions have been unsuccessful. Plaintiff has failed to appear for depositions on two occasions. Plaintiff has also failed to respond the requests for admissions which were served on the plaintiff on both addresses which were available to the defendant at that time. Good service was completed for both copies, as is evidenced by the signed receipts dated August 7th, 1992 and August 15th, 1992.

## CONCLUSIONS OF LAW

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The party seeking summary judgment bears the initial burden of pointing out "the absence of a genuine issue concerning any [*16] material fact." *Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970)*. When the nonmoving party has the burden of proof at trial, the moving party may discharge his initial responsibility either by filing supporting affidavits or other evidence or by simply pointing out the absence of evidence to support the nonmoving party's case. *United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991)*.

Once the moving party has satisfied his responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. Id. "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment. *Id. at 1438* (quoting *Celotex Corp. v. Catrett, 477 U.S. 317 (1986)* (footnote omitted).

Having reviewed the undisputed evidence in light of the standards set forth above, the Court finds that the defendant is entitled to summary judgment as to all of plaintiff's claims. Plaintiff's claim [*17] for retaliatory and discriminatory suspension and termination are untimely and are due to be dismissed on that basis alone. Moreover, all of plaintiff's claims are due to be dismissed on the merits.

Timeliness

On September 6th, 1990, Mr. Lawson was sent two determination letters from the EEOC in which he was

informed that the agency had found in favor of Bruno's on both of Mr. Lawson's two charges of discrimination. In those letters, Mr. Lawson was informed that, under Title VII, he had ninety days in which to appeal that decision, or in which to file suit against his employer. Mr. Lawson chose at that time to appeal the EEOC's decision to Washington. The appeal to Washington, however, was only taken on Mr. Lawson's failure to promote charge, Charge #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. He did not, however, appeal his charge based on retaliatory and discriminatory treatment and termination, Charge #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. Nor did Mr. Lawson did file any legal action against Bruno's on the unappealed charge at that time. It was not until over one year later, when Mr. Lawson received the unsuccessful results of his appeal, that he took any action toward filing suit on any of his claims of discrimination.

Under [*18] the Civil Rights Act of 1964, as amended, a plaintiff has only 90 days from the date on which he received the EEOC's determination letter in which to file a lawsuit if he chooses not to appeal the decision made at the local level:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . .

42 U.S.C. Section 2000e-5(f)(1) (emphasis added). This ninety day period has been held to be the [*19] equivalent of a statute of limitations period by the courts, and has been strictly enforced. *Firle v. Mississippi State Dept. of Educ.*, 762 F.2d 487 (5th Cir. 1985); *Hefner v. New Orleans Public Service, Inc.*, 605 F.2d 893 (5th Cir. 1979) (appeal dismissed), cert. denied, 445 U.S. 955, 100 S. Ct. 1639; *Genovese v. Shell Oil Co.*, 488 F.2d 84 (5th Cir. 1973).

By waiting until his appeal on the first claim dealing with alleged discrimination in promotions had been reviewed, Mr. Lawson allowed his ninety day statute of limitations period to run as to his second charge, and lost the right to bring any claims against the defendant for his discharge, either on the basis of race or retaliation. Therefore, summary judgment is due to be granted on this basis alone as to the plaintiff's claims of wrongful termination.

Merits

Regardless of whether Mr. Lawson has filed his claims in a timely manner, summary judgment is still due to be granted. In order to survive summary judgment, the plaintiff must establish for this Court a prima facie case of discrimination. The Supreme Court [*20] has twice held that a plaintiff may succeed in employment discrimination cases "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence". *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (emphasis supplied); *U.S. Postal Service v. Aikens*, 460 U.S. 711, 714-715 (1983). *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1495 (11th Cir. 1987). In the case at hand, the plaintiff has no direct evidence of discrimination on which he may rely. His statements to the EEOC do not mention any comments which were made about his race in conjunction with either his promotion claim or his discharge claim. Therefore, Mr. Lawson must meet his burden of proof by establishing a prima facie case indirectly.

Normally, the requirements set out for indirectly proving a prima facie case of discrimination includes a requirement that the plaintiff show he was replaced by a person [*21] outside the protected category. The framework for analyzing discrimination claims under Title VII and Section 1981 as outlined by the Supreme Court in *McDonell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Smith v. Papp Clinic, P.A.*, 808 F.2d 1449 (11th Cir. 1987). The plaintiff has the initial burden to present a prima facie case of racial discrimination. The burden of production then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the alleged discriminatory behavior. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S. Ct. 1089, 1096, 67 L. Ed. 2d 207 (1981). If the defendant produces a legitimate reason, the plaintiff must then prove by a preponderance of the evidence that the presumptively valid reason offered by the defendant was not the true reason, but rather was merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804-805, 93 S. Ct. at 1825.

