# EXHIBIT 3

LEXSEE 2006 U.S. DIST. LEXIS 81991

KAREN G. GILMORE, PLAINTIFF, v. JOHN E. POTTER, Postmaster General, United States Postal Service; JOHN TOLLIVER, Postmaster, North Little Rock, Arkansas; PERCY GILBERT, Acting Station Manager; KAREN OSOWSKI, Supervisor, DEFENDANTS

CASE NO. 4:04-CV-1264 GTE

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF ARKANSAS, WESTERN DIVISION

2006 U.S. Dist. LEXIS 81991

November 7, 2006, Decided

COUNSEL: [*1] For Karen G Gilmore, Plaintiff: Gregory Ferguson, Attorney at Law, North Little Rock, AR.

For Postal Service (U.S.), John E Potter, Postmaster General, Defendants: Richard M. Pence, Jr., U. S. Attorney's Office - Little Rock, Little Rock, AR.

JUDGES: Garnett Thomas Eisele, UNITED STATES DISTRICT JUDGE.

OPINION BY: Garnett Thomas Eisele

OPINION:

ORDER ON MOTION FOR SUMMARY JUDGMENT

Presently before the Court are Plaintiff's Final Request for Additional Time in which to Respond to Defendants' Motion for Summary Judgment and Defendant's Motion for Summary Judgment. Plaintiff's Final Request for Additional Time in which to Respond to Defendants' Motion for Summary Judgment is granted. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

I. Background n1

n1 The Court notes that Plaintiff did not comply with the requirements of Local Rule 56.1, which requires the non-moving party to "file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried." Furthermore, under paragraph (c), "All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b). While Plaintiff's submissions do not technically comply with Local Rule 56.1, the Court will consider the "Introduction and History" portion of Plaintiff's Memorandum Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Response") to stand as Plaintiff's statement of material facts. Counsel for Plaintiff is hereby placed on notice of this requirement.

[*2]
Plaintiff Gilmore, a long time employee of the United States Postal Service, was injured on the job, contracting, among other things, carpal tunnel syndrome, which restricted her from lifting heavy objects and prevented her from doing repetitive tasks such as casing mail. n2 On May 9, 1997, Gilmore was offered a rehab letter carrier position at Park Hill Station, 4601 JFK Blvd., North Little Rock, with Saturday and Sunday off (unscheduled days), which she accepted on June 23, 1997. n3 Gilmore states that her husband was successful in a number of EEO claims, NLRB actions, and grievances against the Post Office and its supervisors, which led to retaliation against her husband, and eventually against her, as alleged in her complaint. n4 Gilmore alleges that her husband had been suspended from his job, in part, for reading magazines at work and that she reported the daughter-in-law of the North Little Rock Postmaster for reading magazines, which led to retaliation by local management. On May 30, 2001, Gilmore was notified that her non-scheduled days would tempo-

Case 2:06-cv-00485-MHT-CSC    Document 37-4    Filed 03/22/2007    Page 3 of 11

Page 2
2006 U.S. Dist. LEXIS 81991, *

rarily change from Saturday and Sunday to Thursday and Sunday effective June 2, 2001. n5 Gilmore submitted requests for annual [*3] leave for each Saturday in June, 2001, which were denied. n6 On August 17, 2001, Gilmore was offered an amended rehab letter carrier position at Park Hill Station with Thursday and Sunday as days off, which she accepted under protest. n7 Gilmore stated that she had medical evidence that recommended two consecutive days off so that her hands could heal better. n8 Defendant stated that the change of Plaintiff's off day from Saturday to Thursday was due to the "changing needs of the service," but Plaintiff claims that a clerk at the same station who transferred in, with less seniority than Plaintiff, was given an off day of Saturday. n9 Plaintiff states that her immediate supervisor demeaned her, made light of her disability, and required her to do tasks she was not physically able to do without injury, pain or trauma. Then, he put her in an isolated room and refused to allow her to go onto the workplace floor to curtail Plaintiff's communications with union representatives and NLRB officials. On March 18, 2002, Gilmore was offered an amended rehabilitation position at Main Street Station, 420 Main Street, North Little Rock, with Sunday and Thursday non-scheduled days. n10

[*4]

n2 *See* Plaintiff's Response, p. 2.

n3 *See* Plaintiff's Exhibit 4, Plaintiff's Response; Defendant's Exhibit 1, Defendant's Motion for Summary Judgment (hereinafter "Defendant's Motion").

n4 *See* Plaintiff's Response, p. 2.

n5 *See* Defendant's Exhibit 2, Defendant's Motion.

n6 *See* Defendant's Exhibit 3, Defendant's Motion.

n7 *See* Defendant's Exhibit 4, Defendant's Motion.

n8 *See* Plaintiff's Exhibit 6, Plaintiff's Response.

n9 *See* Plaintiff's Response, p. 3.

n10 *See* Defendant's Exhibit 5, Defendant's Motion.

