# EXHIBIT A

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 1

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

NORTHERN DIVISION

CASE NUMBER:    CV-00485-MHT

AUTHERINE CROSKEY,

                Plaintiff,

VS.

BIG LOTS STORES, INC.,

                Defendant.

* * * * * * * *

S T I P U L A T I O N

IT IS STIPULATED AND AGREED by and

between the parties, through their respective

counsel, that the deposition of AUTHERINE

CROSKEY may be taken before Kelly Gray, CSR., at

the law offices of Carpenter, Ingram &

Mosholder, LLP, 303 Sterling Centre, 4121

Carmichael Road, Montgomery, Alabama 36106, on

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 24

1    A      Yeah, about five.

2    Q      If you'll look back at Exhibit 2, which

3    is your responses to Big Lots' Interrogatories.

4    And look specifically at your response to

5    Interrogatory Number 1.

6    A      Uh-huh.

7    Q      Does this response accurately list all

8    the places you've lived in the last ten years?

9    A      Yes.

10   Q      And are the dates you provided correct?

11   A      Yes.

12   Q      And, Ms. Croskey, for the record, what is

13   your race?

14   A      Black.

15   Q      And you are female, correct?

16   A      Yes.

17   Q      And you testified that you're currently

18   married?

19   A      Uh-huh.

20   Q      And what is your spouse's name?

21   A      Erick, E-R-I-C-K.

22   Q      Croskey?

23   A      Uh-huh; yes.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 77

1    A        Yes.

2    Q        Okay.  And do you like working at

3    Wal-Mart?

4    A        Uh-huh.

5    Q        Do you prefer it to Big Lots?

6    A        Do I prefer Big Lots?

7    Q        Do you prefer working at Wal-Mart to

8    working at Big Lots?

9    A        I liked Big Lots.

10   Q        You liked working at Big Lots?

11   A        Uh-huh.

12   Q        Okay.  Do you like working at Wal-Mart

13   more?

14   A        Yeah, because of the money.

15   Q        Because you make more money?

16   A        They give us 40 cent raises, and Big Lots

17   only gave 25 cent raises.

18   Q        So you like working at Wal-Mart more than

19   working at Big Lots, because you make more

20   money?

21   A        Yes.

22   Q        But otherwise, you liked working at Big

23   Lots?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 78

1    A      Yeah.

2    Q      Have there been any changes in your job

3    title or your responsibilities since you started

4    working at Wal-Mart?

5    A      I was asked to be a CSS, but I haven't

6    accepted it, because it wouldn't be in the time

7    frame that I would need to be with my grandbaby.

8    Q      All right.  So is that a promotion?

9    A      Uh-huh.

10   Q      Yes?

11   A      Yes.

12   Q      And CSS is Customer Service Specialist,

13   perhaps?

14   A      Yes.

15   Q      Is that what that stands for?

16   A      Yes.

17   Q      When were you offered that position?

18   A      About a month ago.

19   Q      And you testified that's a promotion?

20   A      Yes.

21   Q      And do you know how much more money you

22   would be earning?

23   A      No.  I'm not going to guess on that, no.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 89

1    than Wal-Mart, since your separation from Big

2    Lots; is that right?

3    A       Right.

4    Q       And you have not been self-employed

5    during that time period?

6    A       No.

7    Q       So again, you have only worked at

8    Wal-Mart since you separated from Big Lots,

9    correct?

10   A       Yes.

11   Q       Let's talk about your employment history

12   with Big Lots.

13   A       Okay.

14   Q       You were hired by Big Lots on March 30,

15   1997; is that correct?

16   A       I can't say whether -- if you have a

17   document with that date, yes.

18   Q       Well, let's put it this way, do you have

19   any reason to disagree with the statement that

20   you were hired by Big Lots on March 30th, 1997?

21   A       No.

22   Q       And you were hired as a part-time

23   cashier/recovery associate; is that correct?

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 90

1    A       Yes.

2    Q       And you were hired to work in Big Lots

3    Store Number 818 in Montgomery, Alabama; is that

4    correct?

5    A       Yes.

6    Q       And you worked at Store Number 818

7    throughout your employment with Big Lots; isn't

8    that true?

9    A       Yes.

10   Q       With whom did you interview when you

11   applied with Big Lots?

12   A       I can't remember his name.  It was a man.

13   Q       Do you know who was involved in the

14   decision to hire you?

15   A       No.

16   Q       Okay.  You also received an Associate's

17   Handbook when you were hired at Big Lots; isn't

18   that right?

19   A       Yes.

20   Q       And you recall signing a paper

21   acknowledging you had received the Associate's

22   Handbook and reviewed the contents?

23   A       Yes.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 91

1   REPORTER'S NOTE:   (At this point, instrument was
2   marked for identification by the Reporter as
3   Defendant's Exhibit Number 9, after which, the
4   deposition continued, as follows:)
5
6       Q       (continued by Mr. Smith)  Ms. Croskey,
7   I've just handed you what has been marked as
8   Exhibit 9.  Do you recognize this document,
9   which is Big Lots' Equal Employment Opportunity
10  application contained in the Associate's
11  Handbook?
12      A       Yes.
13      Q       And the first line states that, "No
14  person shall be discriminated against in
15  employment because of" -- among other things --
16  "race, color or sex;" isn't that correct?
17      A       Uh-huh.
18      Q       And you were aware during your employment
19  that Big Lots' policy prohibits discrimination
20  based upon, among other things, race, color and
21  sex; is that right?
22      A       Right.
23      Q       And the sixth paragraph states that, "Any

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 92

1    formal or informal allegation that this policy

2    has been violated should be referred immediately

3    to Human Resources;" is that right?

