IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| AUTHERINE CROSKEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:06cv485-MHT |
| ) | (WO) |
| BIG LOTS STORES, INC. ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

The plaintiff, Autherine Croskey ("Croskey"), a former employee of Big Lots Stores, Inc., brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981, alleging that she was subjected to discrimination based on her race (African-American) and sex. Specifically, she alleges that she was subjected to a hostile work environment.[1]

This action is pending before the court on the defendant's motion for summary

---

[1] In her complaint, Croskey also alleges that the defendant retaliated against her by subjecting her to further harassment and that she was wrongfully terminated from her employment. (Doc. No. 1, p. 2.) In her deposition, Croskey acknowledged that she was laid off in December 2005 due to the closing of the store, that her termination is unrelated to the claims in this lawsuit, and that her sole contention in this case is that she was subjected to a hostile work environment based on her race and sex. (Doc. No. 38, Def's Ex. A, pp. 263-65.) Moreover, Croskey does not list as enumerated claims or brief the issues concerning retaliation or wrongful termination in her response. (Doc. No. 41.) She alleges no facts and makes no argument in response to the defendant's motion for summary judgment on the retaliation and wrongful termination claims. The burden is on the parties to formulate arguments, and a plaintiff's failure to list an enumerated claim and brief an issue in a memorandum of law in opposition to a defendant's motion for summary judgment is deemed an abandonment of that claim. *See Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274 (11th Cir. 2003); *Thomas v. Alabama Council on Human Relations, Inc.*, 248 F.Supp.2d 1105, 1107 n.1 (M.D. Ala. 2003). *Cf. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Accordingly, the court concludes that Croskey has abandoned her retaliation and wrongful termination claims and the defendant's motion for summary judgment on these claims is due to be granted.

judgment. The court has carefully reviewed the motion for summary judgment, the briefs, and the supporting and opposing evidentiary materials and concludes that the defendant's motion for summary judgment should be granted.[2]

## II. THE STANDARD OF REVIEW

Under FED.R.CIV.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant may meet this burden by presenting evidence showing there

---

[2] The plaintiff was notified of the pendency of the motion for summary judgment and informed about the proper manner in which to respond to the motion. (doc. # 35) Other than an affidavit in which the plaintiff states that she responded to interrogatories, the plaintiff did not respond to the motion for summary judgment.

[3] In *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986), the court stated:

> "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial...We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . .

*Id.* at 324.

is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also* FED.R.CIV.P. 56(e). ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir.1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995). However, if there is a conflict in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor." *Anderson*, 477 U.S. at 255; *Ruiz de Molina v.*

3

*Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III. FACTS

Viewed in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the following facts are treated as undisputed for the purpose of summary judgment.[4] Croskey was employed by Big Lots as a part-time cashier and associate from March 30, 1997, and was subsequently promoted to a full-time stocker on March 31, 2001. (Doc. No. 38, Def's Ex. A, pp. 89, 102.) Due to the store's closing in January 2006, Croskey's employment with Big Lots ended on December 24, 2005. (*Id.*, p. 263.)

Shortly after being hired, Croskey received an employee handbook, which included Big Lots' policy on harassment and discrimination in the workplace. (*Id.*, pp. 90-91.) In addition to listing prohibited conduct, the policy encouraged Big Lots' employees to report incidents of harassment to their supervisor or the Human Resources Department. (*Id.*, pp. 91-94, 96; Def's Ex. B, Attach. to Abrams' Affid.) Big Lots also had an open-door policy, under which employees are allowed to bring any questions or concerns to an immediate

---

[4] The defendant submitted a corrected statement of undisputed material facts. (Doc. No. 38.) Croskey has not opposed that statement, and the court will treat the statement as correctly setting forth the facts to the extent that it puts the facts in the light most favorable to the plaintiff.

supervisor, a next-level manager, or to the Human Resources Department. (Def's Ex. A, p. 94 and Attach. to Croskey's Dep.) Croskey was also advised of Big Lots' "Get Real Hotline," a toll-free complaint number.[5] (Def's Ex. A, p. 94.)