The Eleventh Circuit has [*22] articulated three versions of the test for establishing a prima facie case of race discrimination. *Nix, 738 F.2d at 1185*. The first test is met by showing the plaintiff was (1) a member of a protected class, (2) qualified for the job, and (3) replaced by one outside the protected class. Id. The second test is met by showing the plaintiff was (1) a member of a protected class, (2) qualified for the job, and (3) fired or suspended while others not in plaintiff's protected class with comparable or lesser qualifications were retained. Id. The third version of the test is met by showing the plaintiff was (1) a member of a protected class, (2) qualified for the job from which he was fired, and (3) the misconduct for which he was discharged was nearly identical to that which was engaged in by an employee outside the protected class and who was retained by the employer. Id. The claims for establishing a prima facie case of retaliation under Title VII have been similarly set out. The test for proving retaliation by the indirect method that is binding on this Circuit was set out in *Whatley v. Metropolitan Atlanta Rapid Transit, 632 F.2d 1325 (5th Cir. 1980):* [*23]

> To prove a prima facie case under Section 704, the plaintiff must establish (1) that there was a statutorily protected participation, (2) that an adverse employment action occurred, and (3) that there was a causal link between the participation and the adverse employment action.

*Id. at 1328.*

Even if this Court were to give the plaintiff the benefit of the doubt, and rule that he has met the requirements set out for a prima facie case in all of his claims, he still cannot meet the burden necessary for him to overcome the defendant's motion for summary judgment. The question of whether a plaintiff survives summary judgment does not always end when sufficient evidence has been presented to the court to support a prima facie case. Rather, where the defendant has produced rebuttal evidence, the plaintiff's presentation must be strong enough to present a substantial question on the ultimate issue of discrimination. *Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir. 1987); Palmer v. Dist. Bd. of Trustees of St. Petersburg, 748 F.2d 595, 599 (11th Cir. 1984); and Pace v. Southern Railway System, 701 F.2d 1383, 1391 (11th Cir. 1983),* [*24] *cert. denied, 464 U.S. 1018, rehearing denied, 465 U.S. 1054.* See also *U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 715, 103 S. Ct. 1478, 1483 (1983).*

In this case, Mr. Lawson has fatally undermined his claims by tacitly admitting to facts which establish conclusively the legitimate nature of the defendant's actions. He claims in his first EEOC charge, No. 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, and in his complaint that he was denied a promotion to the position of Second Assistant Manager because of his race. However, in August of 1992, Defendant's request for admissions, were served on the plaintiff. To date, over one hundred and twenty days later, plaintiff has still failed to respond to those requests. Under the *Federal Rules of Civil Procedure, Rule 36,* those admissions, if not denied within thirty days, are deemed admitted:

> Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission.

*Rule 36(b) F. R. Civ. Proc.*

There are several facts which the plaintiff is now deemed to have admitted that foreclose [*25] his promotion claim. He has admitted that he was considered for the Second Assistant Manager's position on the same basis as all lower level management employees who were working at the Food Faire store. He has admitted that he had in the past exhibited difficulties in his supervisory position of Grocery Manager, both as to insubordination with higher level management, and with the non-management employees that he supervised. Lawson has also admitted that the job of Second Assistant Manager was given to an individual, Biggs, who was better qualified for the position than was Lawson. Finally, and fatally, Lawson has admitted that there was no discrimination in Bruno's selection procedure, and thus no discriminatory motivation in promoting Biggs rather than Lawson.

Likewise, the undisputed facts foreclose any claim Lawson might have as to his suspension and eventual discharge from Brunos. He admitted that there were serious problems in his management of employees under his supervision, leading to not one, but three union grievances being filed against him. Lawson has also admitted that prior to his termination, he received a week's suspension for insubordination, and that his termination [*26] was a direct result of a third incidence of insubordination on his part. Finally, as with his promotion claim, Lawson has admitted, via his failure to deny, that there was no discriminatory motive on Bruno's part, in suspending or discharging him, nor did retaliation for filing an EEOC charge play any role in his suspension or termination.

Conclusion

By his failure to respond to the motion for summary judgment and defendant's request for admissions, plaintiff has admitted to all the facts that support defendant's motion for summary judgment. After reviewing those facts in light of the applicable law, the Court finds that defendant is entitled to judgment as a matter of law. Accordingly, it is ORDERED that the motion for summary judgment filed by defendant Bruno's, Inc. be and hereby is GRANTED.

DONE this the 23d day of March, 1993.

Charles R. Butler, Jr.

UNITED STATES DISTRICT JUDGE

**FINAL JUDGMENT**

Pursuant to separate order entered this day granting defendant's motion for summary judgment, it is hereby

ORDERED, ADJUDGED and DECREED that JUDGMENT be and hereby is entered in favor of defendant Bruno's, Inc. -- Food Fair No. 137, and that plaintiff recover nothing. [*27]

This Court's local rule and *28 U.S.C. § 1824* shall be applied to the taxation of costs.

DONE this the 23d day of March, 1993.

Charles R. Butler, Jr.

UNITED STATES DISTRICT JUDGE