On October 28, 2004, Plaintiff filed a Complaint in this Court, which states that because of Plaintiff's sex, disability, and protected activity, Defendant discriminated against Plaintiff and created a hostile work environment. Plaintiff asserts that Defendant removed her accommodation, told Plaintiff that she would have to stay home and use her sick leave and annual leave because there was nothing the Plaintiff could do without hurting herself. Plaintiff alleges that Defendant isolated her into a small room where she was threatened with being fired if she came [*5] out onto the workroom floor, was told that she was "worthless" and was treated differently from other employees because of her disability and protected activity. Finally, Plaintiff asserts that Defendant discriminated against her by denying her leave, changing her day off, and telling her not to talk to coworkers because she made calls to the labor union.

## II. Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart, 813 F.2d 874 (8th Cir. 1987)*; Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).* [*6]

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co., 862 F.2d 1338 (8th Cir. 1988)*:

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point[] out to the District Court,'that the record does not disclose a genuine dispute on a material fact. It is

enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id. at 1339* (quoting *City of Mt. Pleasant v. Associated Elec. Coop., 838 F.2d 268, 273-74 (8th Cir. 1988))* (citations omitted)(brackets in original).

"A party seeking summary judgment always bears the initial responsibility of [*7] informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in *Rule 56*, must set forth specific facts showing that there is a genuine issue for trial. *Fed. R. Civ. P. 56(e)*. The plain language of *Rule 56(e)* mandates the entry of summary judgment against a nonmoving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp., 477 U.S. at 322*.

### III. Discussion

#### [*8] A. Proper Defendants

Gilmore's Complaint names as defendants the John E. Potter, Postmaster General; John Tolliver, Postmaster, North Little Rock, Arkansas; Percy Gilbert, Acting Station Manager; and Karen Osowski, Supervisor. Defendant asserts, and Plaintiff does not refute, that the only proper defendant is the head of the agency, John E. Potter, Postmaster General of the United States. *See 42 U.S.C. § 2000e-16(c); Roark v. City of Hazen, 189 F.3d 758, 761 (8th Cir. 1999)*. "[S]upervisors may not be held individually liable under Title VII." *Bonomolo-Hagen v. Clay Central-Everly Community, 121 F.3d 446, 447 (8th Cir. 1997)* (citing *Spencer v. Ripley County State Bank, 123 F.3d 690, 691-92 (8th Cir. 1997)*. Therefore, John Tolliver, Percy Gilbert, and Karen Osowski are dismissed from this action.

#### B. Subject Matter Jurisdiction

Defendant asserts that the Court lacks subject matter jurisdiction over all claims except claims in agency consolidated case # 0044-02 ("2002 EEO complaints") that (1) on 10/29/01 Plaintiff was isolated in a small room and ordered to stay off the workroom floor, and [*9] (2) on 1/8/02, and ongoing, she was subjected to a hostile work environment. Defendant argues that some of the allegations in Plaintiff's Complaint were the subject of previous Equal Employment Opportunity (EEO) complaints # 0193-01 and # 0210-01 ("2001 EEO complaints"), which Plaintiff did not appeal to the Equal Employment Opportunity Commission (EEOC), and therefore, have final decision dates of April 28, 2003. Specifically, Defendants contend that allegations that Defendant changed Plaintiff's day off from Saturday to Thursday and denied annual leave were raised in Plaintiff's 2001 EEO complaints, and Plaintiff failed to timely file a civil action in the United States District Court to challenge the EEOC's findings as to those allegations. n11

> n11 While Defendant also seeks to dismiss for lack of subject matter jurisdiction any allegation that Defendant told Plaintiff to push the accountable mail cart with her foot, or her stomach, no such allegation can be found in Plaintiff's Complaint. The Court recognizes that this allegation was also disposed of by the EEOC's April 28, 2003 Notice of Final Decision, which was not appealed. Therefore, the Court could not consider such allegation if it had been asserted because it would also be time barred. *See Spears v. Missouri Dept. of Corrections and Human Resources, 210 F.3d 850, 853 (8th Cir. 2000)*.