4    A       Right.

5

6    REPORTER'S NOTE:   (At this point, instrument was

7    marked for identification by the Reporter as

8    Defendant's Exhibit Number 10, after which, the

9    deposition continued, as follows:)

10

11   Q       (continued by Mr. Smith)  And, Ms.

12   Croskey, do you also recognize this document,

13   which has been marked as Exhibit 10?  And this

14   is Big Lots' Harassment-Free Environment policy

15   also in the Associate's Handbook; is that right?

16   A       Yes.

17   Q       And you were familiar with this policy

18   during your employment?

19   A       Yes.

20   Q       And the policy states that, "Big Lots

21   strictly prohibits harassment and/or

22   discrimination based on" -- among other things--

23   "race, color and sex;" is that right?

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 93

1    A    Yes.

2    Q    And the paragraph beginning with the word

3    "likewise," which is one, two, three -- the

4    fourth paragraph down, states that, "Any

5    associate who believes he/she has been the

6    subject of harassment is responsible for

7    promptly reporting the alleged act to Human

8    Resources or his/her immediate supervisor;" is

9    that correct?

10    A    Yes.

11    Q    And you were familiar with this policy

12    during your employment?

13    A    Yes.

14    Q    And the last sentence of the fifth

15    paragraph states that, "Likewise, retaliation

16    against anyone reporting acts of harassment will

17    not be tolerated;" is that correct?

18    A    That's right.

19

20    REPORTER'S NOTE:   (At this point, instrument was

21    marked for identification by the Reporter as

22    Defendant's Exhibit Number 11, after which, the

23    deposition continued, as follows:)

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 94

1    Q        (continued by Mr. Smith)  Ms. Croskey,

2    I've just handed you Exhibit 11, which is a copy

3    of Big Lots' Open Door policy, right?

4    A        Right.

5    Q        And you recall this policy from the

6    Associate's Handbook you received, don't you?

7    A        Uh-huh.

8    Q        And the second sentence of that policy

9    states that, "Any associate with a question or

10   problem is entitled to use the policy and may

11   contact anyone in the organization;" isn't that

12   correct?

13   A        Correct.

14   Q        And it goes on to state that, "An

15   associate may take his or her question or

16   concern to the immediate supervisor or manager,

17   to the next level manager, or the Human

18   Resources Department;" isn't that correct?

19   A        Correct.

20   Q        And the policy also provides that

21   associates may make anonymous complaints by

22   calling the Get Real Hotline, which is a toll

23   free complaint number; isn't that correct?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 95

1    A        Correct.

2    Q        And you were familiar with this policy

3    during your employment?

4    A        Yes.

5    Q        And you recall that the 1-800 complaint

6    number was posted in the break room, correct?

7    A        Yes.

8    Q        And the last paragraph of the policy

9    states that, "Any attempt to thwart or retaliate

10   against an associate for exercising his/her open

11   door rights will be considered a serious

12   violation of company policy and may result in

13   disciplinary action up to and including

14   termination;" is that correct?

15   A        Correct.

16

17   REPORTER'S NOTE:   (At this point, instrument was

18   marked for identification by the Reporter as

19   Defendant's Exhibit Number 12, after which, the

20   deposition continued, as follows:)

21

22   Q        (continued by Mr. Smith)  Ms. Croskey,

23   I've just handed you what's been marked as

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 96

1   Exhibit 12, and this is a copy of Big Lots'

2   Standards of Conduct policy; is that right?

3   A       Right.

4   Q       And this was also in the Associate's

5   Handbook during your employment, correct?

6   A       Yes.

7   Q       And the first page states that,

8   "Violations of company policy, including the

9   Harassment-Free Environment policy, will not be

10  tolerated;" is that correct?

11  A       That's right.

12  Q       And the second page, last paragraph,

13  states that, "Associates are expected to comply

14  with this policy and report violations

15  immediately;" is that correct?

16  A       Yes.

17  Q       And you were familiar with this policy

18  during your employment, correct?

19  A       Yes.

20  Q       Do you recall that your initial rate of

21  pay at Big Lots was $5.30 an hour?

22  A       When I first started there?

23  Q       Yes.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 97

1      A       Yeah.

2      Q       And you regularly received merit-based

3      raises throughout your employment at Big Lots,

4      didn't you?

5      A       Yes.

6      Q       And these increases in pay were at least

7      every six or twelve months, correct?

8      A       Yes.

9      Q       And was Billy Pridgen an assistant

10     manager at Store Number 818 during much of your

11     employment?

12     A       Yes.

13     Q       And are you aware that he held that

14     position at the store since February of 1998?

15     A       Yes.

16     Q       And are you aware that he was often

17     involved in the decision to give you pay

18     increases?