On occasion, Croskey was offended by her supervisor's actions and remarks. For instance, in early March 2005, Mike Williams ("Williams"), a supervisor, watched and followed a white female customer throughout the store. (*Id*., p. 228.) As the woman bent over to pick up a flower pot, Croskey overheard Williams say that "he had never seen a white woman with a big butt." (*Id*.) Croskey did not complain to management about Williams' comment. (*Id*., p. 230.)

In mid-March 2005, Williams' behavior continued to bother Croskey. While Croskey was hanging toy items on a peg wall, Williams held a metal screw and said, "Do you want a screw?" and laughed. (*Id*., p. 198.) Croskey was not amused. (*Id*., pp. 204-05.) She promptly went to the service desk and reported the incident to Jerry Culpepper ("Culpepper"), a store manager. (*Id*., p. 211.) Culpepper then followed Croskey to the rear of the store. (*Id*., p 212.) As Culpepper and Croskey approached the toy department, Williams said, "Do you want some Jerry beads?" (*Id*., p. 215.) When Culpepper indicated that he did not understand, Williams explained that "Jerry beads" referred to when "the ladies show their breasts" on *The Jerry Springer Show*. (*Id*., p. 221.) Croskey became angry and walked away. (*Id*., p. 225.) She did not report the incident to the Human Resources

---

[5] The Open Door policy provided that "associates wishing to make anonymous complaints or ask a question may call the Get Real Hotline at 1-866-834-REAL (1-888-834-7325)." (Doc. No. 36, Def's Ex. A, Attach. to Croskey's Dep.)

Department. (*Id.*)

After the "Jerry beads" incident, Croskey stayed away from Williams and did not speak to him. Despite her efforts to avoid Williams, Croskey continued to be offended by Williams' actions. On or around March 30, 2005, Linda Sankey, another employee, showed Croskey a document in which photographs of Croskey's and other African-American female employees' faces were superimposed onto fake $100 bills. (Def's Ex. A, pp. 127-31.) Croskey felt that, because the fake money was imprinted with the term "bogus cash," the document implied that she was "as bogus as this note." (*Id.*, pp. 122, 132.) Sankey also showed Croskey a document, which included the photographs of the faces of African-American employees and a Caucasian supervisor superimposed onto pictures of other people. One of the pictures superimposed Croskey's face onto a picture of someone wearing a clown suit. (*Id.*, p. 135.) Next to this picture was another picture of Croskey sitting on the lap of Culpepper with a caption above Croskey's head, which stated, "What a sap! That drawing looks nothing like me." (*Id.*, p. 138; Def's Ex. C.) Croskey believes that Williams created the documents. (Def's Ex. A, pp. 121, 123-24, 127.) Shortly after the incident, Croskey complained to the Human Resources Department about the pictures. (*Id.*, p. 167.) On April 5, 2005, Williams was disciplined for violating Big Lots' standards of conduct. (Doc. No. 38, Def's Ex. B, Abrams' Affid., p. 2.) The following week, Williams resigned from his employment at Big Lots. (*Id.*)

After Williams' resignation, Billy Pridgen ("Pridgen"), another Caucasian supervisor, began offending Croskey. On one occasion in mid-May 2005, Pridgen approached Croskey

while she was leaning on the wall next to the time clock, put his arms on the wall around her with his body touching hers, began "kissing at" her face,[6] and said, "Give me some sugar, baby." (Doc. No. 1, Attach. 3, p. 2; Doc. No. 38, Def's Ex. A, pp. 231-234.) After Croskey pushed him and told him to move, Pridgen stopped. (Def's Ex. A, pp. 234-35, 238.) A couple of weeks later, while moving around Croskey to get boxes off a conveyor belt, Pridgen put his hand on Croskey's shoulder and his body touched Croskey's behind. (*Id.*, p. 245.) As Croskey moved away, Pridgen said, "If you fall backwards, I'm going to fall on top of you." (*Id.*, p. 249.)

On another occasion in mid-June 2005, while Croskey was resting with her eyes closed during a break, Pridgen blew on Croskey's face in a circular motion. (*Id.*, p. 253.) When Croskey pushed Pridgen away and asked him what he was doing, Pridgen responded, "That's the way my wife likes it when I wake her up in the morning. She likes me to blow my breath in her face." (*Id.*) Croskey did not complain to management or the Human Resources Department about Pridgen's behavior. (*Id.*, pp. 241, 251, 258.)