[*10]

The Court agrees that Gilmore is barred from asserting the retaliatory allegations that she alleged in her 2001 EEO complaints. "No court has jurisdiction over a federal employment discrimination claim until and unless the plaintiff exhausts her administrative remedies." *Lawson v. Potter, 282 F. Supp. 2d 1089, 1094 (W.D. Mo. 2003)* (citing *Burkett v. Glickman, 327 F.3d 658, 660 (8th Cir. 2003))*. An employee who receives a right to sue letter from the EEOC has 90 days in which to file suit. *See 42 U.S.C. § 2000e-5(f)(1)*. It is undisputed that Gilmore did not file suit within 90 days of receiving a right to sue letter on her 2001 EEO complaints. Gilmore

is therefore barred from asserting a claim based upon the acts asserted in the 2001 EEO complaints. *See Spears, 210 F.3d at 853* (citing *Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994)* (plaintiff who timely filed suit on second EEOC charge was barred from asserting claims based on events which formed basis of prior EEOC charge that was not timely sued upon)). While claims that are "like or reasonably related" to [*11] claims asserted in an EEOC charge that is timely sued upon may be asserted in a judicial action based on that charge, this rule does not apply to claims that have been asserted in a prior EEOC charge that was not timely acted upon. *Id. at 853 n.2* (citing *Williams, 21 F.3d at 222*). Furthermore, although there is no specific reiteration of the acts asserted in the 2001 EEO complaints, even if there was some vague mention of these acts in the 2002 EEO complaint or the Notice of Final decision, such mention would not remove this bar. *Id.* (citing *Soso Liang Lo v. Pan Am. World Airways, Inc., 787 F.2d 827, 828 (2d Cir. 1986)* (per curiam) (where plaintiff failed to timely bring suit after receiving right to sue letter on first EEOC charge, subsequent charge and right to sue letter did not revive claims asserted in first charge). Therefore, any allegations that Defendant retaliated by changing Plaintiff's day off from Saturday to Thursday and denying annual leave are barred.

Next, Defendant argues that Plaintiff's claim that Defendant removed her accommodation (physical work restrictions, e.g., lifting, standing, etc.) is not properly before the Court [*12] because it was not removed until May, 2005, after she filed this lawsuit, and Plaintiff has not filed an EEO complaint with the Postal Service regarding employment without her former work restrictions. Defendant references Defendant's Exhibit 7, submitted on April 28, 2006, but on May 4, 2006, Defendant requested that the Court disregard that exhibit since a full-duty job offer with no restrictions was never actually issued to Gilmore. After reviewing the 2002 EEO complaints, it does not appear that Plaintiff made any allegation that Defendant removed her accommodation. n12 Thus, any such allegations are barred from consideration for failure to exhaust administrative remedies. *See Lawson, 282 F. Supp. 2d at 1094* (citing *Burkett, 327 F.3d at 660*).

n12 Even if the Court were to construe allegations in Plaintiff's 2002 EEO complaint to assert a removal of accommodation charge, Plaintiff has not met her burden of setting forth affirmative evidence, specific facts, showing that there is a genuine dispute on this issue. While Plaintiff makes vague assertions in her response to Defendant's Motion that her supervisor "required her to do tasks she was not physically able to do without injury, pain or trauma," and "He made her do activities which went against her medical limitations," no supporting documentation is presented. She simply alleges that on October 29, 2001, she was instructed to "move the retail supplies from the room where they were because they were $ 6,800.00 short in the store" and she was instructed to return her key "because no one needed a key to that room who did not have stock or money in there." Plaintiff then states that she "said that some of the boxes were heavy" and she "might need help with them." Plaintiff alleges that her supervisor said, "you can lift two pounds can't you." Plaintiff replied that she could and "just figured [she would] ask Wordell to move some of the heavy boxes for [her]." The limited duty work activities assigned to Plaintiff, which she accepted, appear to include lifting objects of zero to two pounds.