19     A       I don't know.  I guess.  I don't know.

20     Q       If his name appears on the Big Lots'

21     Action Request forms regarding your raises,

22     would you have any reason to question Pridgen's

23     involvement in the decisions to give you pay

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 102

1    Q        (continued by Mr. Smith)  Ms. Croskey,

2    Exhibit 16 is yet another Action Request Form

3    from Big Lots, and this one is dated March 31st,

4    2001.  Do you recognize this document?

5    A        Yes.

6    Q        It indicates you were promoted from a

7    part-time cashier to a full-time stocker

8    effective March 31st, 2001; is that correct?

9    A        Yes.

10   Q        And the document is signed by you and

11   James Williams; is that correct?

12   A        Yes.

13   Q        And Mr. Williams was an assistant manager

14   at Store Number 818?

15   A        Yes.

16   Q        Do you know who was involved in the

17   decision to promote you to this full-time

18   position?

19   A        No.

20   Q        Isn't it true that throughout your

21   employment at Big Lots, you received overall

22   ratings on your performance appraisals of

23   acceptable or meets expectations or above

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 103

1    acceptable.

2    A       Yes.

3

4    REPORTER'S NOTE:  (At this point, instrument was

5    marked for identification by the Reporter as

6    Defendant's Exhibit Number 17, after which, the

7    deposition continued, as follows:)

8

9    Q       (continued by Mr. Smith)  Ms. Croskey,

10   Exhibit 17 is a Performance Appraisal for you

11   from Big Lots.  Do you recognize this document?

12   A       Yes.

13   Q       And this Performance Appraisal was signed

14   on June 14, 2002 by you, Billy Pridgen and E.

15   Torbert; is that correct?

16   A       Yes.

17   Q       And Billy Pridgen completed this

18   appraisal for you; is that your understanding?

19   A       I don't know who does it.  I thought the

20   manager does it.  I don't know.

21   Q       You don't know?  You don't know whether

22   Billy Pridgen was involved?

23   A       Yes.  I don't know.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 106

1    Q        (continued by Mr. Smith)  Ms. Croskey,

2    Exhibit 19 is a Performance Appraisal for you

3    dated August 30, 2004; is that correct?

4    A        Yes.

5    Q        And do you recognize this document?

6    A        Yes.

7    Q        And this Performance Appraisal was signed

8    by Billy Pridgen on August 30, 2004?

9    A        Yes.

10   Q        Do you know whether Jerry Culpepper was

11   involved in preparing this evaluation?

12   A        I don't know.

13   Q        Jerry Culpepper was then the store

14   manager for Store Number 818 in August 2004; is

15   that correct?

16   A        Yes.

17   Q        And he became the store manager at Store

18   Number 818 on or about July 12, 2004; is that

19   correct?

20   A        Like I say, I don't know the dates.  I

21   don't know.  I can't really give you a positive

22   answer on --

23   Q        Do you have any reason to disagree with

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 107

1    that date?

2    A       No, I don't.

3    Q       And your overall rating was six points?

4    A       Yes.

5    Q       And according to the ratings at the

6    bottom of the page, the score gave you an

7    overall rating of acceptable; is that true?

8    A       Yes.

9    Q       And you received above acceptable ratings

10   in two categories?  Look at Exhibit 19.

11   A       Okay.  Yes, it's acceptable.

12   Q       But the 2 stands for above acceptable; is

13   that right?

14   A       Oh, okay.  Yes.

15   Q       So you received above acceptable in two

16   categories?

17   A       Yes.

18   Q       Okay.  And were you pleased with this

19   evaluation?

20   A       Yes.

21

22   REPORTER'S NOTE:  (At this point, instrument was

23   marked for identification by the Reporter as

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 109

1    appraisal for you?

2    A      Yes.  It's their signature, but I don't

3    know who -- I just know their signature is on

4    here.

5    Q      You don't know who prepared this --

6    A      I don't know who makes the decision.

7    Q      But this document was signed by Billy

8    Pridgen and Jerry Culpepper?

9    A      Yes.

10   Q      And they both signed it on 7/25/05?

11   A      Yes.

12   Q      All right.

13   A      Yes.

14   Q      And by signing it, they approved it.  It

15   says "approval signatures;" is that right?

16   A      Yes.

17   Q      So it's your understanding they approved

18   this review for you?

19   A      Yes.

20   Q      And isn't it true that you always

21   received consistently positive evaluations

22   during your employment at Big Lots?

23   A      Yes.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 110

1    Q       And isn't it true that Billy Pridgen and

2    Jerry Culpepper gave you positive evaluations?

3    A       They -- yes.

4    Q       And throughout your employment at Big

5    Lots, did you perform your job duties well?

6    A       Yes.

7    Q       And you were able to perform your job

8    well while you were at Big Lots?

9    A       Yes.  I loved my job, yes.

10   Q       You loved your job?

11   A       Yes.

12   Q       And your claims in this lawsuit don't

13   have anything to do with your evaluations, do

14   they?

15   A       No.

16   Q       Isn't it true that at the time of your

17   separation from Big Lots, you had not received

18   any written progressive counselings or any other

19   form of reprimand or discipline since 2003?

20   A       Yes.

21   Q       And isn't it true that when employees at

22   Store Number 818 were disciplined, they were

23   issued a Progressive Counseling Form, a written

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 115

1    A    Yes.

2    Q    And if you don't understand something,

3    then do ask me so I can clarify it.