On June 23, 2005, Croskey submitted a charge of discrimination to the Equal Employment Opportunity Commission ("EEOC"), in which she complained about the photograph incident in March 2005, as well as the "management at Big Lots, Inc., Store 818, . . . during the last 180 days . . . [making] many comments and statements of a racially and sexually harassing nature toward, about, and to [her]. . . ." (Doc. No. 38, Def's Ex. C.) On

---

[6] During her deposition, Croskey testified that Pridgen did not actually kiss her. (Doc. No. 38, Def's Ex. A, p. 238.)

7

June 29, 2005, the EEOC sent Croskey a notice of right to sue in federal or state court. (Doc. No. 38, Def's Ex. D.)

On September 16, 2005, Croskey submitted an additional charge of discrimination to the EEOC, in which she raised the same claims as raised in her prior charge. (Doc. No. 38, Def's Ex. E.) She also identified specific behavior and remarks from her supervisors that she believes contributed to a hostile work environment. (*Id.*) On May 5, 2006, the EEOC sent Croskey a right-to-sue notice. (Def's Ex. F.) Croskey filed the instant lawsuit on May 30, 2006. (Doc. No. 1.)

## IV.  DISCUSSION

Croskey asserts that she was subjected to a hostile work environment because of her race and sex in violation of Title VII. The defendants, however, argue that all of the claims raised in Croskey's initial EEOC charge are time-barred because Croskey failed to bring suit within ninety days of receiving the right-to-sue notice. (Doc. No. 37, pp. 2-7.)

Croskey had 90 days from the date she received her notice of her right to sue from the EEOC to file a civil action challenging the claims raised in her first EEOC complaint in the United States District Court. *See* 42 U.S.C. § 2000e-5(f)(1); *Law v. Hercules, Inc.*, 713 F.2d 691, 692 (11th Cir. 1983); *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999). The evidentiary materials clearly indicate that, on June 29, 2005, the EEOC sent a right-to-sue letter to Croskey. (Def's Ex. D.) It is undisputed that Croskey did not file a lawsuit in this court within ninety days of her receipt of the June 29, 2005, right to sue letter. (Doc. No. 41) Consequently, the defendant asserts that, with respect to the claims raised in

Croskey's first EEOC complaint, Croskey failed to file her complaint in this court in a timely manner. Once the defendant raises the issue of timeliness, the plaintiff bears the burden of establishing that her complaint satisfies the 90-day rule or establishing that any untimeliness is excused by an equitable exception. The plaintiff bears the burden of establishing the applicability of the doctrine of equitable tolling. *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1265 (11th Cir. 2000).

Under Title VII, failure to file a complaint within the 90-day time period bars the action. 42 U.S.C. § 2000e-5(f)(1). The ninety day period begins to run upon receipt of the right to sue letter. *Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991). In this circuit, the court must apply a case-by-case approach "to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimal responsibility in resolving their claims without "conditioning a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out by the statute." *Zillyette*, 179 F.3d at 1340.

There is no dispute that Croskey did not file this lawsuit within 90 days of receiving the June 29, 2005, right-to-sue notice. Instead of filing a lawsuit in this court, Croskey submitted an additional EEOC complaint on September 16, 2005, which included similar claims as alleged in her prior EEOC filing as well as more specific claims. (Def's Ex. E.) After receiving a May 5, 2006, right-to-sue letter from the EEOC, Croskey filed a lawsuit in this court on May 30, 2006.