[*13]

### C. Remaining Issues

The only issues that remain for the Court's consideration are whether: (1) Defendant discriminated against Plaintiff and created a hostile work environment in which Plaintiff was abused and harassed because of her sex and disability; and (2) Defendant retaliated against Plaintiff for her protected activity of making calls to the labor union, and because of her disability and sex. The alleged circumstances which support these allegations are: (1) Defendant isolated her into a small room where she was threatened with being fired if she came out onto the workroom floor, was told that she was "worthless" and was treated differently from other employees because of her disability and protected activity; and (2) Defendant told Plaintiff not to talk to coworkers because she made calls to the labor union. Therefore, the Court's consideration of these charges will be limited to those allegations and circumstances properly before the Court.

#### 1. Discrimination Based on Disability

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual." *Thompson v. Bi-State Development Agency, 463 F.3d 821, 824 (8th Cir. 2006)* [*14] (citing *42 U.S.C. § 12112(a); Brunko v. Mercy Hosp., 260 F.3d 939, 941 (8th Cir.2001)*). Absent direct evidence of retaliation, we must apply the *McDonnell Douglas* n13 three-part burden-shifting analysis to Gilmore's claim. *Id. at 824-25* (citing *Baucom v. Holiday Cos., 428 F.3d 764, 766 (8th Cir. 2005)*). Under this burden-shifting framework, the Court must first determine whether Gilmore has presented a prima facie case of discrimination; next, whether the Defendant rebutted the prima facie case by

articulating a legitimate, non-discriminatory reason for the action it took; and finally, whether Gilmore met her burden to prove Defendant's proffered justification was merely a pretext for discrimination. *Id.* at 825.

n13 *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In order to establish a prima facie case of discrimination under the ADA, Gilmore is required to show that 1) she [*15] is disabled within the meaning of the ADA; 2) she is qualified to perform the essential functions of the job, with or without accommodation; and 3) she has suffered an adverse employment action due to her disability. *Thompson*, 463 F.3d at 825. Defendant argues that Plaintiff cannot make out a prima facie case of discrimination because she cannot establish that she has suffered an adverse employment action due to her disability.

"An employee suffers an adverse employment action when there is a 'tangible change in duties or working conditions' constituting 'a material employment disadvantage.'" *Baucom*, 428 F.3d at 767 (citing *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003) (citation omitted)). In *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016-17 (8th Cir. 1999), the Eighth Circuit stated:

> The adverse employment action must be one that produces a material employment disadvantage. Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough to meet the standard, as would circumstances amounting to a constructive discharge. Minor changes [*16] in duties or working conditions that cause no materially significant disadvantage do not meet the standard of an adverse employment action, however.

(citations and quotations omitted).

"Although 'actions short of termination may constitute adverse action' ... 'not everything that makes an employee unhappy is an actionable adverse action.'" *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (citations omitted). However, "a significant change in working conditions does occur where there is 'a considerable downward shift in skill level required to perform [the employee's] new job responsibilities.'" *Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005). In *Ledergerber v. Stangler*, 122 F.3d 1142, 1145 (8th Cir. 1997), the Eighth Circuit noted that other circuits have found adverse employment actions "in a[n] employer's moving an employee's office to an undesirable location [and] transferring an employee to an isolated corner of the workplace." n14 However, the cases referenced by the Eighth Circuit are distinguishable from the case at bar. In *Harris*, the court specifically found that the defendant [*17] was attempting to punish the plaintiff for her complaints to the EEOC about race discrimination by a seemingly permanent transfer to an isolated and less hygienic area of the plant with one male co-worker. 511 F. Supp. at 1200. The move "demoted plaintiff, a high seniority employee, from a highly technical and skilled job in hygienic surroundings to an unskilled, eyeball inspection of dirty and greasy in-process orthopedic goods in an isolated area of the plant." *Id.* at 1203. In *Trout*, not only did the defendant remove her office to an undesirable location, but also awarded her unwarranted inferior performance ratings (which were not upgraded notwithstanding a superior's orders), failed to provide her with appropriate training, and failed to classify her position at a grade comparable to that of other security specialists in the Navy with similar functions. 517 F. Supp. at 890.

N14 The Eighth Circuit cited *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456-57 (7th Cir. 1994) (quoting *Collins v. State of Illinois*, 830 F.2d 692, 703 (7th Cir. 1987) (citing *Harris v. Richards Mfg. Co., Inc.*, 511 F. Supp. 1193, 1200 (D. Tenn. 1981 ), aff'd in part, rev'd in part, 675 F.2d 811 (6th Cir. 1982); *Trout v. Hidalgo*, 517 F. Supp. 873, 890 n. 67 (D.D.C. 1981), aff'd in part and rev'd in part sub nom. *Trout v. Lehman*, 226 U.S. App. D.C. 357, 702 F.2d 1094 (D.C. Cir. 1983), vacated on other grounds, 465 U.S. 1056, 104 S. Ct. 1404, 79 L. Ed. 2d 732 (1984)).