4    A    Okay.

5    Q    So when I use the term "pre-date," I

6    meant that Jerry Culpepper and Mike Williams

7    didn't even work at Big Lots when you received

8    those disciplines; is that right?

9    A    Yes.

10    Q    In this lawsuit, you allege you were

11    subjected to a hostile work environment, because

12    of your race and sex; is that correct?

13    A    Yes.

14    Q    And these are the only claims you're

15    alleging in this lawsuit, right?

16    A    Yes.

17    Q    And you've brought your claims under

18    Title 7; is that right?

19    A    If that's what -- yes.

20    Q    That's the statute.

21    A    Okay.

22

23    REPORTER'S NOTE:  (At this point, instrument was

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 118

1    you filed it?

2    A       Yes.

3    Q       And this is your signature verifying that

4    everything is true and accurate on the second

5    page of the Complaint; is that right?

6    A       Yes.

7

8    REPORTER'S NOTE:  (At this point, instrument was

9    marked for identification by the Reporter as

10   Defendant's Exhibit Number 23, after which, the

11   deposition continued, as follows:)

12

13   Q       (continued by Mr. Smith)  Ms. Croskey,

14   I've just handed you a Charge of Discrimination

15   filed with the EEOC, which has been marked as

16   Exhibit 23.  Do you recognize this document?

17   A       Yes.

18   Q       And is this a copy of your Charge of

19   Discrimination that you filed against Big Lots

20   with the EEOC on June 23rd of 2005?

21   A       Yes.

22   Q       And this is charge number 130200505216;

23   is that right?

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 119

1    A       Yes.

2    Q       And you produced a copy of this document

3    in your response to Big Lots' request for

4    production; is that right?

5    A       Yes.

6    Q       And did you review this charge before it

7    was filed?

8    A       Yes.

9    Q       And is that your signature at the bottom

10   of the page?

11   A       Yes.

12   Q       And you signed the document on June 16,

13   2005?

14   A       Yes.

15   Q       And you understood this was sworn

16   testimony, correct?

17   A       Yes.

18   Q       Is everything in the charge truthful and

19   accurate?

20   A       Yes.

21   Q       And you've included the relevant facts?

22   A       Yes.

23   Q       And in the box indicating the date the

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 120

1    alleged discrimination took place, you noted

2    March 28th through 30, 2005; is that correct?

3    A      Yes.

4    Q      And those are the dates you allege the

5    discrimination took place, correct?

6    A      Yes.

7    Q      And in the Cause of Discrimination box --

8    A      Okay.

9    Q      -- you checked race and sex; isn't that

10   correct?

11   A      Yes.

12   Q      And those are the two things you believe

13   your discrimination was based on, your race and

14   your sex; is that right?

15   A      Yes.

16   Q      And attached to the EEOC charge are

17   Exhibits A and B to the charge; is that right?

18   A      Yes.

19   Q      And did you draft Exhibit A?

20   A      Yes.

21   Q      You wrote it?

22   A      No.  I wrote down -- I wrote down what he

23   told -- what happened to me.  I told him what

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 121

1    happened, and he wrote this up.

2    Q        Okay.  So your lawyer, Gary Atchison --

3    A        Yes.

4    Q        -- he actually prepared the document; is

5    that right?

6    A        Yes, he did.

7    Q        And he was representing you at the time?

8    A        Yes.

9    Q        And is the information contained in

10   Exhibit A complete with respect to the specific

11   facts underlying your EEOC charge?

12   A        Yes.

13   Q        And did you file your charge because you

14   were complaining about the pictures Mike

15   Williams made?

16   A        And other --

17   Q        And other things?

18   A        Yeah.

19   Q        Mike Williams was then an associate

20   manager at Store Number 818; is that correct?

21   A        Yes.

22   Q        And is his full name Gerald Michael

23   Williams; is that right?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 122

1     A      Yes.

2     Q      And with respect to the pictures, what

3     specifically are you alleging Mike Williams did?

4     A      I was working in the toy department, and

5     I was on the wall and I was hanging toys up

6     on --

7     Q      Are you referring to the pictures?

8     A      I'm referring to the screw.

9     Q      I'm asking you about the pictures.

10    A      Oh, what -- what do you want -- oh, what

11    I hate about these pictures (indicating)?

12    Q      Well, tell me specifically what you think

13    Mike Williams did with respect to these

14    pictures.

15    A      He put me on a dollar bill, $100.00 bill,

16    and he put bogus -- I'm just as bogus as this --

17    as this note.  That's downgrading.  I gave him

18    my -- I took a picture for it to go on the card,

19    and he put me on these (indicating).

20    Q      Like a name bandage; is that what you

21    mean when you say "a card?"

22    A      Yes.

23    Q      Okay.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 123

1    A        And he put me on a $100.00 bill, and then

2    put "bogus."  And then he put me on this picture

3    looking like clowns.  That was hurting.  And

4    then he turned around and put me on a picture

5    with Jerry, sitting in his lap, with another

6    woman's body.