The defendant argues that Croskey's claims concerning Williams' creation of fake

9

money and any statements made before June 16, 2005, are untimely because those charges were raised in her first EEOC complaint and were not filed within 90 days of her receipt of the June 29, 2005, right-to-sue letter. (Doc. No. 37, p. 5.) The evidentiary materials clearly indicate that Croskey raised identical claims concerning the photographs allegedly taken by Williams in both EEOC complaints.[7] (Def's Ex. C; Def's Ex. E.) A Title VII plaintiff is not permitted to extend the 90-day period "by repeatedly filing broad, duplicative charges with the EEOC and obtaining multiple right to sue letters." *Dowdell v. Sunshine Biscuits, Inc.*, 90 F.R.D. 107, 116 (M.D. Ga. 1981). *See also Comrie v. Bronx Lebanon Hosp.*, 133 F.3d 906, 1998 WL 29643, at *2 (2nd Cir. 1998) (citing *Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827 (2nd Cir. 1986)) (noting that, if an initial EEOC complaint is time barred and a second EEOC complaint is filed, dismissal is appropriate for all of those claims previously alleged in the first EEOC complaint.) Thus, the court concludes that Croskey's claims concerning the photographs and pictures created by Williams are time-barred.

It is arguable that Croskey's specific claims concerning Williams' comments in

---

[7] In both EEOC complaints, Croskey attached the same photographs and alleged the following:

> That said Charging Party was supervised on March 28-30, 2005 by Michael Williams, a White or Caucasian male associate store manager and Jerry Culpepper, a White or Caucasian male store manager. On said dates the Charging Party was subjected to race and sex discrimination and or a racially and sexually hostile environment at Big Lots, Store 818 in Montgomery, Alabama by acts of Michael Williams *et al.* in which he subjected said African American female employee to sexual and racial discrimination, and sexual and racial harassment by his ridicule, etc. of the Charging Party by using photographs, cartoon type pictures and captions that were defaming, intrusive and invasive of privacy and were racially and sexually harassing, etc. as per Exhibit B, attached, etc.

(Doc. No. 38, Def's Exhs. C & E.)

March 2005 and Pridgen's behavior in May and June 2005 were timely filed. Although Croskey asserted a general claim that "management at Big Lots . . . during the last 180 days has made many comments and statements of a racially and sexually harassing nature toward, about, and to the Charging party" in her first EEOC charge, she set forth more specific claims in her second EEOC complaint. It is unnecessary for the court to determine the timeliness issue with respect to those claims because, even assuming the claims concerning Williams' comments and Pridgen's behavior were timely filed, the undisputed evidence clearly demonstrates that Croskey has failed to establish a prima facie case of hostile work environment.

Under the law of this circuit, an employee establishes a prima facie case of hostile work environment by demonstrating: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome conduct; (3) that the conduct was on the basis of sex; (4) that the conduct affected a term or condition of employment; and (5) a basis for holding the employer liable. *See generally Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000); *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*).

In this case, Croskey alleges that the following incidents constitute sexual harassment:

- Williams watched a woman walk through the store and said that "he had never seen a white woman with a big butt." (Def's Ex. A, p. 228.)

- While holding a metal screw, Williams asked, "Do you want a screw?" and laughed. (*Id.*, p. 198.) A few minutes later, Williams asked, "Do you want some Jerry beads?" (*Id.*, p. 215.) Williams then explained to another supervisor that "Jerry beads" are used when "the ladies show their breasts" on a television

11

>    show.  (*Id.*, p. 221.)
>
> •    Pridgen put his arms against the wall and around Croskey with his body touching hers, "kissed at" her face, and said, "Give me some sugar, baby." (*Id.*, pp. 231-24; Doc. No. 1, Attach. 3, p. 2.)
>
> •    While attempting to get boxes off a conveyor belt, Pridgen put his hand on Croskey's shoulder and his body touched Croskey's behind. (Def's Ex. A, p. 245.)  As Croskey moved away, Pridgen said, "If you fall backwards, I'm going to fall on top of you." (*Id.*, p. 249.)
>
> •    Pridgen blew on Croskey's face and said, "That's the way my wife likes it when I wake her up in the morning.  She likes me to blow my breath in her face." (*Id.*, p. 253.)[8]

The court concludes that Croskey has failed to establish a prima facie case of hostile work environment because the record contains no evidence that the alleged conduct affected a term or condition of her employment.  Before making this determination, the court must consider the employee's subjective perception of the alleged harassment and determine whether the alleged harassment objectively altered the terms and conditions of Croskey's employment.  *See Mendoza*, 195 F.3d at 1246.  As a guideline for assessing this objective standard, courts consider four non-exhaustive factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating,