[*18]

In *Baucom*, the Eighth Circuit upheld a district court's grant of summary judgment because the Plaintiff failed to show that his slight reduction in hours, his negative performance reviews, and his allegations of being treated differently amounted to adverse employment actions as a matter of law. 428 F.3d at 767-68. The Court noted that the Plaintiff failed to set forth any facts demonstrating that the Defendant decreased Plaintiff's hours rather than the Plaintiff himself decreasing them as a result of his voluntarily taking vacation and sick leave. *Id.* Even if Plaintiff had set forth such facts, however, the Court found that the decrease did not produce a material employment disadvantage. *Id.*

Taking the facts in a light most favorable to the Plaintiff, Defendant isolated Plaintiff into a small room,

Case 2:06-cv-00485-MHT-CSC   Document 37-4   Filed 03/22/2007   Page 7 of 11

Page 6
2006 U.S. Dist. LEXIS 81991, *

threatened her with being fired if she came out onto the workroom floor, told her that she was "worthless," and told her not to talk to coworkers. n15 As in *Baucom*, Plaintiff failed to set forth any facts to dispute that Plaintiff had informed Defendant that she was no longer capable of performing certain duties due to her disability, and because of these [*19] self-reported limitations, that she no longer performed duties that required her to be on the workroom floor. Furthermore, the Court recognizes that employers must be given some latitude to restrict an employee's access to areas of the workplace in which she has no purpose and prevent an employee from disrupting the work of other employees. However, even if Plaintiff had set forth such facts, the Court finds that the change in location did not produce a material employment disadvantage. Plaintiff has offered no evidence to contradict the fact that the room where Plaintiff was assigned to work was a supervisor's office that is 16 feet wide by 20 feet long that can comfortably accommodate three to four people. n16 Plaintiff offers no evidence that her new work space was any less desirable a location than the workroom floor. Furthermore, decreased responsibilities of the Plaintiff appear to be the result of Plaintiff informing Defendant that her disability no longer allowed her to perform those job duties, rather than an attempt by the Defendant to decrease the skill level requirements of her job or to demote the plaintiff. Finally, assuming Plaintiff was told she was "worthless," such [*20] a comment is the type of "petty slights, minor annoyances, and simple lack of good manners" that does not constitute an adverse employment action. The Court finds that no jury could reasonably conclude that Defendant's actions constituted an adverse employment action, and therefore, summary judgment is appropriate as to this claim.

n15 The Court recognizes that the standard for what constitutes an "adverse employment action" is different for the discrimination, disparate treatment, and hostile work environment claims, than for the retaliation claim. The different statutory language, purposes underlying the claims, and the Supreme Court's holding in *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. --, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), require that result. "The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status," while "[t]he anti-retaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. *Id. at 2412*.

[*21]

n16 *See* Defendant's Exhibit 25, Defendant's Motion.

Alternatively, summary judgment is appropriate because Plaintiff has offered no evidence to contradict the affidavit of her supervisor, Karen R. Osowski, which states that the duties that Plaintiff had previously performed that required her to be on the workroom floor had been given to other employees, and therefore, Plaintiff had no need to be on the workroom floor. n17 Therefore, Defendant has offered a legitimate, nondiscriminatory reason for the actions taken, and Plaintiff has failed to present any evidence that this reason is a pretext for discrimination.

n17 *See* Defendant's Exhibit 25, Defendant's Motion.

### 2. Sex Discrimination

The Court also analyzes Plaintiff's sex discrimination claims under the *McDonnell Douglas* burden-shifting framework. While Plaintiff alleges discrimination because of her sex, the Court finds that Plaintiff makes no factual [*22] allegations that relate specifically to her sex. Rather, Plaintiff consistently focuses on her disability and protected actions as the basis for her claims. As such, Plaintiff has not presented any issue of material fact as to discrimination. Regardless, however, Plaintiff's claims based upon sex would fail under the analysis set forth below because Plaintiff cannot establish that she has suffered an adverse employment action due to her sex, and alternatively, Plaintiff has failed to rebut the legitimate, nondiscriminatory reasons put forth by the Defendant. Therefore, summary judgment is appropriate on this claim.