7    Q        Okay.

8    A        And with my arms around him.  I've never

9    been hurt like that.  I've never seen nothing

10   like this in all the years and every where I've

11   been.  I never thought something like this --

12   Q        Okay.  Are the pictures about which

13   you're complaining attached as Exhibit B to your

14   EEOC charge?

15   A        Yes.

16   Q        And on this first page of Exhibit B,

17   that's not you, is it?

18   A        No.  Where?  No, it's not (indicating).

19   Q        And I'm referring to this photograph that

20   says, "Where are we going, hun?"  That's not you

21   there in that picture, is it?

22   A        No.

23   Q        Is it your understanding that Mike

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 124

1    Williams made all the pictures attached as

2    Exhibit B to your EEOC charge?

3    A       Yes.

4    Q       Why do you think that?

5    A       Do I know that he made these?

6    Q       Yes.

7    A       Because he brought them to work, and he

8    told me -- he told us that he did this on his

9    computer.

10   Q       So he said he did it?

11   A       Yes.

12   Q       Okay.  Now, who are the two individuals

13   in this picture on the first page of your

14   Exhibit B?

15   A       Jerry Culpepper and Linda Sankey.

16   Q       And Linda Sankey is a black female?

17   A       Yes.

18   Q       And the other picture -- person in the

19   picture is Jerry Culpepper, the store manager;

20   is that right?

21   A       Yes.

22   Q       And he's a white male, correct?

23   A       Yes.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 127

1    the office then, to staple -- to put the

2    stamp --

3    Q      Did you see Mike Williams put that up

4    there?

5    A      No.

6    Q      Okay.  You don't have any personal

7    knowledge as to whether Mike Williams was really

8    the person that hung up the picture, do you?

9    A      No, just -- Linda told me to come and

10   look at it; he had pinned it up on the wall.

11   Q      But you don't personally know whether

12   Mike Williams actually hung that picture?

13   A      No.

14   Q      And you're referring to just this picture

15   dated 3/29/05 that includes only Linda Sankey,

16   correct?

17   A      Yes.

18   Q      Because you're not in this picture, you

19   weren't affected personally by this picture,

20   were you?

21   A      No.

22   Q      On the second page of your Exhibit B

23   includes pictures of various individuals on play

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 128

1    or fake $100.00 bills; is that correct?

2    A       Yes.

3    Q       Okay.  And were these individuals all Big

4    Lots' employees?

5    A       Yes.

6    Q       Now, are you pictured on any of these

7    play $100.00 bills?

8    A       Yes, I'm the first one.

9    Q       All right.  So as we're looking at them,

10   they're on the left.  There are one, two, three,

11   four, five on the left side of the page; is that

12   right?

13   A       Yes.

14   Q       And you're saying that's you in the first

15   picture; is that right?

16   A       I'm the first picture on the dollar, and

17   I'm in Jerry's lap.

18   Q       Okay.  I'm asking you about the $100.00

19   bill.

20   A       Yes.

21   Q       Now, tell me who the employees are on

22   these play bills.

23   A       Barbara, Linda, Lola --

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 129

1    Q        Hold on.  You're in the first one.  Who's

2    in the second one?

3    A        Barbara.

4    Q        Barbara who?  Martin?

5    A        Yes.

6    Q        Okay.  Next?

7    A        Linda Sankey.

8    Q        Uh-huh.

9    A        Lola Abner.

10    Q        Lola Abner is in the fourth one down; is

11    that right?

12    A        Yes.

13    Q        And who's in the fifth one down?

14    A        Nicole Reed.

15    Q        Are you aware that pictures of all

16    employees who worked in the store at the time --

17    and by "the store" I'm meaning Store Number

18    818 -- were put on play $100.00 bills by

19    Williams?

20    A        No.

21    Q        You're not aware of that?

22    A        No.

23    Q        Do you have any reason to disagree with

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 130

1    that statement?

2    A       I don't have a reason to disagree.

3    Q       Okay.

4    A       I just know --

5    Q       Do you -- do you know whether Williams

6    put pictures of all the employees on play

7    $100.00 bills regardless of their race or their

8    gender?

9    A       I don't know.

10   Q       Do you know whether white employees were

11   also included on these play $100.00 bill

12   pictures?

13   A       There's only three in there, the

14   managers.  And the only manager that was on --

15   it wasn't on no fake $100.00 bill.  It was just

16   the black ladies.  The only woman that's in

17   there --

18   Q       Okay.  I'm asking you whether you know

19   whether white employees were also included on

20   play $100.00 bills.

21   A       No.

22   Q       You don't know?

23   A       No.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 131

1    Q      Do you know whether male employees were

2    also included on play $100.00 bills?

3    A      No, I don't know.

4    Q      And again, we're talking about the

5    pictures on the play $100.00 bills.  The

6    pictures that -- or the $100.00 bills that don't

7    include you didn't affect you personally, did

8    they, because you weren't in them?

9    A      In the $100.00 bills?  I'm in there.

10   Q      You're in one of them.

11   A      Yeah.

12   Q      What I'm saying, the other four didn't

13   affect you personally, did they, because you

14   weren't a part of those pictures?

15   A      I was concerned about mine.

16   Q      The only -- the only play $100.00 bill

17   that affected you was the one that had your

18   picture on it; is that right?