---

[8] Croskey identified one incident that she believes was based on her race.  Specfically, Croskey alleges that, in March 2005, Williams superimposed a photograph of her face onto fake money and created pictures of other employees in which their faces were superimposed onto other photographs with various captions above them.  As previously discussed, this allegation is clearly time-barred.  Thus, the court will not make a determination on the merits with respect to this contention.  The court notes, however, that even assuming the timeliness of the claim, it is clear that Williams' posting of pictures in the workplace was an isolated incident.

or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Id.*

"To constitute an actionable hostile environment, conduct must be ... 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). While racially or sexually derogatory or demeaning comments are abhorrent, the law clearly "prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Blevins v. Heilig-Meyers Corp.*, 52 F.Supp.2d 1337 (M.D. Ala. 1998) (citing *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 773 (4th Cir. 1997)), *aff'd by* 184 F.3d 825 (11th Cir. 1999). *See also Carr v. Allison Gas Turbine Div., General Motors Corp.*, 32 F.3d 1007, 1010 (7th Cir. 1994) ("Workers, like other people, often are foul-mouthed and . . . employers are not under a legal duty enforceable by suits under Title VII to purify the language of the workplace.").

Although Title VII clearly prohibits discrimination based on race and sex, "Title VII is not a federal 'civility code.'" *Mendoza*, 195 F.3d at 1245. As one court aptly noted, "Title VII is not a federal guarantee of refinement and sophistication in the workplace.... [I]t prohibits only harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." *Blevins v. Heilig-Meyers Corp.*, 52 F.Supp.2d 1337 (M.D. Ala. 1998). Moreover, if an employee "does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris*, 510 U.S. at 21-22.

In this case, Croskey complains about sporadic and stray statements or incidents by two supervisors that occurred at Big Lots over a three-month period in 2005. With regard to the incident involving comments about a female customer, Croskey testified that Williams' alleged actions were "unrelated to her sex" and did not personally affect her. (Def's Ex. A, p. 230.) It is clear that this occurrence was an isolated event which was not so severe or threatening as to render the workplace objectively hostile or abusive. Consequently, this incident cannot support Croskey's hostile work environment claim.

Moving to Williams' comments concerning a screw and "Jerry beads," it is clear that these were also isolated instances in which offensive utterances were made over the course of a few minutes during a workday in mid-March 2005. This is not a situation where offensive comments were so "commonplace, overt and denigrating" that a reasonable jury could conclude that "they created an atmosphere charged with . . . hostility." *Edwards v. Wallace Cmty Coll.*, 49 F.3d 1517, 1521-22 (11th Cir. 1995); *E.E.O.C. v. Beverage Canners, Inc.*, 897 F.2d 1067, 1068 (11th Cir. 1990). The evidence presented by Croskey does not rise to this level.[9]

The most serious incidents among Croskey's allegations concern Pridgen. First, Croskey alleges that Pridgen moved his body against hers, "kissed at" her face, and said,

---

[9] Albeit in the retaliation context, the Supreme Court has recently emphasized the point that Title VII does not immunize "employee[s] from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern and Santa Fe Ry. Co. v. White*, __ U.S. __, __, 126 S.Ct. 2405, 2415 (2006). That, however, is not to say that employers should not be concerned about these so-called "microinequities" which are too common in some workplaces. *See* Tate, Eric A. and Jenkins, Mahogany P., *Microinequities: Can Bad Behavior Be Actionable?*, The Nat'l Law J., May 21, 2007, at S3.

"Give me some sugar baby." Undoubtedly, Pridgen's behavior was sexually offensive; nonetheless, under the circumstances of this case, the court concludes that Croskey's allegation is insufficient to establish a hostile work environment. During her deposition, Croskey admitted that Pridgen's "body was on her because he's a big person." (Def's Ex. A, p. 223.) She also acknowledged that Pridgen did not actually kiss her face, that the incident lasted a few seconds, and that he moved away after she pushed him. (Def's Ex. A, pp. 235, 238.) This single incident was not repeated after Croskey indicated that the contact was unwanted. *See Cox v. Denny's, Inc.*, No. 98-1085-CIV-J-16B, 1999 WL 1317785 (M.D. Fla. Dec. 22, 1999) (citing *Koelsch v. Belton Elec. Corp.*, 46 F.3d 705 (7th Cir. 1995) (finding that a supervisor who stroked plaintiff's leg once, grabbed her buttocks on a separate occasion, told her he found her attractive, and asked her out on dates did not commit actionable acts)). The court therefore concludes that Croskey's evidence with respect to this isolated incident fails to demonstrate that Pridgen's conduct was so severe or threatening as to render the workplace objectively hostile or abusive.