### 3. Disparate Treatment

Plaintiff has alleged that she was treated differently from other employees because of her sex, disability and protected activity. The Court will consider this allegation as a claim of disparate treatment. "To establish a disparate treatment claim, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was meeting the legitimate expectations as to his her duties; (3) he or she suffered an adverse employment action; and (4) 'circumstances give rise to an inference of discrimination as similarly situated employees, [*23] who were not members of the protected group, were treated differently.'" *Gilooly v. Missouri Dept. of Health and Senior Servs.*, 421 F.3d 734, 738-39 (8th Cir. 2005).

First, Plaintiff provides no evidence of specific events when similarly situated employees were treated differently. Thus, while we must view the facts in a light most favorable to Gilmore, "mere allegations which are not supported with specific facts are not enough to withstand [a] motion" for summary judgment. *Klein v. McGowan*, 198 F.3d 705, 709 (8th Cir. 1999). Also, as discussed above, Gilmore has failed to establish that she suffered any adverse employment action, and alternatively, has failed to present any evidence of pretext to dispute Defendant's legitimate, nondiscriminatory reasons. Therefore, summary judgment is appropriate on this issue.

### 4. Hostile Work Environment

To establish a hostile work environment claim, Gilmore must show (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic under Title VII, (4) the harassment affected a term, condition or privilege of employment, [*24] and (5) employer liability. *Al-Zubaidy v. TEK Industries, Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005). Because the Court finds that Gilmore is unable to prove any material fact question as to the fourth element, the Court declines to discuss the other elements.

"To establish the fourth element, a plaintiff must be prove that the harassment was 'so severe or pervasive as to alter a term, condition, or privilege of employment.'" *Gilooly*, 421 F.3d at 738. "The conduct at issue must not be 'merely rude or unpleasant.'" *Id.* "A plaintiff must establish harassment that is 'so intimidating, offensive, or hostile that it poisoned the work environment.'" *Id.* "A plaintiff must be able to show that 'the workplace [was] permeated with discriminatory intimidation, ridicule, and insult'" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.; Al-Zubaidy*, 406 F.3d at 1038. "Offhand comments and isolated incidents of offensive conduct (unless extremely serious) do not constitute a hostile work environment." *Burkett*, 327 F.3d at 662 (citing [*25] *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). The Court can determine "whether an environment is 'hostile' or 'abusive' ... only by looking at all the circumstances[, which] may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Al-Zubaidy*, 406 F.3d at 1038.

Once again, taking the facts in a light most favorable to the Plaintiff, Defendant isolated Plaintiff into a small room, threatened her with being fired if she came out onto the workroom floor, told her that she was "worthless," and told her not to talk to coworkers. Plaintiff has set forth no facts to support any assertion that the alleged actions taken by the Defendant were "so severe or pervasive as to alter a term, condition, or privilege of employment;" "so intimidating, offensive, or hostile that it poisoned the work environment;" or that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [*26] to alter the conditions of the victim's employment and create an abusive working environment." The Court finds that no jury could reasonably conclude that Defendant's actions created a hostile work environment.

### 5. Retaliation

Title VII prohibits retaliation against an employee who files charges of discrimination or assists others in opposing discrimination. 42 U.S.C. § 2000e-3(a); *Thompson*, 463 F.3d at 826. Plaintiff claims that Defendant retaliated against her for her protected activity of making calls to the labor union, and because of her disability and sex. First, "making calls to the labor union" does not fall within the "protected activity" of either opposing an act of discrimination made unlawful by Title VII, or participating in an investigation under Title VII. See 42 U.S.C. § 2000e-3; *Lee v. U.S. Postal Service*, 882 F. Supp. 589, 597 (E.D. Tex. 1995); *Kinard v. National Supermarkets, Inc.*, 458 F. Sup. 106, 111 (D.C. Ala. 1978). Title VII prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be either opposing [*27] an act of discrimination made unlawful by Title VII ("the opposition clause"), or participating in an investigation under Title VII ("the participation clause"). 42 U.S.C. § 2000e-3(a) (emphasis added); *Hunt v. Nebraska Public Power Dist.*, 282 F.3d 1021, 1028 (8th Cir. 2002).