19   A      Yes.

20   Q      And did you find -- so the only play

21   $100.00 bill that you found objectionable was

22   the one that had your picture; is that right?

23   A      Yes.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 132

1    Q       Why did you find that objectionable?

2    A       He put me on a $100.00 bill, and he said

3    I'm just as bogus as this note that's written in

4    small print all around the $100.00 bill, and

5    he's got, "Bogus cash; fake."  That made me --

6    Q       It was play money, correct?

7    A       It was real money.  The colored pictures

8    will show you it's real money.

9    Q       Well, but the whole point was, it was

10   someone's picture imposed on what is play money;

11   it wasn't real money that you could spend.

12   A       It was fake money that was done on paper.

13   Q       Okay.  But the whole point, he was making

14   play money; is that right?

15   A       It's not play money.  It's real money.

16   He just -- he just redid the words.

17   Q       He didn't make real money.  He just was

18   making play money, correct --

19   A       Yes.

20   Q       -- like you use for a Monopoly game or

21   something like that?

22   A       Okay.  Yes.

23   Q       Do you see what I'm saying?

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 133

1    A       Yes.

2    Q       So that's the type of thing it was; it

3    was play money like you would use in a board

4    game or something is what he was creating,

5    correct?

6    A       I guess.

7    Q       These pictures and the text on the play

8    $100.00 bills don't have anything to do with the

9    employees' race or gender, do they?

10   A       I think they do.

11   Q       Okay.  Do they refer to the individual's

12   race or gender?

13   A       On the pictures, on the money, yes,

14   because it's all black ladies.

15   Q       Okay.  Other than the fact that they're

16   black individuals, these dollar bills don't say

17   anything about their race or gender, do they?

18   A       No, but --

19   Q       And the language doesn't say anything

20   about their race or gender, does it?  Answer my

21   question.

22   A       No.

23   Q       It does not?

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 134

1   A       The language?  Yes, it does.  He called

2   me fake.

3   Q       Okay.  That doesn't have anything to do

4   with your race or gender, does it?

5   A       No.

6   Q       Okay.  And the term "bogus" doesn't have

7   anything to do with your race or gender, does

8   it?

9   A       No.

10  Q       Okay.  So nothing written on these play

11  $100.00 bills has anything to do with your race

12  or gender, does it?

13  A       No.

14  Q       So you just didn't like the fact that

15  your picture was used on one of these.  But

16  otherwise, it didn't have anything to do with

17  your race or gender, did it?

18  A       No, sir.  Yes; you're right.

19  Q       Now, are you depicted in any of the other

20  pictures on Exhibit B?

21  A       Yes.

22  Q       Which one?  This one in the top right

23  corner?

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 135

1    A    Yeah, as a clown.

2    Q    And I'm sorry, where are you?

3    A    On the top right here (indicating).

4    Q    Okay.  So you're in this first picture --

5    or the first $100.00 play bill --

6    A    Uh-huh.

7    Q    -- listed, right?

8    A    Yes.

9    Q    And then are you saying that's also you

10    to the right of that --

11    A    Yes.

12    Q    -- in the clown picture?

13    A    Yes.

14    Q    And is that the only other picture you're

15    in?

16    A    No.  I'm sitting in his lap with my

17    arm --

18    Q    So you're also in the top right picture;

19    is that right?

20    A    Yes.

21    Q    In the hat?

22    A    Yes.

23    Q    Okay.  Now, are you sure those are your

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 137

1    A       They was dressed up as clowns in the
2    movie.
3    Q       What movie?
4    A       The picture, See No Evil, Hear No Evil,
5    they was dressed up like --
6    Q       Have you ever seen that?
7    A       Yes.
8    Q       You don't know that that has anything to
9    do with this picture, do you?
10   A       I can't say that.  I can say what I look
11   like.
12   Q       But you find it objectionable, because
13   you don't like the fact that you're pictured in
14   a clown outfit; is that right?
15   A       Yes.
16   Q       All right.  So that's what you find
17   objectionable about this second picture?
18   A       Yes.  Done by a manager, member of
19   management, yes.  I don't think --
20   Q       Okay.  But what you find objectionable
21   about the picture itself is just the fact that
22   you're wearing a clown outfit; is that right?
23   A       Yes.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 138

1    Q       Okay.  Now, let's talk about the next

2    picture, which is the top right corner; is that

3    right?

4    A       Yes.

5    Q       All right.  Now, that picture also

6    includes a white male employee; is that right?

7    A       Yes.

8    Q       And who is that?

9    A       Jerry Culpepper.

10   Q       All right.  So his face has been imposed

11   on someone else's body as well, correct?

12   A       Yes.

13   Q       And he's depicted in someone else's

14   clothing, just as you are; is that right?

15   A       Yes.

16   Q       So kind of the same thing has been done

17   to both of you in this picture; is that right?

18   A       Yes.

19   Q       And, in fact, you're saying -- the body

20   you're imposed on, your face is imposed on,

21   you're calling Jerry Culpepper, the white male,

22   a sap, aren't you?

23   A       I'm calling him a sap?

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 139

1    Q       Yeah.  I mean, it looks like that's what

2    you're supposed to be thinking in the caption.