The court also concludes that the remaining encounters between Pridgen and Croskey are insufficient to establish an actionable hostile work environment claim. With respect to the conveyor belt incident, Croskey acknowledged that she did not know whether Pridgen's actions were related to her sex, that the incident occurred over the course of a few seconds, and that she continued working afterward. (Def's Ex. A., p. 248-50.) Regarding the incident in which Pridgen blew air on Croskey's face and commented that his wife liked him to wake her in this manner, Croskey indicated that she was uncertain of Pridgen's reason for blowing

15

air on her, that the incident occurred over the course of a few seconds, and that she returned to work after the incident.[10] (Def's Ex. A, pp. 253, 255.) Although Croskey was offended by Pridgen's actions, the undisputed evidence does not demonstrate that Pridgen's behavior or comments were sexually offensive. Thus, it is clear that these isolated incidents, which were neither physically threatening nor so severe or pervasive as to alter the conditions of Croskey's employment, cannot support Croskey's hostile work environment claim.

Applying the *Harris* factors to the totality of the events in this case, the court concludes that Croskey has not established a genuine issue of material fact regarding whether the conduct at issue was sufficiently severe or pervasive to alter the terms and conditions of her employment. Consequently, the actions about which Croskey complains do not rise to the level of a hostile work environment.

Moreover, even assuming *arguendo* that Croskey can establish a prima facie case of hostile work environment, the *Faragher-Ellerth* defense is applicable in this case because Crosky did not suffer any harassment by her supervisors which resulted in any "tangible employment action," such as discharge, demotion or undesirable reassignment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761-63 (1998)  Thus, in a case such as this, a defendant avoids liability if: (1) the employer "exercised reasonable care to prevent and correct promptly any sexually harassing behavior"; and (2) the employee "unreasonably failed to take advantage of any preventive or corrective

---

[10] During her deposition, Croskey stated, "I don't know what he was doing, but I know he ain't got to blow his breath in my face." (Def's Ex. A, p. 253.) She also acknowledged that Pridgen was "trying to wake [her] up." (*Id.*)

opportunities . . . provided." *Faragher*, 524 U.S. at 807; *Burlington Indus.*, 524 U.S. at 765. Because it is an affirmative defense, the defendant bears the burden of establishing both of these elements. *See Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1303 (11th Cir. 2007) (citing *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1313 (11th Cir. 2001).

Croskey does not dispute that Big Lots has a valid anti-discrimination policy which prohibited harassment. There is also no dispute that Croskey was aware of reasonable reporting procedures and requirements and that she did not call the complaint hotline or otherwise complain to Big Lots' Human Resources Department about Williams' or Pridgens' behavior.[11] Thus, Croskey failed "to take full advantage of [Big Lots'] preventative measures." *Baldwin*, 480 F.3d at 1306-07. The court therefore concludes that Big Lots has established both elements of the *Faragher-Ellerth* defense.

Based on the foregoing, the court concludes that Big Lots is entitled to summary judgment.

## VI. CONCLUSION

Accordingly, it is the Recommendation of the Magistrate Judge that the defendant's corrected motion for summary judgment (doc. # 36) be GRANTED.

It is further

ORDERED that the parties are DIRECTED to file any objections to the **on or before**

---

[11] The evidentiary materials indicate that Croskey did complain to management about the pictures created by Williams; however, as previously discussed, this claim is barred by the statute of limitations. Of course, this fact shows that Croskey knew how to use the defendant's complaint procedure.

**June 20, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 7th day of June, 2007.

                                       /s/Charles S. Coody
                                       CHARLES S. COODY
                                       CHIEF UNITED STATES MAGISTRATE JUDGE