As with Gilmore's ADA claim, absent direct evidence of retaliation, the Court must apply the *McDonnell Douglas* three-part burden-shifting analysis to Gilmore's retaliation claim. *Thompson*, 463 F.3d at 826. Under this framework, the Court must first determine whether Gilmore has presented a prima facie case of retaliation. *Id.* To establish a prima facie case of retaliation, Gilmore must present evidence that 1) she engaged in activity protected under Title VII; 2) an adverse employment action was taken against her; and 3) a causal connection between the two. *Id.* "The defense may rebut a plaintiff's claim by advancing a legitimate, 'non-retaliatory reason for the adverse employment action.'" *Gilooly*, 421 F.3d at 739. "If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext [*28] for discrimination." *Id.* It is important to note that although Plaintiff did not succeed in her underlying claims, a plaintiff need not succeed on the underlying claims to establish a retaliation claim. *Id.*

2006 U.S. Dist. LEXIS 81991, *

Page 8

Defendant primarily argues that Plaintiff cannot make out a prima facie case of discrimination because she cannot establish that she has suffered an adverse employment action due to her disability or sex. The United States Supreme Court recently addressed the requirement of adverse employment actions for retaliation claims brought under Title VII. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. --, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). In *White*, the plaintiff, Sheila White, the only woman working in the Maintenance of Way department at Burlington's Tennessee Yard, primarily worked as a forklift operator, although she was originally hired as a "track laborer," a job that involves removing and replacing track components, transporting track material, butting brush, and clearing litter and cargo spillage from the right-of-way. *Id. at 2409*. White complained to railroad officials that her immediate supervisor had repeatedly told [*29] her that women should not be working in the Maintenance of Way department and had made insulting and inappropriate remarks to her in front of her male colleagues. *Id.* As a result, the railroad suspended the supervisor. *Id.* The railroad's roadmaster informed White of her supervisor's suspension, and simultaneously informed her that he was removing her from forklift duty and assigning her to perform only standard track laborer tasks, explaining that "the reassignment reflected co-worker's complaints that, in fairness, a 'more senior man' should have the 'less arduous and cleaner job' of forklift operator." *Id.* White then filed a complaint with the EEOC claiming her reassignment amounted to unlawful gender-based discrimination and retaliation. *Id.* Subsequently, White and her immediate supervisor had a disagreement, and her immediate supervisor told the railroad's roadmaster that White had been insubordinate, which resulted in suspension of White without pay for 37 days. *Id.* After exhausting her administrative remedies, White filed a Title VII action against Burlington in federal court claiming that Burlington's actions (1) changing her job responsibilities, and (2) [*30] suspending her for 37 days without pay-amounted to unlawful retaliation in violation of Title VII. *Id. at 2410*. A jury found in White's favor on both of these claims and the district court denied Burlington's post-trial motion for judgment as a matter of law. *Id.* While a divided Sixth Circuit panel reversed the judgment and found in Burlington's favor on the retaliation claims, the full Court of Appeals vacated the panel's decision and affirmed the district court's judgment in White's favor on both retaliation claims. *Id.* The Supreme Court granted certiorari to resolve, in part, how harmful an act of retaliatory discrimination must be in order to fall within Title VII's scope. *Id. at 2411*.

In *White*, the Court set forth the objective standard that "a plaintiff must show that a *reasonable* employee would have found the challenged action *materially* adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id. at 2415* (emphasis added) (internal quotations omitted). The purpose of the anti-retaliation provision is "to prevent employer [*31] interference with 'unfettered access' to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Id.* "[P]etty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* The Court also noted that "courts have held that personality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable." *Id.* (internal quotations omitted). The Court emphasized that context and the particular circumstances of any given act of retaliation are to be considered in applying the standard set forth. *Id.* An "act that would be immaterial in some situations is material in others." *Id. at 2416*. For example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly [*32] to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination." *Id. at 2415-16*. The Court clarified that "the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint. By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id. at 2416*. While the Court stated that "reassignment of job duties is not automatically actionable," the Court in *White* found that a jury could reasonably conclude that the reassignment of responsibilities would have been materially adverse to a reasonable employee. *Id. at 2417*. n18

> n18 The Supreme Court's decision in *White* abrogated *Manning v. Metropolitan Life Ins. Co.*, 127 F.3d 686, 692-93 (8th Cir. 1997), which limited actionable retaliatory conduct to acts "such as hiring, granting leave, discharging, promoting, and compensating."