3    Do you see the caption?

4    A       Yeah.

5    Q       Okay.

6    A       Yeah.

7    Q       So it could be that he might even find

8    this picture more objectionable than you; is

9    that possible?

10   A       I don't know.  I know he was mad that day

11   when I called.

12   Q       Jerry Culpepper was?

13   A       Yes.

14   Q       All right.  So -- but you see how -- I

15   mean, you can see it would be possible that he

16   could even find this more objectionable than

17   you; is that right, Jerry Culpepper could?

18   A       Well, yes.

19   Q       Okay.  So what you find objectionable

20   about this is that your face has been imposed on

21   somebody else's body and the clothing you're

22   wearing; is that correct?

23   A       Yes.  And I was sitting in his lap.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 146

1    Q       You're here to respond to my questions.

2    A       Yes, sir.

3    Q       And I asked you what you found

4    objectionable about that picture in the top

5    right corner.

6    A       Yes.

7    Q       Is that all?

8    A       That's it.

9    Q       And you were not affected by any of the

10   other pictures that you're not in; is that

11   correct?

12   A       No.

13   Q       Is that correct?

14   A       Yes.

15   Q       All right.

16   A       No, it's not.

17   Q       Okay.  Let me try it again to make sure

18   this is clear.  The only pictures on this page

19   that affected you personally were the ones that

20   you were in; is that right?

21   A       Yes.

22   Q       The others didn't affect you personally?

23   A       No.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 147

1    Q      And so is it your testimony that Mike

2    Williams had pictures of you -- or a picture of

3    your face to go on a name badge, and that he

4    imposed it into this play $100.00 bill, onto

5    this body wearing a clown outfit --

6    A      Yes.

7    Q      -- and then in this other picture with

8    you -- I'll just identify it with a cartoon

9    caption; is that right?

10   A      Yes.

11   Q      Now, do you know -- obviously again,

12   Jerry Culpepper is also in this other picture

13   with you on the top right corner, correct?

14   A      Yes.

15   Q      Do you know whether Mike Williams made

16   the same or similar pictures of other male

17   employees?

18   A      No.

19   Q      Do you know whether Mike Williams made

20   pictures of any male employees in a clown

21   outfit?

22   A      No.

23   Q      Do you know whether Mike Williams made

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 148

1    the same pictures or similar pictures, as those

2    on this second page of your exhibit, of other

3    white employees?

4    A       No.

5    Q       Isn't it true that the majority of hourly

6    employees at Store Number 818 -- or indeed all

7    the employees at Store 818 at this time were

8    black females?

9    A       Yes.

10   Q       All right.  And there are other pictures

11   on this page that include a while male, as well;

12   is that right?

13   A       Yes.

14   Q       And is that Jerry Culpepper --

15   A       Yes.

16   Q       -- in each of these pictures?

17   A       Yes.

18   Q       So this is the store manager that Mike

19   Williams put in these other pictures, correct?

20   A       Yes.

21   Q       And he is shown in silly clothing and

22   making silly comments just like all the other

23   individuals in the pictures on this page; is

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 149

1    that correct?

2    A        Yes.

3    Q        So is it your testimony that three of the

4    twelve pictures on page 2 of Exhibit B include

5    you?

6    A        Yes.

7    Q        And page 2 has the date 3/30/05 written

8    on the bottom of the page.  Did you write this?

9    A        No.

10   Q        Did Linda Sankey?

11   A        Yes.

12   Q        Do you know when?

13   A        No.

14   Q        Okay.  And did you tell me -- back to the

15   first page of Exhibit B.  Who showed you this

16   picture?

17   A        Linda.

18   Q        Linda Sankey did?

19   A        Yes.

20   Q        Now, had she taken it off the wall at

21   that point?

22   A        She snatched it off the wall.  He tried

23   to get it, and she snatched it.

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 150

1    Q    Okay.  I'm asking you what you observed.

2    Were you there?

3    A    No.

4    Q    Okay.  So you weren't there.

5    A    I was on the floor working.

6    Q    So you never saw this posted anywhere?

7    A    No.

8    Q    All right.

9    A    She said it was posted on the wall, and

10   she snatched it --

11   Q    This is what Linda Sankey told you?

12   A    Yeah.  He tried to --

13   Q    But you don't have any personal

14   knowledge?

15   A    No.  He tried to get it.

16   Q    I want you to testify only about what you

17   have personal knowledge of, unless I ask you

18   about something else, okay?

19   A    Okay.

20   Q    So you never saw this posted?

21   A    No.

22   Q    And Linda Sankey was the one who showed

23   it to you?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 151

1    A      Yes.

2    Q      And you don't have personal knowledge as

3    to how she got this, do you?

4    A      No.

5    Q      All right.  Now, back to the second page

6    of Exhibit B that we were just discussing.  When

7    did you first see this page?

8    A      That morning.

9    Q      What morning?

10   A      The 30th.

11   Q      All right.  Did Linda Sankey show you

12   this one, too?

13   A      Yes.

14   Q      And did she have it in her possession at

15   that time?

16   A      Yes.

17   Q      Okay.  And is that the only time you saw

18   it, is when Linda Sankey gave it to you?

19   A      Yes.

20   Q      Do you have any personal knowledge as to

21   how Linda Sankey got it?