[*33]

In *White*, however, there was "considerable evidence" that the duties plaintiff was reassigned to were

"by all accounts more arduous and dirtier," less prestigious because the previous job duties required more qualifications, and that the previous position "was objectively considered a better job and the male employees resented [the plaintiff] for occupying it." *Id.* Here, Plaintiff claims that Defendant isolated her into a small room and threatened with being fired if she came out onto the workroom floor, told her that she was "worthless," and told her not to talk to coworkers. n19 Plaintiff has not alleged or proven that she suffered any loss of pay or benefits as a result of the alleged retaliatory actions of the Defendant. As discussed above, Plaintiff failed to set forth any facts to dispute that Plaintiff had informed Defendant that she was no longer capable of performing certain duties due to her disability, and because of these self-reported limitations, she no longer performed duties that required her to be on the workroom floor. Plaintiff has offered no evidence to contradict the fact that the room where Plaintiff was assigned to work was a supervisor's office that [*34] is 16 feet wide by 20 feet long that can comfortably accommodate three to four people or that her new work space was any less desirable a location than the workroom floor. Furthermore, any decrease in responsibilities of the Plaintiff appear to be the result of Plaintiff informing Defendant that her disability no longer allowed her to perform those job duties, rather than an attempt by the Defendant to decrease the skill level requirements of her job or to demote the Plaintiff. Finally, assuming Plaintiff was told she was "worthless," such a comment is the type of "petty slights, minor annoyances, and simple lack of good manners" that does not constitute an adverse employment action. The Court finds that no jury could reasonably conclude that Defendant's actions constituted an adverse employment action, and therefore, summary judgment is appropriate as to this claim.

n19 While not discussed in Plaintiff's 2002 EEO complaints, in Plaintiff's Response to Defendant's Motion for Summary Judgment she states that all duties were removed from her except answering the phone, and for a portion of the time she was restricted to the room, she was without the use of a functioning telephone. Plaintiff further alleges that "supervisors made her perform tasks beyond her physical restrictions and commented adversely toward her when she did not accomplish the tasks assigned, such as driving a work vehicle. When [Plaintiff's] restrictions prevented her from repeatedly opening the heavy sliding door on the vehicle, Percy Gilbert, her supervisor told her she could honk the horn and have someone come out and open the door for her and unload any heavy packages from her vehicle . . . ." Even if the Court considers Plaintiff's allegations contained in Plaintiff's Response, which are beyond those presented in the 2002 EEO complaints, Plaintiff has failed to show that Defendant's stated reasons are only a pretext, as discussed below.

Furthermore, although Plaintiff alleges in her Response to Defendant's Motion for Summary Judgment that her supervisors "ridiculed her for her restrictions, did things like putting objects weighing more than her restrictions would allow her to move on top of her desk, forcing her to move the objects," it is clear that these allegations were made with regard to Plaintiff's 2001 EEO complaints, and are therefore barred. *See* Defendant's Exhibit 9, Defendant's Motion.

[*35]

Alternatively, Plaintiff has offered no evidence to contradict the legitimate, non-retaliatory reason for the adverse employment action set forth by Defendant. Defendant has submitted the affidavit of Plaintiff's supervisor, Karen R. Osowski, which states that the duties that Plaintiff had previously performed that required her to be on the workroom floor had been given to other employees, and therefore, Plaintiff had no need to be on the workroom floor. Plaintiff has failed to show that this explanation offered by the Defendant is merely a pretext for retaliation. Thus, summary judgment is appropriate.

Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff's Final Request for Additional Time in Which to Respond to Defendant's Motion for Summary Judgment (Docket # 29) shall be, and is hereby, GRANTED.

IT IS FURTHER ORDERED THAT Defendant's Motion for Summary Judgment (Docket # 18) shall be, and is hereby, GRANTED.

IT IS SO ORDERED THIS 7th day of November, 2006.

/s/ Garnett Thomas Eisele

UNITED STATES DISTRICT JUDGE

JUDGMENT

Upon the basis of the Order granting Defendants' Motion for Summary Judgment, Plaintiff's complaint must be dismissed with prejudice against Defendants. [*36]

IT IS THEREFORE ORDERED that JUDGMENT be, and it is hereby, entered in favor of Defendants John E. Potter, John Tolliver, Percy Gilbert, and Karen Osowski, and against Plaintiff, Karen G. Gilmore.

2006 U.S. Dist. LEXIS 81991, *

Page 10

IT IS FURTHER ORDERED that the Complaint be, and it is hereby, dismissed with prejudice.

Dated this 7th day of November, 2006.

/s/ Garnett Thomas Eisele

UNITED STATES DISTRICT JUDGE