22   A      Off the wall.

23   Q      That's what she told you?

1933 Richard Arrington Jr. Blvd. S. * Birmingham, AL 35209 * www.legalink.com
1-800-888-DEPO

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 152

1    A        Yes.

2    Q        But you didn't see it on the wall?

3    A        No.

4    Q        And you didn't see her take it down from

5    the wall?

6    A        No.

7    Q        None of the captions in the pictures on

8    the second page -- and by "caption," I'm

9    referring to the language or the writing on

10    them -- none of those have anything to do with

11    race or gender, do they?

12    A        Yes.

13    Q        What?

14    A        This right here seems like I'm a

15    prostitute; like I'm working for money.

16    Q        Listen to my question.  Why do you -- I'm

17    asking whether any of the words on any of this

18    relate to your race or gender.

19    A        No, it don't.

20    Q        They do not, do they?

21    A        No.

22    Q        None of them on this page?

23    A        No.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 153

1    Q       And indeed, no words on this page -- and
2    again I'm referring to the second page of
3    Exhibit B -- have anything to do with any of the
4    employees' race or gender, do they?
5    A       That don't have anything to do with mine.
6    I don't know about their gender, but I know -- I
7    don't know.
8    Q       But the pictures that you testified you
9    were affected by on this page, that you
10   personally found objectionable and they
11   personally affected you, they don't have
12   anything to do with your race or gender, do
13   they?
14   A       No.  I take that back.  My race, it does,
15   but my gender, it doesn't.
16   Q       All right.  So the pictures that you
17   allege Mike Williams made don't have anything to
18   do with your gender; is that what you said?
19   A       That's what I'm saying.
20   Q       Nothing to do with your gender, but
21   you're saying they do have something to do with
22   your race; is that correct?
23   A       Yes.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 154

1    Q       And why?

2    A       Because it seems as though he's

3    downgrading the blacks, to me.

4    Q       That's your personal opinion?

5    A       That's my personal opinion.

6    Q       That's your speculation?

7    A       That's my speculation.

8    Q       But you testified he's got Jerry

9    Culpepper in these pictures, as well, correct?

10   A       Yes.

11   Q       And Jerry Culpepper is a white male,

12   correct?

13   A       Yes.

14   Q       And does he appear to be downgrading

15   Jerry Culpepper, also?

16   A       When Jerry Culpepper -- yes, because when

17   he saw these pictures, he was mad.

18   Q       I'm just asking whether he appears to --

19   based on what you're looking at in these

20   pictures, it also looks like he's downgrading,

21   to use your term, Jerry Culpepper as well,

22   correct?

23   A       Yes.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 155

1    Q      And Jerry Culpepper is white?

2    A      Yes.

3    Q      All right.  But again, the language, the

4    words on this don't have anything to do with

5    your race, do they?

6    A      No.

7    Q      All right.  And the pictures on page 3 of

8    Exhibit B appear to be name badges for certain

9    employees.  Specifically Ms. Martin, Lola Abner,

10   Nicole Taylor and you; is that correct?

11   A      Yes.

12   Q      And isn't it true that Mike Williams put

13   the pictures of all store employees on the name

14   badges?

15   A      I don't know.

16   Q      You don't find anything objectionable or

17   discriminatory about the pictures on these name

18   badges, do you?

19   A      Yes, I do.

20   Q      And why is that?

21   A      Because he used my Social Security

22   number.

23   Q      Okay.  I'm asking whether you found

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 157

1    A        Three numbers are missing.

2    Q        Okay.  Listen to my question, if you

3    would.  This is not your complete Social

4    Security number, is it?

5    A        No.

6    Q        And you don't have any reason to think

7    that this has anything to -- the use of your

8    partial Social Security number doesn't have

9    anything to do with your race or gender, does

10   it?

11   A        No.

12   Q        Okay.  And you don't have any personal

13   knowledge as to why Mike Williams used the

14   employees' pictures on the play money and the

15   other pictures about which you're complaining?

16   And I'm referring to the pictures, you know, in

17   Exhibit B that we're discussing.

18   A        No.

19   Q        So you don't know why he did those, do

20   you?

21   A        No.

22   Q        And you don't know whether he just

23   thought it would be funny, do you?

e7b850c2-8e7d-4d11-8864-13990c2bb0e7

MERRILL LEGAL SOLUTIONS
Court Reporting * Legal Videography * Trial Services

Page 158

1    A      I don't know what he was thinking.

2    Q      Could it be that he just had an odd sense

3    of humor different from your own?

4    A      No.

5    Q      You don't know whether his sense of humor

6    is different from your own?

7    A      It's different from mine.

8    Q      Right.  You may not find this funny, but

9    you don't know whether he did, correct?

10   A      Yes.

11   Q      And you don't have any personal knowledge

12   as to whether race or gender had anything to do

13   with Williams making these pictures, do you?

14   A      No.

15   Q      Do you know whether the store manager or

16   any higher level manager had given Williams

17   permission to make any of these pictures?

18   A      No.

19   Q      Do you know whether the store manager or

20   any other high level manager had prior knowledge

21   of these pictures that Williams made?

22   A      No.  Oh, the store manager did.

23   Q      Prior knowledge, before they were made.

e7b850c2-8e7d-4d11-8864-13990c2bb0e7